**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION NO. 2:18-cv-02212-CSG-EIL** |
| **v.** | ) | |
| | ) | |
| **URBANA SCHOOL DISTRICT NO. 116** | ) | **JUDGE MYERSCOUGH** |
| | ) | |
| **Defendant** | ) | |
| | ) | **MAGISTRATE JUDGE LONG** |
| **and** | ) | |
| | ) | |
| **URBANA EDUCATION ASSOCIATION, IEA-NEA** | ) | |
| | ) | |
| | ) | |
| **Rule 19 Defendant** | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S MOTION FOR PARTIAL
SUMMARY JUDGMENT ON LIABILITY AND DAMAGES**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

UNDISPUTED MATERIAL FACTS................................................................................... 2

I.     Article 21, Section 12 of the Collective Bargaining Agreement ................................... 2

II.    Charles Koplinski's Claim of Age Discrimination................................................... 8

III.   Article 21.12 limited the earnings of other teachers over the age of 45. ................... 9

    A.  Article 21.12 limited base salary increases.............................................................. 9

    B.  Article 21.12 limited supplemental pay for performing additional duties. ..................... 19

ARGUMENT ...................................................................................................................... 23

I.     Article 21.12 caps earnings increases for teachers over age 45 because of their age. ........... 23

    A.  Article 21.12 treats similarly situated teachers differently because of age. ................... 25

    B.  Age is the triggering factor for limiting salary increases.................................................... 26

        1.  Courts have held that age is a cause of discriminatory employment policies and practices related to retirement eligibility based on age and years of service. ........... 27

        2.  Article 21.12 allows all teachers under 45 to receive earnings increases that some teachers age 45 and older cannot and no teacher over age 50 can. ........................... 30

        3.  The District considers age in applying Article 21.12. .................................................... 31

    C.  The District's desire to avoid TRS surcharges is no defense to an explicitly discriminatory policy based on class-wide assumptions related to age. ........................... 32

    D.  The District limited earnings based on age, not pension status.......................................... 35

II.    The District cannot dispute that it limited base salaries and certain supplemental earnings because of Article 21.12 nor the amount of those losses. ......................................... 39

CONCLUSION ................................................................................................................... 41

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abramson v. Bd. of Ed. of Wappingers Cent. Sch. Dist.*,
No. 01 Civ. 10859 (CM), 2002 WL 1354711 (S.D.N.Y. June 21, 2002) ...............................29

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................................................23

*Arizona Governing Comm. for Tax Deferred Annuity and Deferred Compensation
Plans. v. Norris*,
463 U.S. 1073 (1983) ...............................................................................................33, 34

*Auerbach v. Bd. of Educ. of the Harborfields Cent. School Dist. of Greenlawn*,
136 F.3d 104 (2d Cir. 1998) ................................................................................29, 30, 31

*City of Los Angeles, Dept. of Water and Power v. Manhart*,
435 U.S. 702 (1978) .....................................................................................32, 33, 34, 35

*EEOC v. City of Independence, Mo.*,
471 F.3d 891 (8th Cir. 2006) .............................................................................28, 30, 31

*Filipek v. Oakton Comm. College*,
312 F. Supp. 3d 693 (N.D. Ill. 2018) .................................................................35, 37, 38

*Gross v. FBL Financial Servs.*,
557 U.S. 167 (2009) ........................................................................................................23

*Hazen Paper Co. v. Biggins*,
507 U.S. 604 (1993) ................................................................................................ *passim*

*Hilde v. City of Eveleth*,
777 F.3d 998 (8th Cir. 2015) .............................................................................28, 30, 32

*Huff v. UARCO, Inc.*,
122 F.3d 374 (7th Cir. 1997) ........................................................................27, 28, 31, 35

*Kentucky Retirement Systems v. EEOC*,
554 U.S. 135 (2008) ........................................................................................23, 35, 36, 37

*Kiser v. Naperville Comm Unit*,
227 F. Supp. 2d 954 (N.D. Ill. 2002) ...........................................................................28, 39

*Lindsey v. Walgreen Co.*,
615 F.3d 873 (7th Cir. 2010) ...........................................................................................23

*O'Brien v. Bd. Of Ed. of Deer Park Union Free School Dist. Deer Park Public Sch.*,
   92 F. Supp. 2d 100 (E.D.N.Y. 2000) ....................................................................29

*Ortiz v. Werner Enterprises*,
   834 F.3d 760 (7th Cir. 2016) ............................................................................24

*Solon v. Gary Comm. School Corp.*,
   180 F.3d 844 (7th Cir. 1999) ..............................................................23, 25, 32

*U.S. v. Dyer*,
   216 F.3d 568 (7th Cir. 2000) ............................................................................23

**Statutes**

40 ILCS § 5/16-158 ..............................................................................................25

29 U.S.C. § 623(f)(2)(B)(i) ..............................................................................35, 36

29 U.S.C. § 623 (f)(2)(B)(ii) ................................................................................29

29 U.S.C. § 623(l)(3) ............................................................................................36

**Other Authorities**

29 C.F.R. § 1625.7(a) ...........................................................................................35

29 C.F.R. § 1625.10(b) .........................................................................................36

*EEOC Informal Discussion Letter, ADEA: Age-Based Pension Calculations*
   (October 6, 2011) https://www.eeoc.gov/foia/eeoc-informal-discussion-letter-230 ..................................................................................................................36

Fed. R. Civ. P. 56(a) .............................................................................................23

## INTRODUCTION

Article 21, Section 12 ("Article 21.12") of the collective bargaining agreement between Urbana School District No. 116 (the "District") and the Urbana Education Association, IEA-NEA (the "Association") discriminates against teachers age 45 and older because of their age in violation of the Age Discrimination in Employment Act ("ADEA"). It is undisputed that Article 21.12 limits the ability of certain teachers age 45 and older, and all teachers age 50 and older, to receive creditable earnings increases of more than six percent compared to the prior year, which they could earn through additional educational attainment or by performing additional duties. In contrast, there is no limit on the ability of teachers younger than 45 from receiving earnings increases of more than six percent over the prior year. This age-based classification is illegal. The District claims the purpose of Article 21.12 is to avoid paying contributions for excess salary increases to the Illinois Teachers' Retirement System ("TRS"). While the EEOC understands the District's desire to avoid contributions to TRS, the way the District did so resulted in age-based wage discrimination against Charles Koplinski and a class of teachers age 45 and older whose compensation was limited because of Article 21.12 in violation of the ADEA. The EEOC moves for summary judgment on liability and on damages for certain teachers whose earnings were limited by Article 21.12.[1]

---

[1] The EEOC seeks relief for teachers whose base salaries or supplemental pay was limited by Article 21.12, either because they were deterred from performing additional paid duties (e.g., teaching summer school or after school programs, mentoring other teachers, teaching a sixth class, coaching, etc.) or because they were denied the opportunity to perform additional paid duties because of Article 21.12. The EEOC is seeking summary judgment on damages for teachers whose base pay was capped and for some teachers whose supplemental earnings were limited by Article 21.12. The EEOC has additional claims related to teachers losing supplemental pay for which it has not sought summary judgment on damages because the entitlement to or amount of damages may be disputed. If the Court grants EEOC's motion for summary judgment on liability and partial summary judgment on damages, a trial on EEOC's remaining claims for damages will be necessary.

## UNDISPUTED MATERIAL FACTS

**I.      Article 21, Section 12 of the Collective Bargaining Agreement**

1.      Beginning in 2007, the collective bargaining agreement between the District and the Association applicable to professional certificated employees, (i.e., teachers) has contained Article 21.12, entitled "Creditable Earnings." Article 21.12 in the 2007-2010 and 2012-2015 CBAs between the District and Association applicable to teachers provided:

> Notwithstanding any of the other provisions of this agreement, no teacher who is less than ten (10) years from retirement eligibility may receive an overall increase in total reportable creditable earnings in excess of six percent (6%) of the previous year's total reportable creditable earnings, unless the payment causing the teacher to exceed the six percent (6%) salary threshold is specifically exempt by statute or regulation from the payment of any penalty of other monies constituting a surcharge to the Teachers' Retirement System.

Ex. 1, Agreement between Urbana Education (Certified) Association, IEA-NEA and Urbana School District #116 Board of Education, 2007-2010, at p. 69, USD_EEOC_0000145; Ex. 2, Collective Bargaining Agreement between Urbana Education Association (Certified), IEA-NEA and Urbana School District #116 Board of Education, 2012-2015, at p. 34, UD_EEOC_0000238

2.      Article 21.12 of the CBA applicable to teachers between the District and Association for 2015-19, which was extended to 2019-20, provided:

> Notwithstanding any of the other provisions of this agreement, no teacher who is less than ten (10) years from retirement eligibility may receive an overall increase in total reportable creditable earnings in excess of six percent (6%) of the previous year's total reportable creditable earnings, unless the payment causing the teacher to exceed the six percent (6%) salary threshold is specifically exempt by statute or regulation from the payment of any penalty of other monies constituting a surcharge to the Teachers' Retirement System. Should the Illinois General Assembly or the Teachers' Retirement System impose a salary threshold greater or lesser than the six percent (6%) threshold thereby causing the payment of any penalty or other monies constituting a surcharge to TRS, then this agreement shall automatically incorporate this new threshold upon its effective date.

2

Ex. 3, Collective Bargaining Agreement between Urbana Education Association (Licensed Faculty), IEA-NEA and Urbana School District #116 Board of Education, 2015-19, at p. 33, 00039; Ex. 4, Collective Bargaining Agreement between Urbana Education Association (Licensed Faculty), IEA-NEA and Urbana School District #116 Board of Education, 2015-19 and 2019-20 at p. 40.

3.     The CBA between the Association and District for 2020-2023 does not contain Article 21.12 or any other similar provision limiting creditable earnings based on years from retirement eligibility. Ex. 5, Collective Bargaining Agreement between Urbana Education Association (Licensed Faculty), IEA-NEA and Urbana School District #116 Board of Education, 2020-2023 ("2020-23 CBA"), at pp. 38- 41. USD_EEOC_0000378-81.

4.     The 2020-23 CBA allows teachers in their first 15 years of creditable service to move two educational (horizontal) lanes per year on the salary schedule and teachers with 16 or more years of service to move one educational lane per year. *Id.* at p. 40, USD_EEOC_0000380, Article 21.06 "Education Credit."

5.     Appendix 1 to the 2020-23 CBA contains a "District Retirement Enhancement Program" that provides teachers who meet the eligibility requirements a 4.5 percent increase in their total creditable earnings for up to their final two years of service with the District. *Id.* at p. 50, USD_EEOC_0000390.

6.     Other school districts have had collective bargaining agreements that do not contain any provision limiting earnings for teachers within a certain number of years of retirement eligibility and instead have retirement incentives guaranteeing earnings increases for teachers who meet the program's qualifications and provide a notice of intent to retire. *See, e.g.,* Ex. 12, Agreement by and between Bloomington Board of Education School District 87 and

3

Bloomington Education Association, 2017-18 through 2019-20, at pp. 34-44); Ex. 32,

Agreement Between the Board of Education Decatur Public School District No. 61 and The

Decatur Education Association, 2018-22 at pp. 47-48, 56-60; Ex. 33, Agreement between the

Board of Education, Edwardsville Community unit School District #7 and the Edwardsville

Education Association, 2021-23 at pp. 32-39

      7.     Angelica (Angi) Franklin has been the Assistant Superintendent of Human

Resources for the District since July 2019. Ex. 6, Franklin 30(b)(6) dep. 12:18-20, 15:4-7.

      8.     Nathon Jones was hired as an HR specialist in August 2019. Ex. 7, Jones 30(b)(6)

dep. 11:10-16.

      9.     Gayle Jeffries was the Assistant Superintendent for Human Resources from 2007

until 2015 and the interim Assistant Superintendent for Human Resources from November to

June 2019. Ex. 8, Jeffries 30(b)(6) dep. 22:7-23:19

      10.    In 2005, the Illinois Pension Code was modified to require school districts to

make employer contributions to the Teacher's Retirement System (TRS) for certain salary

increases:

> If the amount of a teacher's salary for any school year used to determine final
> average salary exceeds the member's annual full-time salary rate with the same
> employer for the previous school year by more than 6%, the teacher's employer
> shall pay to the System, in addition to all other payments required under this
> Section and in accordance with guidelines established by the System, the present
> value of the increase in benefits resulting from the portion of the increase in salary
> that is in excess of 6%.

40 ILCS § 5/16-158(f) (Public Act 94-0004).

      11.    The District claims it proposed Article 21.12 in response to this change in the

Illinois Pension Code to protect the District from having to pay contributions to TRS for

creditable earnings increases in excess of six percent ("excess salary contributions") that are

included in calculating a teacher's final average salary. Ex. 8, Jeffries 30(b)(6) dep. 40:4-41:14, 189:13-190:9; Doc. 25, Answer and Affirmative Defenses of Urbana School District No. 116 a pp. 5-6, Affirmative Defense One at ¶ 1; Affirmative Defense Two at ¶ 5.[2]

12.     At that time, the District did not do anything to determine whether Article 21.12 violated the ADEA. Ex. 8, Jeffries 30(b)(6) dep. 76:18-21.

13.     The District did not engage in or consider any legal, economic, or other type of analysis in implementing Article 21.12. Ex. 8, Jeffries 30(b)(6) dep. 75:9-76:10.

14.     The District did not perform any analysis to try to predict the contributions it would have to make to TRS if it did nothing in response to the change to the Illinois Pension Code. Ex. 8, Jeffries 30(b)(6) dep. 78:9-79:15.

15.     Teachers hired into the Illinois TRS prior to January 1, 2011 (Tier 1),[3] can retire and receive an undiscounted pension when they are age 55 or older with at least 35 years of service; age 60 or older with at least 10 years of service, or age 62 or older with at least five

---

[2] The EEOC disputes that the District's asserted Affirmative Defenses are either appropriately characterized as affirmative defenses or applicable here, but cites the factual allegations in support of the Affirmative Defenses as statements of the District's position. In Affirmative Defense One, the District says EEOC cannot prove but for causation. That is not an affirmative defense, but simply means that EEOC cannot prove its case. In Affirmative Defense Two, the District alleges that it can show a reasonable factor other than age, but the reasonable factor other than age defense is only available in disparate impact cases, not in a disparate treatment case like this one. 29 C.F.R. § 1625.7(b).

[3] Illinois has a two-tier pension system for teachers, as well as many other categories of public employees. Teachers hired before January 1, 2011 are referred to as Tier 1 members in the Teachers' Retirement System (TRS). 40 ILSC § 5/16-106.41. Teachers who were hired on or after January 1, 2011, referred to as Tier 2 members, can retire at age 67 with ten years of service, or at age 62 with ten years of service, with an annuity discounted for each year the teacher is under the age of 67. ILCS 40 § 5/1-160(a), (c), (d). Final average salary for Tier 2 teachers is based on their average salary during the highest 8 consecutive years of service within the last 10 years of service. 40 ILCS § 5/1-160(b). EEOC believes that all teachers who have been affected by Article 21.12 to date are Tier 1 teachers and will limit its discussion in this Motion to the Tier 1 retirement eligibility rules.

years of service. In addition, a teacher who is 55 or older with at least 20 years of service can retire with a discounted pension. 40 ILCS § 5/16-133(a)(B).

16.     The final average salary for teachers in the Tier 1 system is "the average salary for the highest 4 consecutive years within the last 10 years of creditable service as determined under the rules of the board." 40 ILCS § 5/16-133(b). Typically, the final four years of a teacher's employment will be their top four earning years. Ex. 8, Jeffries 30(b)(6) dep. 51:18-22; Ex. 34, The Employer Guide of TRS Illinois, Chapter Eight, at p. 4.

17.     The District was aware when it first entered into the CBA containing Article 21.12 in 2007 that as a consequence, any teacher over the age of 50 in the Tier 1 retirement system could not receive a total creditable earnings increase of more than six percent regardless of their years of service, unless the District approves an exception or there is an accidental overage. Ex. 8, Jeffries 30(b)(6) dep.102:19-103:11; Ex. 6, Franklin 30(b)(6) dep. 116:14-117:5; 117:21-118:17.

18.     A teacher who is age 45 or older with more than ten years of service could have their earnings capped under Article 21.12 because they could retire at age 55 with 20 years of service and receive a discounted pension, even though it is unlikely that a teacher would retire upon reaching age 55. Ex. 6, Franklin 30(b)(6) dep. 82:20-84:15; 40 ILCS § 5/16-132.

19.     The District tracked the creditable earnings of teachers who were age 45 and older who had more than one year of service with the District. Ex. 7, Jones 30(b)(6) dep. 19:15-18; 22:8-23:10; 26:17-27:20; 29:22-30:2; 38:3-17.

20.     The tracking spreadsheets the District used did not contain a field for date of hire or years of service. Ex. 21, 6_Tracking_2015-16; Ex. 25, Ex. 6_Tracking_2016-17.

6

21.     When the District decided to track the earnings of teachers age 45 and older, it did not know when the teachers would retire, unless the teacher had provided a notice of retirement. Ex. 8, Jeffries 30(b)(6) dep. 109:21-110:6.

22.     It is possible that teachers who are within ten years of retirement eligibility could continue to work for the District for more than ten years. Ex. 8, Jeffries 30(b)(6) dep. 157:16-158:2.

23.     In November 2019, Franklin asked the Urbana School Board if the District could focus on tracking and limiting salary increases to teachers who were within four years of age 55. Ex. 6, Franklin 30(b)(6) dep. 110:18-113:6.

24.     There were no changes made to Article 21.12 as a result of temporary exemptions for TRS contributions for creditable earnings increases in excess of six percent expiring on July 1, 2014. Ex. 6, Franklin 30(b)(6) dep. 99:20-102:20.

25.     The District has not done anything to try to limit creditable earnings increases of teachers who are more than ten years from retirement eligibility. Ex. 6, Franklin 30(b)(6) dep. 102:16-20; Ex. 8, Jeffries 30(b)(6) dep. 172:1-9.

26.     The District did not track the creditable earnings of teachers who were younger than 45. Ex. 7, Jones 30(b)(6) dep. 21:24-22:4; Ex. 6, Franklin 30(b)(6) dep. 64:16-18.

27.     Under Article 21.12, if there were a 44 year old teacher and 46 year old teacher in the Tier 1 system who had equal experience (of at least 9 years) and should have received creditable earnings increases of more than 6 percent, the 46-year-old's earnings increase would be capped by Article 21.12 and the 44-year old's earnings would not. The only difference between those two teachers is their ages. Ex. 6, Franklin 30(b)(6) dep. 118:18-119:8; Ex. 8, Jeffries 30(b)(6) dep. 107:11-109:20

7

## II.     Charles Koplinski's Claim of Age Discrimination

28.     On April 28, 2017, Charles Koplinski filed a charge of discrimination with the EEOC alleging that he was paid a lower salary than what he should have been paid according to his placement on the salary scale, that he was told he was paid less because he was ten years away from retiring, and that his salary was subject to a six percent cap per state law. He alleged that he was discriminated against because of his age. Ex. 9, Charge of Discrimination.

29.     Koplinski was born in 1965. He was hired in 1991 at the Urbana Middle School, where he teaches eighth grade language arts. In 2008, Koplinski obtained his Master's degree. Doc. No. 25 at ¶ 10, Answer and Affirmative Defenses of Urbana School District No. 116.

30.     Prior to the 2015-16 school year, Koplinski obtained sufficient post-Master's education credits so that he moved from MA +30, Step 24 on the salary schedule, to MA+60, Step 25, for the 2015-16 school year.  *Id.* at ¶ 12.

31.     According to the 2015-16 Salary Schedule, the salary for a teacher at MA+60, Step 25 is $77,242. Because of Article 21.12, Koplinski's salary for the 2015-16 school year was $73,880.94, for a difference of $3,361.06. *Id.* at ¶ 13.

32.     If Koplinski's years of teaching service and placement on the salary schedule remained the same, but Koplinski were age 44 during the 2015-16 school year instead of age 50, his salary would have been $77,242. *Id.* at ¶ 14.

33.     For the 2016-17 school year, Koplinski was at MA+60, Step 26 on the 2016-17 Salary Schedule. According to the 2016-17 Salary Schedule, the salary for a teacher at MA+60, Step 26 is $79,945. Because of Article 21.12, Koplinski's salary for the 2016-17 school year was $78,313.80, for a difference of $1,631.20. *Id.* at ¶ 15.

34.     If Koplinski's years of teaching service and placement on the salary schedule remained the same, but Koplinski were age 44 during the 2016-17 school year instead of age 51, his salary would have been $79,945. *Id.* at ¶ 16.

35.     Mr. Koplinski's creditable earnings for 2016-17, 2017-18, 2018-19, and 2019-20 for the District were more than his creditable earnings for 2015-16. Exs. 15-19 (Columns FTD PAID PAY AMOUNT and TRS Creditable Earnings for Prior Year).

36.     Koplinski was not allowed to teach summer school in 2018 because of Article 21.12. Ex. 6, Franklin 30(b)(6) dep. 139:5-18; Doc. No. 25 at ¶ 17, Answer and Affirmative Defenses of Urbana School District No. 116.

37.     The Association filed a grievance in August 2016 on behalf of Koplinski regarding his salary being capped because of Article 21.12. It attached to the grievance an EEOC Informal Discussion Letter which concluded that a provision similar to Article 21.12 violated the ADEA. Ex. 10, USD_EEOC_005767-73.

III.    **Article 21.12 limited the earnings of other teachers over the age of 45.**

   A.    **Article 21.12 limited base salary increases.**

      1.    **2015-16**

38.     Susan Behrensmeyer's base salary increase was capped at six percent for the 2015-2016 school year because of Article 21.12, when she was 47 years old and had 18 years of service with the District. She should have been paid $73,735 according to her placement of MA + 60, step 23 on the salary schedule, but was paid $71,852.63, for a difference of $1,882.37. Ex. 11, USD_EEOC_0021129; Ex. 13-A, George Report at p. 6, ¶ 19; Ex. 15, EEOC Data 2015-16

(Columns Birthdate, Position Contract Amt, and Base Salary From Salary Schedule); Ex. 20, 2015-16 TRACKING 6 (Columns Row and Column of Salary Schedule and Date of Hire[4]).

39.      Ms. Behrensmeyer's creditable earnings for 2016-17, 2017-18, 2018-19, and 2019-20 for the District were more than her creditable earnings for 2015-16. Exs. 15-19 (Columns FTD PAID PAY AMOUNT and TRS Creditable Earnings for Prior Year).

40.      Laura Cohen's base salary increase was capped at six percent for the 2015-16 school year because of Article 21.12, when she was 58-59 years old and had 16 years of service with the District. She should have been paid $78,786 according to her placement of MA + 60, step 26 on the salary schedule, but was paid $77,345.02, for a difference of $1,440.98. Ex. 13-A, George Report at p. 8, ¶ 24; Ex. 15, EEOC Data 2015-16 (Columns Birthdate, Position Contract Amt and Base Salary From Salary Schedule); Ex. 20, 2015-16 TRACKING 6 (Columns Row and Column of Salary Schedule and Date of Hire).

41.      Rebecca Cortwright's base salary increase was capped at six percent for the 2015-16 school year because of Article 21.12, when she was 54 years old and had 28 years of service with the District. She should have been paid $66,101, according to her placement of MA + 15, step 24 on the salary schedule, but was paid $65,094.60, for a difference of $1,006.40. Ex. 11, USD_EEOC_0021129; Ex. 13-A, George Report at p. 9, ¶¶ 27, 32; Ex. 15, EEOC Data 2015-16 (Columns Birthdate, Position Contract Amt. and Base Salary From Salary Schedule); Ex. 20, 2015-16 TRACKING 6 (Columns Row and Column of Salary Schedule and Date of Hire).

---

[4] Although the exhibit contains a Years of Service column, this appears to be inaccurate. For example, Behrensmeyer's years of service is shown as 19 in 2015-16 TRACKING and 2017-18 TRACKING 6, even though her years of service should have increased by 2 years. Cynthia Ditchfield is shown as having only nine years of service even through she was hired in 1995.

      In addition, teachers may have additional years of creditable service in the TRS system based on employment with other school districts, but the District did not produce any data reflecting total years of creditable service in TRS.

42.     Stephanie Czelder's base salary increase was capped at six percent for the 2015-16 school year because of Article 21.12, when she was 61-62 years old and had 10 years of service with the District. She should have been paid $51,278, according to her placement of MA +0, step 14 on the salary schedule, but was paid $50,575.25, for a difference of $702.25. Ex. 11, USD_EEOC_0021129; Ex. 13-A, George Report at p. 12; Ex. 15, 2015-16 EEOC Data 2015-16 (Columns Birthdate, Position Contract Amt and Base Salary From Salary Schedule); Ex. 20, 2015-16 TRACKING 6 (Columns Row and Column of Salary Schedule and Date of Hire).

43.     Cynthia Ditchfield's base salary increase was capped at six percent for the 2015-16 school year because of Article 21.12, when she was 45-46 years old and had 20 years of service with the District. She should have been paid $68,746, according to her placement of MA + 30, step 24 on the salary schedule, but was paid $68,220.54, for a difference of $525.46. Ex. 11, USD_EEOC_0021129; Ex. 13-A, George Report at p. 12, ¶¶ 33-34; Ex. 15, 2015-16 EEOC Data Excerpt (Columns Birthdate, Position Contract Amt and Base Salary From Salary Schedule); Ex. 20, 2015-16 TRACKING 6 (Columns Row and Column of Salary Schedule and Date of Hire).

44.     Ms. Ditchfield's creditable earnings for 2016-17, 2017-18, 2018-19, and 2019-20 for the District were more than her creditable earnings for 2015-16. Exs. 15-19 (Columns FTD PAID PAY AMOUNT and TRS Creditable Earnings for Prior Year).

45.     Molly Headtke's base salary increase was capped at six percent for the 2015-2016 school year because of Article 21.12, when she was 54 years old and had 12 years of service with the District. She should have been paid $66,070 according to her placement of MA + 60, step 18 on the salary schedule, but was paid $65,644.74, for a difference of $425.26. She also did not receive an additional payment of $100 due to Article 21.12. Ex. 11, USD_EEOC_0021129; Ex.

11

13-A, George Report at pp. 15-16, ¶ 41; Ex. 15, 2015-16 EEOC Data 2015-16 (Columns Birthdate, Position Contract Amt and Base Salary From Salary Schedule); Ex. 20, 2015-16 TRACKING 6 (Columns Row and Column of Salary Schedule and Date of Hire).

46.     Ms. Headtke's 2015-16 creditable earnings for 2016-17, 2017-18, 2018-19, and 2019-20 for the District were more than her creditable earnings for 2015-16. Exs. 15-19 (Columns FTD PAID PAY AMOUNT and TRS Creditable Earnings for Prior Year).

47.     Aban Irani's base salary increase was capped at six percent for the 2015-16 school year because of Article 21.12, when she was 50-51 years old and had 8 years of service with the District. She should have been paid $54,135, according to her placement of MA + 15, step 15 on the salary schedule, but was paid $53,521.52, for a difference of $613.48. In addition, Irani received only $700 rather than $800 for mentoring. Ex. 11, USD_EEOC_0021129; Ex. 13-A, George Report at p. 17, ¶¶ 45-46; Ex. 13-A, EEOC Data 2015-16 (Columns Birthdate, Position Contract Amt and Base Salary From Salary Schedule); Ex. 20, 2015-16 TRACKING 6 (Columns Row and Column of Salary Schedule and Date of Hire); Ex. 22, 6% Tracking Report for Aban Irani.

48.     Jill Quisenberry's base salary increase was capped at six percent for the 2015-2016 school year because of Article 21.12, when she was 51 years old and had 24 years of service with the District. She should have been paid $75,035 according to his placement of MA + 45, step 26 on the salary schedule, but was paid $73,203.60, for a difference of $1,831.40. Ex. 13-A, George Report at p. 32, ¶¶ 79, 81; Ex. 15, EEOC Data 2015-16 (Columns Birthdate, Position Contract Amt and Base Salary From Salary Schedule); Ex. 20, 2015-16 TRACKING 6 (Columns Row and Column of Salary Schedule and Date of Hire).

49.     Ms. Quisenberry's 2015-16 creditable earnings for 2016-17, 2017-18, 2018-19, and 2019-20 for the District were more than her creditable earnings for 2015-16. Exs. 15-19 (Columns FTD PAID PAY AMOUNT and TRS Creditable Earnings for Prior Year).

### 2.     2016-17

50.     Rebecca Cortwright's base salary increase was capped at six percent for the 2016-17 school year because of Article 21.12, when she was 55 years old and had 29 years of service with the District. She should have been paid $74,353, according to her placement of MA + 45, step 25 on the salary schedule, but was paid $69,000.28, for a difference of $5,352.72. Ex. 13-A, George Report at pp. 9-10, ¶¶ 28, 32; Ex. 23, 2016-17 TRACKING 6 (Columns Date of Hire, Date of Birth, Row and Column of Salary Schedule, because of Section 21.12), Ex. 3 at p. 35, USD_EEOC_0000290, 2016-17 Salary Schedule.

51.     Cynthia Ditchfield's base salary increase was capped at six percent for the 2016-17 school year because of Article 21.12, when she was 46-47 years old and had 21 years of service with the District. She should have been paid $74,353, according to her placement of MA + 45, step 25 on the salary schedule, but was paid $72,870.93, for a difference of $1,482.07. Ex. 13-A, George Report at p 12, ¶ 34; Ex. 16, EEOC Data 2016-17 (Columns Birthdate, Position Contract Amt. and Base Salary From Salary Schedule); Ex. 23, 2016-17 TRACKING 6 (Columns Date of Hire, Row and Column of Salary Schedule, because of Section 21.12).

52.     Laura Haber Hiestand's base salary increase was capped at six percent for the 2016-17 school year because of Article 21.12, when she was 56-57 years old and had 23 years of service with the District. She should have been paid $84,839, according to her placement of MA + 60, step 29 on the salary schedule, but was paid $84,076.21, for a difference of $762.79. Ex. 13-A, George Report at p 15, ¶ 40; Ex. 16, EEOC Data 2016-17 (Columns Birthdate, Position

13

Contract Amt. and Base Salary From Salary Schedule); Ex. 23, 2016-17 TRACKING 6

(Columns Date of Hire, Row and Column of Salary Schedule).

53.     Margaret Kinnamon's base salary increase was capped at six percent for the 2016-

2017 school year because of Article 21.12, when she was 47-48 years old and had 24 years of

service with the District. She should have been paid $72,860, according to her placement of MA

+ 30, step 26 on the salary schedule, but was paid $71,749.28, for a difference of $1,110.72. Ex.

13-A, George Report at p 20, ¶ 53; Ex. 16, EEOC Data 2016-17 (Columns Birthdate, Position

Contract Amt. and Base Salary From Salary Schedule); Ex. 23, 2016-17 TRACKING 6

(Columns Date of Hire, Row and Column of Salary Schedule, because of Section 21.12).

54.     Renee McElwain's base salary increase was capped at six percent for the 2016-17

school year because of Article 21.12, when she was 47-48 years old and had 17 years of service

with the District. She should have been paid $74,673, according to her placement of MA + 60,

step 23 on the salary schedule, but was paid $74,531.78, for a difference of $141.22. Ex. 13-A,

George Report at pp. 23-24, ¶62; Ex. 16, EEOC Data 2016-17 (Columns Birthdate, Position

Contract Amt. and Base Salary From Salary Schedule); Ex. 23, 2016-17 TRACKING 6

(Columns Date of Hire, Row and Column of Salary Schedule); Ex. 25, 6_Tracking_2016-17

(Notes).

55.     Lorna Mesri's base salary increase was capped at six percent for the 2016-17

school year because of Article 21.12, when she was 63-64 years old and had 22 years of service

with the District. She should have been paid $74,463, according to her placement of MA + 0,

step 31 on the salary schedule, but was paid $74,243.78, for a difference of $219.22. Ex. 13-A,

George Report at p. 26, ¶ 67; Ex. 16, EEOC Data 2016-17 (Columns Birthdate, Position

14

Contract Amt. and Base Salary From Salary Schedule); Ex. 23, 2016-17 TRACKING 6

(Columns Date of Hire, Row and Column of Salary Schedule).

56.     Jill Quisenberry's base salary increase was capped at six percent for the 2016-

2017 school year because of Article 21.12, when she was 52 years old and had 25 years of

service with the District. She should have been paid $77,661 according to his placement of MA +

45, step 27 on the salary schedule, but was paid $77,595.82, for a difference of $65.18. Ex. 13-A,

George Report at p. 32, ¶¶ 80-81; Ex. 16, EEOC Data 2016-17 (Columns Birthdate, Position

Contract Amt. and Base Salary From Salary Schedule); Ex. 23, 2016-17 TRACKING 6

(Columns Date of Hire, Row and Column of Salary Schedule, because of Section 21.12).

57.     Angela Wyatt's base salary increase was capped at six percent for the 2016-17

school year because of Article 21.12, when she was 56-57 years old and had 9 years of service

with the District. She should have been paid $73,137, according to her placement of MA + 60,

step 22 on the salary schedule, but was paid $71,338, for a difference of $1,799. Ex. 13-A,

George Report at pp. 38-39, ¶¶ 97-98; Ex. 16, EEOC Data 2016-17 (Columns Birthdate,

Position Contract Amt. and Base Salary From Salary Schedule); Ex. 23, 2016-17 TRACKING 6

(Columns Date of Hire, Row and Column of Salary Schedule, because of Section 21.12).

### 3.     2017-18

58.     Rebecca Cortwright's base salary increase was capped at six percent for the 2017-

18 school year because of Article 21.12, when she was 56 years old and had 30 years of service

with the District. She should have been paid $76,955, according to her placement of MA + 45,

step 26 on the salary schedule, but was paid $73,140.30, for a difference of 1,153.14. Ex. 13-A,

George Report at p. 10, ¶¶ 29, 32; Ex. 17, EEOC Data 2017-18 (Columns Birthdate, Position

Contract Amt.); Ex. 24, 2017-18 TRACKING 6 (Columns Date of Hire, because of Section 21.12); Ex. 3 at p. 36, USD_EEOC_0000290, 2017-18 Salary Schedule.

59.     Karen Schreiber's base salary increase was capped at six percent for the 2017-18 school year, when she was 56-57 years old and had 26 years of service with the District. She should have been paid $75,439 according to her placement of MA + 15, step 29 on the salary schedule, but was paid $74,647.32, for a difference of $791.68. Ex. 13-A, George Report at pp. 33-34, ¶ 86; Ex. 17, EEOC Data 2017-18 (Columns Birthdate, Position Contract Amt.); Ex. 24, 2017-18 TRACKING 6 (Columns Date of Hire, Row and Column of Salary Schedule, because of Section 21.12); Ex. 3 at p. 36, USD_EEOC_0000290, 2017-18 Salary Schedule.

60.     Michelle Shaw's base salary increase was capped at six percent for the 2017-18 school year because of Article 21.12, when she was 46-47 years old and had 23 years of service with the District. She should have been paid $73,607 according to her placement of MA + 45, step 24 on the salary schedule, but was paid $72,888.78, for a difference of $781.22. Ex. 13-A, George Report at p. 34, ¶ 87; Ex. 17, EEOC Data 2017-18 (Columns Birthdate, Position Contract Amt.); Ex. 24, 2017-18 TRACKING 6 (Columns Date of Hire, Row and Column of Salary Schedule, because of Section 21.12); Ex. 3 at p. 36, USD_EEOC_0000290, 2017-18 Salary Schedule.

61.     Stacy Uebelhoer's base salary increase was capped at six percent for the 2017-18 school year because of Article 21.12, when she was 45 years old. She should have been paid $44,919 according to her placement of MA + 15, step 4 on the salary schedule, but was paid $44,448.98, for a difference of $470.02. Ex. 13-A, George Report at p. 35, ¶ 90; Ex. 17, EEOC Data 2017-18 (Columns Birthdate, Position Contract Amt.); Ex. 24, 2017-18 TRACKING 6

(Columns Date of Hire, Row and Column of Salary Schedule) Ex. 3 at p. 36,

USD_EEOC_0000290, 2017-18 Salary Schedule.

62.     Mary Ann Voudrie's base salary increase was capped at six percent for the 2017-18 school year because of Article 21.12, when she was 56-57 years old when she had 10 years of service with the District. She should have been paid $56,029 according to her placement of BA+60/MA +0, step 17 on the salary schedule, but was paid $55,711.48, for a difference of $317.52. Ex. 13-A, George Report at p. 36, ¶ 91; Ex. 17, EEOC Data 2017-18 (Columns Birthdate, Position Contract Amt.); Ex. 24, 2017-18 TRACKING 6 (Columns Date of Hire, Row and Column of Salary Schedule, because of Section 21.12) Ex. 3 at p. 36, USD_EEOC_0000290, 2017-18 Salary Schedule.

63.     Angela Wyatt's base salary increase was capped at six percent for the 2017-18 school year because of Article 21.12, when she was 57-58 years old and had 10 years of service with the District. She should have been paid $75,696.00, according to her placement of MA + 60, step 23 on the salary schedule, but was paid $75,385.08, for a difference of $310.92. Ex. 13-A, George Report at p. 39, ¶ 98; Ex. 17, EEOC Data 2017-18 (Columns Birthdate, Position Contract Amt.); Ex. 24, 2017-18 TRACKING 6 (Columns Date of Hire, Row and Column of Salary Schedule, because of Section 21.12) Ex. 3 at p. 36, USD_EEOC_0000290, 2017-18 Salary Schedule.

### 4.     2019-20

64.     Letitia Bullock's base salary increase was capped at six percent for the 2019-20 school year because of Article 21.12, when she was 50-51 years old. She should have been paid $60,438, according to her placement of MA + 30, step 16 on the salary schedule, but was paid $59,942.82, for a difference of $495.18. Ex. 13-A, George Report at p. 7, ¶ 22; Ex. 19, EEOC

Data 2019-20 (Columns Birthdate, Lane, Credits, Step, Position Contract Amt.); Ex. 4 at p. 45, 2019-20 Salary Schedule.

65.    Rebecca Cortwright's base salary increase was capped at six percent for the 2019-20 school year because of Article 21.12, when she was 58 years old and had 32 years of service with the District. She should have been paid $85,933, according to her placement of MA + 60, step 28 on the salary schedule, but was paid $84,779.86, for a difference of $1,153.14. Ex. 13-A, George Report at p. 10, ¶¶ 31-32; Ex. 19, EEOC Data 2019-20 (Columns Birthdate, Lane, Credits, Step, Position Contract Amt.); Ex. 4 at p. 45, 2019-20 Salary Schedule.

66.    Tricia Kassem's base salary increase was capped at six percent for the 2019-20 school year because of Article 21.12, when she was 47-48 years old and had 10 years of service with the District. She should have been paid $80,502, according to her placement of MA + 60, step 25 on the salary schedule, but was paid $79,069.66, for a difference of $1,432.34. Ex. 13-A, George Report at p. 18, ¶ 48; Ex. 19, EEOC Data 2019-20 (Columns Birthdate, Lane, Credits, Step, Position Contract Amt.); Ex. 4 at p. 45, 2019-20 Salary Schedule; Ex 24, 2017-28 TRACKING 6 (Column Date of Hire).

67.    Sheila Kingry's base salary increase was capped at six percent for the 2019-20 school year, because of Article 21.12, when she was 63 years old and had 12 years of service with the District. She should have been paid $56,510, according to her placement of MA + 30, step 13 on the salary schedule, but was paid $55,933.18, for a difference of $576.82. Ex. 13-A, George Report at p. 19, ¶ 52; Ex. 19, EEOC Data 2019-20 (Columns Birthdate, Lane, Credits, Step, Position Contract Amt.); Ex. 4 at p. 45, 2019-20 Salary Schedule; Ex 24, 2017-28 TRACKING 6 (Column Date of Hire).

68.     Katherine Mclean's base salary increase was capped at six percent for the 2019-20 school year because of Article 21.12, when she was 46 years old. She should have been paid $59,277, according to her placement of MA + 15, step 17 on the salary schedule, but was paid $58,780.24, for a difference of $496.79. Ex. 13-A, George Report at p. 25 ¶ 66; Ex. 19, EEOC Data 2019-20 (Columns Birthdate, Lane, Credits, Step, Position Contract Amt.); Ex. 4 at p. 45, 2019-20 Salary Schedule.

69.     Tamra Neal's base salary increase was capped at six percent for the 2019-20 school year because of Article 21.12, when she was 49-50 years old. She should have been paid $52,225, according to her placement of MA + 15, step 11 on the salary schedule, but was paid $51,956.96, for a difference of $268.04. Ex. 13-A, George Report at pp. 28-29, ¶ 74; Ex. 19, EEOC Data 2019-20 (Columns Birthdate, Lane, Credits, Step, Position Contract Amt.); Ex. 4 at p. 45, 2019-20 Salary Schedule.

70.     Jennifer Powell's base salary increase was capped at six percent for the 2019-20 school year because of Article 21.12, when she was 47-48 years old. She should have been paid $84,000, according to her placement of MA + 60, step 27 on the salary schedule, but was paid $83,107.38, for a difference of $892.62. Ex. 13-A, George Report at p. 29, ¶ 75; Ex. 19, EEOC Data 2019-20 (Columns Birthdate, Lane, Credits, Step, Base Salary from Salary Schedule); Ex. 4 at p. 45, 2019-20 Salary Schedule.

**B.     Article 21.12 limited supplemental pay for performing additional duties.**

71.     Melinda Lundberg did not receive her full stipend during the 2015-16 school year, when she was 54 years old. She was supposed to earn a stipend of $2,085 for additional duties but was paid only $505. During the 2016-17 school year, she received a stiped of $1,847.54 instead of $2,011. Ex. 13-A, George Report at p. 22, ¶¶ 58-59; Ex. 21, 6_Tracking_2015-16

(Columns Stipends. Curr Extra Add'l Paid as of Payroll, Notes, and DOB); Ex. 25, 6_Tracking_2016-17 (Column Notes), Ex. 26, Six Percent Tracking Sheet for Lundberg.

72.     Ms. Lundberg's creditable earnings for 2016-17, 2017-18, 2018-19, and 2019-20 for the District were more than her creditable earnings for 2015-16. Exs. 15-19 (Columns FTD PAID PAY AMOUNT and TRS Creditable Earnings for Prior Year).

73.     In 2017-18, Renee McElwain's stipend for PD Cadre was capped at $1,117.69, but should have been $1,500. Ex. 13-A, George Report at p. 24, ¶ 63. Ex. 27, Six Percent Tracking Report for Renee McElwain.

74.     In December 2015, about half-way through the 2015-16 school year, Jonathan Morrison was told that the District would not be able to pay him for any work he performed as an APEX supervisor after December 9, 2015 because he had hit his 6% earnings increase cap. Ex. 28, USD_EEOC_0012377-78; Ex. 29, USD-EEOC_0012380-81.

75.     Michelle Shaw's mentor stipend was capped in 2016-17 at $217 below what she should have earned for being mentor. Ex. 25, 6_Tracking_2016-17 (Notes column for Shaw).

76.     During the 2019-2020 school year, Kathy Killion was teaching a sixth class. She did not teach the sixth class for the second semester because of her age and years of service. Ex. 6, Franklin 30(b)(6) dep. 39:7-41:17. Killion was 59-years-old at the time. Ex. 19, EEOC Data 2019-20 (Birthdate column).

77.     Ms. Killion was paid $6,983.23 for her sixth assignment, but would have earned an additional 20% of her base salary, $15,502.74, had she taught the entire school year, for a loss of $8,519.51. Ex. 13-A, George Report at p. 19, ¶ 51; Ex. 19, 2019-20 EEOC Data.

78.     In December 2019, Cynthia Howie had an internal subbing assignment taken away because she reached her six salary increase threshold and was age 57. Ex. 6, Franklin 30(b)(6) dep. 43:12-44:24.

79.     In an email dated December 9, 2019, Angi Franklin, Assistant Superintendent for Human Resources, told associate principal Travis Courson that they cannot go over the six percent threshold "no matter what especially if over 51," and that Cynthia Howie was 57. Ex. 30, USD_EEOC_0015849-52.

80.     Ms. Howie earned $1,410 during the approximately 12 weeks that she had her in-house sub assignment. Had she continued with assignment for the remainder of the school year, about another 20 weeks, she would have earned at least $2,350. Ex. 13-A, George Report at p. 16, ¶ 44; Ex. 31, 6% Tracking Report for Cynthia Howie.

81.     During the 2019-20 school year, Jennifer (Jenna) Finch was teaching a sixth class. The District ended her sixth assignment after one semester and she was replaced by a younger teacher, Yvonne Alvarez-Cortes, who was also within 10 years of retirement eligibility. Ex. 6, Franklin 30(b)(6) dep. 39:7-42:14; 46:5-13; 69:22-71:71:19. Alvarez-Cortes made more than six percent over what she had made the previous school year, but Franklin viewed her as being a lower risk for retiring in the next four years. *Id.* at 61:16-62:23. At the time, Finch was 68-years-old and Alvarez-Cortez was 46-years-old. Ex. 19, EEOC Data 2019-20 (Column Birthdate)

82.     Ms. Finch was paid $6,179.91 for her sixth assignment, but would have earned an additional 20% of her base salary, $13,450.40, had she taught the entire school year, for a loss of $7,270.49. Ex. 13-A, George Report at p. 14, ¶ 38; Ex. 19, EEOC Data 2019-20.

83.     Mark Harrison, who was within 10 years of retirement eligibility, was assigned a sixth class during the 2019-20 school year. As a result, he received more than a six percent

creditable earnings increase over the prior year. He retained his sixth-class assignment because he was younger and more than four years from retirement eligibility, so he put the district at less risk of incurring a penalty from TRS. Ex. 6, Franklin 30(b)(6) dep. 105:20-108:5. At the time, Harrison was 48-49 years old and had worked for the District since 1998. Ex. 24, 2017-18 TRACKING 6.

## <u>ARGUMENT</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must construe all facts and draw all justifiable inferences in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Construing all facts and drawing inferences in the District's favor, the EEOC is entitled to summary judgment on its claim that the District discriminated against Charles Koplinski and a class of teachers over the age of 45 because of their age by limiting their compensation pursuant to Article 21.12. Additionally, the EEOC is entitled to summary judgment on damages for some teachers for whom it seeks relief, where it is undisputed that they lost compensation because of Article 21.12 and the amount of those losses.

## I.    Article 21.12 caps earnings increases for teachers over age 45 because of their age.

To prevail on its disparate treatment claim, EEOC must prove that age was a "but for" cause or determining factor for the wage discrimination alleged in this case. *Gross v. FBL Financial Servs.*, 557 U.S. 167, 176 (2009); *Lindsey v. Walgreen Co.*, 615 F.3d 873, 876 (7th Cir. 2010). This does not mean that age must be the sole cause. *U.S. v. Dyer*, 216 F.3d 568 (7th Cir. 2000) (describing "but for" causation as "poles apart from 'sole cause'"). If a policy is discriminatory on its face, as Article 21.12 is, additional proof of bias or illegal motive based on age is unnecessary. *Kentucky Retirement Systems v. EEOC*, 554 U.S. 135, 147-48 (2008) ("our opinion in no way unsettles the rule that a statute or policy that facially discriminates based on age suffices to show disparate treatment under the ADEA"); *Solon v. Gary Comm. School Corp.*, 180 F.3d 844, 855 (7th Cir. 1999) ("The district court was correct to presume discriminatory intent in this case. . . .The plans are therefore discriminatory on their face, and independent proof

23

of illicit motive is unnecessary") (internal citations omitted). Instead, disparate treatment is demonstrated by the terms of the policy itself.

The material facts in this case are not disputed. When the undisputed facts are considered as a whole, they establish as a matter of law that age was the but for cause of the earnings limitations in this case. *Cf. Ortiz v. Werner Enterprises*, 834 F.3d 760, 765 (7th Cir. 2016).[5] By applying Article 21.12 to limit the earnings increases of teachers within 10 years of retirement eligibility, the District treats similarly situated teachers differently because of their age. Any earnings increase above six percent a teacher receives from the District that factors into a teacher's final average salary could cause the District to incur a contribution to TRS. But Article 21.12 only limits the earnings increases of those teachers within ten years of retirement eligibility. Retirement eligibility is based on age and years of service, so on its face, Article 21.12 makes age-based distinctions. (PSF 1, 2, 15). It draws a clear line between teachers 45 and older and those younger than 45. Teachers younger than 45, no matter how many years of service they have, can receive earnings increases above six percent that many teachers age 45 and older cannot, and that no teacher age 50 or over can, regardless of how many years of service a teacher age 50 or over has. (PSF 17, 18, 25, 26). While the District claims that the purpose of Article 21.12 is to limit its exposure to excess salary contributions to TRS (PSF 11), that is no defense to a facially discriminatory policy of wage discrimination.

---

[5] The EEOC recognizes that *Ortiz* addressed what the plaintiff in a discrimination case must show to defeat an employer's motion for summary judgment, explaining that the courts must consider whether the evidence as a whole would permit a reasonable factfinder to conclude that the plaintiff's protected status caused the alleged adverse action. 834 F.3d at 765. Here, the evidence considered as whole not just permits a reasonable factfinder to find that age was the cause of the earnings limits here, but requires it.

**A.      Article 21.12 treats similarly situated teachers differently because of age.**

The District admits that Article 21.12 treats similarly situated teachers differently by limiting the salary increases of older teachers because of their age. It concedes that if there were a 44-year-old teacher and 46-year-old teacher in the Tier 1 system who both had twenty years' experience and should have received creditable earnings increases of more than six percent, the 46-year-old's earnings increase would be capped by Article 21.12, the 44-year old's earnings would not, and that the only difference between those two teachers is their ages. (PSF 27, 32, 34). That is straightforward age discrimination. *Solon*, 180 F.3d at 850 (holding early retirement incentive plan that cut off benefits to those over age 62 discriminated against such employees by denying them benefits available to similarly situated younger employees).

While the District might try to argue there is a difference because it is at risk of incurring a TRS contribution for the 46-year-old's earnings increase but not the 44-year-old's, that is wrong. Prior to 2014, if a teacher's "high four" years used to compute his or her final average salary was earned before the age of 45, and the final average salary included a year with an earnings increase of more than six percent, the District would not owe a contribution to TRS because there had been an exemption for "salary increases paid to a teacher at a time when the teacher is 10 or more years from retirement eligibility under Section 16-132 or 16-133.2" 40 ILCS § 5/16-158)(g) and (h). This exemption for raises earned further than 10 years from retirement eligibility expired in 2014. Despite this change in law, the District continued to cap the earnings of older teachers and not younger teachers, doing nothing to try to change Article 21.12 to address earnings increase of more than six percent paid to teachers who were more than 10 years from retirement eligibility. (PSF 24). Now that the exemption has expired, if for example, a 44-year-old teacher with 20 years of service had received a creditable earnings

25

increase of more than six percent in 2019 and stopped working that same year for the District and never worked for another employer in the TRS system (because the teacher left the profession, went to work for a private school, moved out-of-state, etc.), the District would owe a TRS contribution for that excess salary increase when the teacher applied for a TRS annuity upon reaching eligible retirement age. The District is probably just as much at risk of incurring a TRS contribution for an earnings increase over six percent paid to a 44-year-old as paid to a 46-year-old—in either case a small risk, and it certainly has presented no evidence to support a claim that older teachers present a higher risk of incurring a contribution.[6] But the District's decision to try to mitigate or eliminate the risk only for older teachers but not younger teachers is illegal age discrimination.

### B.     Age is the triggering factor for limiting salary increases.

Although the District has some risk of owing TRS a contribution for any earnings increase above six percent, by Article 21.12, it only limits earnings increases to those within 10 years of retirement eligibility, which is based on a combination of age and years of service. Courts have consistently held that employment practices related to retirement eligibility based on age and years of service draw age-based distinctions. The terms of Article 21.12 on their face and the District's actions in implementing it show that age is the but for cause of teacher's compensation being limited.

---

[6] Such evidence, if it existed, would necessarily involve complex statistical modeling and, as such, would require supporting and explanatory expert testimony. While Defendant did produce the report of Robert G. Grossi, this report did not contain any analysis of or opinions regarding the relative risk of incurring a contribution for an excess salary increase based on a teacher's age.

1.      **Courts have held that age is a cause of discriminatory employment policies and practices related to retirement eligibility based on age and years of service.**

The Seventh Circuit and many other courts have held that age is the cause of alleged discriminatory employment practices related to retirement eligibility where eligibility is based on both age and years of service, as in this case. In *Huff v. UARCO, Inc.*, 122 F.3d 374, 387 (7th Cir. 1997), an employee eligible for early retirement challenged a plan that allowed employees whose employment ended before becoming eligible for early retirement to take a lump sum refund of their pension contributions, while employees whose employment terminated after becoming eligible for early retirement could only receive a payout over time. An employee was eligible for early retirement at age 55 with ten years of service. *Id.* UARCO argued its plan was permissible under *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 607-09 (1993), where the Supreme Court held that terminating an employee who was six months shy of attaining the years of service necessary for his pension to vest did not violate the ADEA because age is analytically distinct from years of service. *Id.* at 387-88. The Seventh Circuit distinguished *Hazen*, because under UARCO's pension plan, every worker under the age of fifty-five would be allowed to receive a lump sum payment, regardless of years of service. *Id.* at 388. The fact that some workers over the age of 55 who did not have 10 years of service would remain eligible for a lump sum payment did not alter the court's holding that the plan was discriminatory. *Id.* at 387. "But for the age-related restrictions, certain workers over fifty-five would be eligible for the lump sum payout. This is not a case where there is merely a correlation between the age and the denial of a particular benefit. UARCO's policy draws an express line between workers over fifty-five and those under." *Id.*

27

The Northern District of Illinois held in *Kiser v. Naperville Comm Unit*, 227 F. Supp. 2d 954, 964 (N.D. Ill. 2002) that the same TRS retirement eligibility rules as at issue here were age-related. The plaintiff had alleged that a Naperville school district terminated him shortly before he was eligible to retire with a TRS annuity to prevent him from receiving contractual retirement benefits. *Id.* at 959. Like the court in *Huff*, the *Kiser* court distinguished *Hazen Paper*, noting that case did not decide whether an employer's attempt to avoid paying pension benefits that were based on age violated the ADEA. *Id.* at 963. The court denied the district's motion to dismiss, reasoning that the retirement benefits at issue were age-related because Kiser's contract provided he would receive certain benefits upon retiring and taking a TRS annuity, an annuity was available upon reaching age 55 with at least 20 years of service, and Kiser would have turned 55 shortly before his contract was going to expire. *Id.*

Similarly, the Eighth Circuit has found that plaintiffs could prove age discrimination in cases involving retirement eligibility based on age and years of service. In *Hilde v. City of Eveleth*, 777 F.3d 998, 1001 (8th Cir. 2015), the Eighth Circuit reversed summary judgment against a 51-year-old police officer who challenged his failure to be promoted to police chief where it was undisputed that the decision-makers considered the plaintiff's retirement eligibility in deciding which candidate to promote. *Id.* at 1005. An officer was eligible to retire upon completing three years of service and obtaining the age of 50, and the plaintiff had 29 years of service. *Id.* at 1001. The court concluded that "because Hilde had long had 3 years of service, his age was not analytically distinct from his retirement eligibility." *Id.* at 1006. "On the facts here, retirement eligibility is always correlated with age because it is dependent on the employee reaching 50; it cannot be 'divorced from age.'" *Id. See also EEOC v. City of Independence, Mo.*, 471 F.3d 891, 894-96 (8th Cir. 2006)(finding that EEOC raised an issue of fact whether

28

excluding an employee from a sick leave donation program because he was eligible for retirement based on his age and years of service violated the ADEA).

In *Auerbach v. Bd. of Educ. of the Harborfields Cent. School Dist. of Greenlawn*, 136 F.3d 104, 109-110 (2d Cir. 1998), the Second Circuit held that the plaintiffs established a *prima facie* case of age discrimination based on an early retirement incentive plan (ERIP) where eligibility requirements to participate in the plan included age and years of service. A teacher who wanted to participate in the ERIP had to retire during the first year in which he or she became eligible or lost the right to participate in the ERIP. *Id.* at 108. A group of teachers sued the school district alleging that the ERIP was discriminatory based on age. *Id.* The Second Circuit held that the plaintiffs had shown a *prima facie* case of age discrimination. They had met the ERIP's age and service requirements. Because they had not retired during the first year they were eligible upon turning age 55, they were barred from receiving early retirement incentive benefits. Therefore, the court held that age was the trigger for the denial of benefits. Teachers under the age of 55 who had fulfilled the ERIP's service requirements remained eligible to participate in the ERIP.[7] *Id.* at 110. *See also Abramson v. Bd. of Ed. of Wappingers Cent. Sch. Dist.*, No. 01 Civ. 10859 (CM), 2002 WL 1354711, at * 1, 4-6 (S.D.N.Y. June 21, 2002) (granting summary judgment to the plaintiffs on a claim that a benefit plan discriminated against the plaintiffs because of age, finding that the triggering factor for denial of benefits was age, not years of service); *O'Brien v. Bd. Of Ed. of Deer Park Union Free School Dist. Deer Park Public Sch.*, 92 F. Supp. 2d 100, 111 (E.D.N.Y. 2000) (holding an ERIP was facially discriminatory

---

[7] The Second Circuit nonetheless affirmed summary judgment in *Auerbach* for the employer because it found that the ERIP complied with the ADEA's requirements regarding early retirement incentives in that it was voluntary, made available for a reasonable period of time, and did not arbitrarily discriminate based on age. 136 F.3d at 112-114 (applying 29 U.S.C. § 623 (f)(2)(B)(ii)).

because age, not years of service, was the triggering factor for the reduction of benefits and granting the plaintiffs' motion for summary judgment).

> ## 2. Article 21.12 allows all teachers under 45 to receive earnings increases that some teachers age 45 and older cannot and no teacher over age 50 can.

In this case, age is not analytically distinct from retirement eligibility, or from being within ten years of retirement eligibility. *See, e.g., Hilde*, 777 F.3d at 1006; *City of Independence*, 471 F.3d at 895-96. The triggering event for limiting earnings increases due to Article 21.12 is a teacher's age. *Auerbach*, 136 F.3d at 110. For example, in 2015-16, when Koplinski's salary increase was first capped, he had 24 years of teaching service, so he had long ago met the minimum service requirements for retirement eligibility, just like the officer in *Hilde* who was denied a promotion because of his retirement eligibility. (PSF 29-34). As another example, Cynthia Ditchfield's base salary was capped in 2015-16 when she was 45-46 years old. At that time, she had 20 years of service with the District, already meeting the minimum service requirements for a discounted or undiscounted pension. (PSF 43). It was because she was age 45-46 in the 2015-16 school year that her salary was capped. Similarly, Margaret Kinnamon had at least 24 years of experience when her base salary increase was capped during the 2016-17 school year when she was 47-48 years old. (PSF 53). Koplinski, Ditchfield, Kinnamon, and the other teachers affected by Article 21.12 did not start having their earnings capped when they met the service requirements to be within 10 years of retirement eligibility, but only after they reached the age of 45 (PSF 38-70, 71,73, 74-76, 78, 81), the minimum age to be within 10 years of retirement eligibility. (PSF 18). Tellingly, the District does not track years of service, but tracks the earnings only of those teachers age 45 or older, which further supports that the triggering factor and but for cause for the application of Article 21.12 is a teacher's age. (PSF 19, 26).

30

As in *Huff* and *Auerbach*, where only employees younger than 55 who had met the service requirements for early retirement remained eligible to receive a lump sum pension payout or participate in an ERIP, respectively, in this case, the District does not dispute that Article 21.12 draws a clear line based on age. Every teacher younger than 45, even those who have satisfied the years of service requirements for retirement eligibility, can receive a salary increase of more than six percent. (PSF 25-26). But many teachers age 45 or older cannot. And *no* teacher over the age of 50 can, regardless of years of service, so there can be no dispute that age is the but for cause of Article 21.12 capping the earnings for age 50 and older. (PSF 15, 17, 18, 25, 26). Even a teacher who first started teaching in the TRS system at age 50 could not earn six percent more than the year before because within ten years, he or she will be age 60 and have ten years of service. (PSF 17). Under the ADEA, the age-based distinction Article 21.12 draws for limiting compensation is illegal. *Huff*, 122 F.3d at 388.

### 3. The District considers age in applying Article 21.12.

The District's explicit consideration of age in applying Article 21.12 is further evidence that an employee's age, not years of service, determines whether the six percent cap applies. *See City of Independence*, 471 at 896. In emails regarding teacher Cynthia Howie hitting the six percent earnings increase threshold because of an additional assignment, Angi Franklin noted that Howie exceeding the threshold was particularly problematic because she was 57. (PSF 78-79). The District admits it reassigned a sixth class that Jenna Finch had been teaching during the 2019-20 school year to Yvonne Alvarez, who like Finch was also within ten years of retirement eligibility. But Alvarez is younger than Finch, so in the District's view put it at less risk of incurring a TRS contribution (PSF 81). The District permitted Mark Harrison, who is within 10 years of retirement eligibility, to continue teaching a sixth class even though it resulted in an

31

earnings increase of more than six percent because it believed that since Harrison was younger he was less likely to retire in the next four years and cause the District to owe a contribution to TRS. (PSF 83). Franklin asked the Urbana School Board if the District could focus on tracking and limiting salary increases to teachers who were within four years of age 55, with no mention of years of service. (PSF 23). The District's consideration of age in deciding to cap the earnings of older teachers while making exceptions for some relatively younger teachers shows it is acting on age-based assumptions and stereotypes that relatively older teachers as a class are more likely to retire, which violates the ADEA. *See Hazen Paper*, 507 U.S. at 613 (explaining an employer could violate the ADEA if it assumed a correlation between pension status and age and acted accordingly); *Hilde*, 777 F.3d at 1005-06 (characterizing as prohibited age-stereotyping assuming that a retirement-eligible employee was uncommitted and would not fill a position for the long-term). *Cf. Solon*, 180 F.3d at 850 (noting that a 66-year-old who planned to retire at age 70 would be discriminated against by an early retirement incentive program that treated as "early" retirement only before age 62 and provided no incentives for retirement after age 62).

**C.** **The District's desire to avoid TRS surcharges is no defense to an explicitly discriminatory policy based on class-wide assumptions related to age.**

The District claims the motive for Article 21.12 is to avoid contributions to TRS for excess salary increases. It may argue that while it cannot know when any given teacher will choose to retire, it can assume based on historical averages that teacher over age 45 are more likely to be entering into their "high four" years of earnings than teachers under 45, but even if it had such statistics, which it does not (or has not presented), the ADEA does not permit this type of statistically-driven discrimination. Article 21.12 is analogous to sex-discriminatory policies related to pension contributions or benefits that the Supreme Court has struck down. In *City of Los Angeles, Dept. of Water and Power v. Manhart,* 435 U.S. 702, 705, 711 (1978), the Supreme

32

Court held that a pension plan requiring female employees to contribute more in monthly contributions than male employees, thereby taking home less pay, violated Title VII. The reason for the difference in contributions was that the cost of a pension to the average female employee would be greater than the average male employee because women generally live longer than men. *Id.* at 705. Citing the statutory text which makes it unlawful "to discriminate against any *individual"* because of "such *individual's"* protected characteristic, the Supreme Court explained that the focus of Title VII is on the individual, *Id.* at 708 (quoting 42 U.S.C. § 2000e-2(a)(1)) (emphasis in original). The employer has no idea whether any individual female employee will fit the generalization that women live longer than men. There may be many female employees who do not live as long as the average male employee, and therefore do not receive future retirement benefits sufficient to offset their reduced paychecks. *Id.* The employer argued that since it cannot know which individuals will predecease the average woman, to be fair to the class of males and prevent them from subsidizing the pensions of females, it had to charge females as a class more. *Id.* a 708-09. But the Court rejected this argument, reiterating that classifying employees based on sex is unlawful, just as classifying employees based on race or national origin is. *Id.* at 709.

In *Arizona Governing Comm. for Tax Deferred Annuity and Deferred Compensation Plans. v. Norris*, 463 U.S. 1073, 1077, 1081-82 (1983), the Supreme Court held that Arizona's practice of offering its employees pension plans through several providers, all of whom paid lower monthly retirement benefits to women than to men who made the same pension contributions, was discriminatory based on sex. Arizona argued the plans were legal because a woman and man would receive a benefit plan with the same present actuarial value, but the Supreme Court, relying on *Manhart*, held that it was unlawful to classify employees based on

33

their sex and make assumptions about their longevity. *Id.* at 1082-83. "The use of sex-segregated actuarial tables to calculate retirement benefits violates Title VII whether or not the tables reflect an accurate prediction of the longevity of women as a class, for under the statute '[e]ven a true generalization about [a] class' cannot justify class-based treatment. An individual woman may not be paid lower monthly benefits simply because women as a class live longer than men." *Id.* at 1084-85 (quoting *Manhart*, 435 U.S. at 709).

Employers cannot rely on sex to make assumptions about longevity and cannot rely on age to make assumptions about retirement. The ADEA contains parallel language to Title VII barring discrimination against "any individual" because of such "individual's age." Following *Manhart* and *Norris*, even if an earnings increase of over six percent paid to a an average 60-year-old teacher may cost the District more by way of a TRS contribution than the same increase to an average 40-year-old, the age-based classification drawn by Article 21.12 violates the ADEA. The District cannot reduce the earnings of individual older teachers by relying on class-wide, age-based assumptions. Similar to the employers in *Manhart* and *Norris* who did not know how long any individual female employee would live, here, the District does not know when any individual teacher will retire or otherwise stop working for an employer participating in TRS and whether a particular earnings increase will cause the District to incur an excess salary contribution to TRS (PSF 21). Yet the District, through Article 21.12, limits the compensation of teachers over the age of 45 as a class. This is no different than the pension plans in *Manhart* and *Norris* that treated females less favorably as a class that the Court held were discriminatory.

State law makes it potentially more expensive for school districts to provide raises over six percent to certain teachers by increasing the school district's share of pension costs (PSF 10), but nothing in the ADEA permits school districts to therefore engage in wage discrimination by

making class-based distinctions and denying compensation increases to older teachers as a class that it provides to younger teachers as a class. The District implemented an age-discriminatory policy to a law that is age neutral. The District could have selected an age-neutral policy like it has in the current collective bargaining agreement negotiated after the EEOC filed suit in this case, (PSF 4-5) or did what many other Districts have done and offer a retirement incentive guaranteeing earnings increases to teachers who qualify and provide notice of intent to retire. (PSF 6).

Accordingly, the fact that the District's stated motive in implementing Article 21.12 was that it thought it was fiscally prudent to avoid incurring contributions to TRS is no defense. (PSF 11). It is not surprising that school districts want to minimize expenses, but they must do so in ways that are non-discriminatory and legal. There is no frugality or cost justification defense to an explicitly discriminatory policy of wage discrimination based on age.[8] *Cf., Manhart*, 435 U.S. at 416-17. Saving money is no more a defense to wage discrimination based on age than it is to wage discrimination based on sex, race, or any other protected characteristic.

### D.     The District limited earnings based on age, not pension status.

The District is likely to argue that Article 21.12 limits compensation based on pension status, not age, relying on *Hazen Paper*, *Kentucky Retirement Systems*, and *Filipek v. Oakton Comm. College*, 312 F. Supp. 3d 693, 697 (N.D. Ill. 2018), but none of those decisions is on point.

As already discussed above, the Seventh Circuit has distinguished *Hazen Paper* in a case involving retirement eligibility based on age and years of service, like here. *Huff*, 122 F.3d at

---

[8] The ADEA's reasonable factor other than age defense applies only to disparate impact claims, so is not available in this disparate treatment case. 29 C.F.R. § 1625.7(a). The ADEA contains an equal cost/equal benefit defense with respect to benefits, but that defense does not apply to wages. 29 U.S.C. § 623(f)(2)(B)(i).

388. Applying Article 21.12 to limit a teacher's compensation is directly dependent on the teacher's age. This constitutes disparate treatment with respect to wages, because as *Hazen Paper* explained, "the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." 507 U.S. at 610. *See also EEOC Informal Discussion Letter, ADEA: Age-Based Pension Calculations* (October 6, 2011) https://www.eeoc.gov/foia/eeoc-informal-discussion-letter-230 (last visiting August 9, 2021) (concluding that a proposed CBA clause limiting increases in a teacher's creditable earnings to six percent above the previous year's creditable earnings during the four years before a teacher's initial eligibility for a non-discounted annuity likely constitutes age-based disparate treatment in violation of the ADEA).

 *Kentucky Retirement* involved the method by which the Kentucky Retirement System calculated disability pension benefits. 554 U.S. at 139-40. In holding that the disability retirement plan did not violate the ADEA, the Court explained, "We consider not an individual employment decision, but a set of complex systemwide rules. These systemic rules involve, *not wages*, but pensions—a benefit that the ADEA treats somewhat more flexibly and leniently in respect to age." *Id* at 144 (emphasis added). The ADEA allows consideration of age in determining the payment or cost of some fringe benefits,[9] but no provision of the ADEA permits salaries to be based on age.

---

[9] For example, 29 U.S.C. § 623(f)(2)(B)(i) allows an employee benefit plan to provide lower levels of benefits to older than to young employees if "the actual amount of payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger worker." 29 U.S.C. § 623(l)(3) allows an employer to reduce long-term disability benefits by age-related pension benefits. However, an employee benefit plan, such as a disability benefit plan, may not require the reduction of an older employee's wages in order to render the cost or payment of that employee's benefits equivalent to a younger employee's benefits. See 29 C.F.R. § 1625.10(b) ("The term [fringe benefits] does not refer to wages or salary in cash, neither section 4(f)(2) not any other section of the Act excuses the payment of lower wages or salary to older employees on account of age.").

*Kentucky Retirement* is inapplicable because this case does not involve the rules for calculating pension benefits, but the wages paid to existing teachers. Nor does this case involve pension status, but assumptions about when a teacher may retire and collect a pension. Article 21.12 assumes, wrongly, that teachers will retire as soon as they are eligible for only a discounted pension at age 55, which the District admits not many teachers do. (PSF 1, 2, 18). Some teachers impacted by Article 21.12 may continue working despite being eligible for retirement. (PSF 22). Many other teachers whose earnings were limited by Article 21.12 were years from being eligible for retirement when their earnings were capped. (*See, e.g.*, PSF 43, 48, 54, 60, 64, 66, 68-70 ). Indeed, the District reduced the earnings of teachers during years that it is now clear will not be included in the teachers' final average salaries. (PSF 16, 35, 39, 44, 46, 49, 72). The District has no idea when teachers will retire and collect a pension. (PSF 21). Yet it is acting on assumptions when teachers may retire by capping earnings increases of older teachers. (PSF 17, 38-83).

This case is also distinguishable from *Filipek v. Oakton Community College*, where the court held the plaintiffs could not establish a *prima facie* case of age discrimination because they could not identify similarly situated employees who were treated more favorably.[10] 312 F. Supp. 3d at 702. At issue in *Filipek* was Oakton Community College's decision to end the employment of State Universities Retirement System (SURS) annuitants. Under certain circumstances, the college could be liable for an employer contribution to SURS if the annuitants exceeded various earnings thresholds. Because of administrative errors, the college had to make contributions to

---

[10] The Seventh Circuit affirmed the district court's grant of summary judgment in favor of Oakton on the plaintiffs' disparate impact claim. *Dayton v. Oakton Comm.* College, 2018 WL 4927203, at ** 3-7, --- F.3d --- (7th Cir. Oct. 11, 2018) *aff'g Filipek v. Oakton Community College*, 312 F. Supp. 3d 693 (2018). No plaintiff appealed the district court's decision granting summary judgment on the disparate treatment claim. *Id.* at * 3, n. 5. Therefore, the Seventh Circuit's opinion is not relevant to this disparate treatment case.

SURS, after which it decided that rather than better track annuitant earnings, it would stop employing annuitants. *Id.* at 698-99. The court held that there were no similarly situated employees because all employees who remained employed, regardless of age, were not annuitants. *Id.* at 702. All the annuitants were necessarily 55 or older (the minimum age to qualify for an annuity), but the decision had no impact on employees 55 or older who were not annuitants. *Id.* at 703. Therefore, the plaintiffs could not identify similarly situated younger employees who were treated differently, or show that their age, and not their status as SURS annuitants, was the reason for Oakton's decision. *Id.* at 702-03.

Unlike in *Filipek*, EEOC can show that similarly situated teachers are treated differently because of their age: 1) all the affected employees and their younger comparators were current teachers at the time their earnings were capped; 2) none of them were TRS annuitants; 3) the District does not know when any of them will retire or otherwise stop working for an employer covered by the TRS (PSF 21); 4) since 2014, a salary increase of more than six percent to any of them, regardless of age (or years of service) puts the District at risk of incurring a contribution to TRS for an excess salary increase (PSF 24); and 5) all teachers over the age 50 are barred from receiving an earnings increase of more than six percent under Article 21.12 (PSF 17). Despite these similarities, the District only limits the earnings increases of some teachers over age 45 and all teachers over age 50 (PSF 1, 2, 17, 18, 19, 25, 26), which violates the ADEA.

To accept any argument from the District that Article 21.12 does not create an illegal age-based classification, either because it treats teachers differently based on pension status or because years of service is also a factor, is to also accept such arguments taken to their logical conclusion—that the District could fire teachers who are within ten years of retirement eligibility

38

without violating the ADEA.[11] If the District can take the adverse action of reducing or limiting earnings because it is relying on pension status or because retirement eligibility is based on age and years of service, there is no principled reason to hold that the District could not take any adverse action to avoid contributions to TRS, including firing those same teachers or refusing to hire anyone over age 50. Such a holding would severely weaken the protections of the ADEA since many retirement plans base eligibility on age and years of service. Fortunately, courts have consistently rejected this argument, *see* Part I.B.1 *supra*, including in a case involving the termination of an employee shortly before he became eligible to retire and receive a TRS annuity. *Kiser*, 227 F. Supp. 2d at 964.

## II. The District cannot dispute that it limited base salaries and certain supplemental earnings because of Article 21.12 nor the amount of those losses.

It is undisputed that the District capped the base salaries of teachers because of Article 21.12 by paying them less than what they should have earned based on their placement on the salary schedule. Typically, when a teacher moved a lane on the salary schedule, they earned more than a six percent increase in creditable earnings, but for teachers age 45 and older, their earnings increase were capped at six percent. Relying on the District's own records, EEOC's expert, economist Dr. Erin George, identified teachers whose base salaries were capped by Article 21.2 and the amount of their losses (PSF 31-34, 38-70) reflected in the following table.

---

[11] Though it may violate contractual or other statutory rights.

| Lost Base Salary | | |
|---|---|---|
| **Teacher** | **Years** | **Back Pay Amount** |
| Charles Koplinski | 2015-16, 2016-17 | $4,992.26 |
| Susan Behrensmeyer | 2015-16 | $1,882.37 |
| Laura Cohen | 2015-16 | $1,440.98 |
| Rebecca Cortwright | 2015-16, 2016-17, 2017-18, 2019-20 | $11,326.96 |
| Stephanie Czelder | 2015-16 | $707.25 |
| Cynthia Ditchfield | 2015-16, 2016-17 | $525.46 |
| Molly Headtke | 2015-16 | $425.26 |
| Aban Irani | 2015-16 | $613.48 |
| Jill Quisenberry | 2015-16, 2016-17 | $1,896.58 |
| Laura Haber Hiestand | 2016-17 | $762.79 |
| Margaret Kinnamon | 2016-17 | $1,110.72 |
| Renee McElwain | 2016-17 | $141.22 |
| Lorna Mesri | 2016-17 | $219.22 |
| Angela Wyatt | 2016-17, 2017-18 | $2,109.92 |
| Karen Schreiber | 2017-18 | $791.68 |
| Michelle Shaw | 2017-18 | $781.22 |
| Stacy Uebelhoer | 2017-18 | $470.02 |
| Mary Ann Voudrie | 2017-18 | $310.92 |
| Letitia Bullock | 2019-20 | $495.18 |
| Tricia Kassem | 2019-20 | $1,432.34 |
| Sheila Kingry | 2019-20 | $576.82 |
| Katherine Mclean | 2019-20 | $496.79 |
| Tamra Neal | 2019-20 | $268.04 |
| Jennifer Powell | 2019-20 | $892.62 |

The District has no evidence to dispute that the teachers included in the table had their base salaries capped by Article 21.12 or the amount of their losses.[12]

In addition, the District cannot dispute that the following teachers either received lower stipends than they otherwise would have or were replaced in assignments they held because of Article 21.12. (PSF 45, 47, 71, 73, 75, 76, 78, 79, 81, 82).

---

[12] These amounts in this table and the following table regarding supplemental pay do not include interest. Dr. George calculated the interest owed through April 2021 using the IRS interest rate for the underpayment of taxes, compounded quarterly and converted to a simple interest rate. If the Court awards EEOC's claimants back pay, Dr. George can provide an update interest calculation through the date of judgment.

| Lost Supplemental Pay | | |
|---|---|---|
| **Teacher** | **Additional work for which teacher received reduced stipend or was replaced** | **Back Pay Amount** |
| Jenna Finch | Sixth class assignment | $7,270.49 |
| Molly Headtke | GLL Planning Meeting | $100 |
| Cynthia Howie | In-house sub | $2,350 |
| Aban Irani | Mentoring | $100 |
| Katherine Killion | Sixth class assignment | $4,259.76 |
| Melinda Lundberg | Elementary supplemental pay | $1,743.48 |
| Renee McElwain | PD Cadre | $382.31 |
| Michelle Shaw | Mentoring | $217 |

Accordingly, the Court should grant EEOC summary judgment for its claim for damages for lost base salary and supplemental to teachers in the amounts listed above.

## CONCLUSION

Considering the evidence as a whole, EEOC is entitled to summary judgment because there are no disputed issues of material fact and EEOC has established as a matter of law that the District has limited the earnings of teachers over the age of 45 because of Article 21.12. Article 21.12 is facially discriminatory because it permits earnings increases to all teachers younger than 45 that it denies to many teachers over age 45 and all teachers over age 50. Age is the but for cause of the earnings limitation because a 44-year-old teacher and 46-year-old teacher with identical service who both earned more than a six percent pay increase would be treated differently with the 46-year-old's earnings increased capped at six percent and the 44-year-old's not, even though both could . The District's actions in implementing Article 21.12 further support that age is the but for cause of any earnings limitations. The District only tracks the earnings of teachers age 45 and older, and explicitly considers teachers' ages in applying Article 21.12. The District does not know when any particular teacher will retire, but Article 21.12 relies on age-based assumptions of when teachers will retire and treats teachers age 45 and older less favorably as a class, in violation of the ADEA.

41

Respectfully submitted,


/s/ Ann Henry

_____

Ann Henry
Trial Attorney
Equal Employment Opportunity Commission
Chicago District Office
230 S. Dearborn, Suite 2920
Chicago, IL 60604
312-872-9659
ann.henry@eeoc.gov

**CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITATION**

Based on the Word Count tool available in Word, I hereby certify that the Argument section of this Motion contains 6,407 words, in compliance with Local Rule 7.1(B)(4)(c) and (D)(5).

Respectfully submitted,

/s/ Ann Henry

_____

Ann Henry
Trial Attorney
Equal Employment Opportunity Commission
Chicago District Office
230 S. Dearborn, Suite 2920
Chicago, IL 60604
312-872-9659
ann.henry@eeoc.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2021, I electronically filed the foregoing **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY AND DAMAGES** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Susan E. Nicholas
Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd.
301 North Neil Street, Suite 400
Champaign, Illinois 61820
(217) 363-3040
(217) 356-3548 (fax)
snicholas@robbins-schwartz.com

Michael Slutsky
N. Elizabeth Reynolds
Alison Slutsky & Kennedy, P.C.
230 W. Monroe St., Suite 2600
Chicago, IL 60606
(312) 364-9400
(312) 364-9410 (fax)
slutsky@ask-attorneys.com
reynolds@ask-attorneys.com

Dennis L. Weedman
Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd.
510 Regency Court
Collinsville, IL 62234
(618)343-3540
(618) 343-3546
dweedman@robbins-schwartz.com

Ryan Thoma
Illinois Education Association, NEA
230 W. Monroe Street, Suite 2640
Chicago, IL 60606
(312) 407-0227
ryan.thoma@ieanea.org
ARDC #6314134

Respectfully submitted,


s/Ann Henry
Ann Henry
EQUAL EMPLOYMENT OPPORTUNITY
 COMMISSION
Chicago District Office
500 West Madison Street, Suite 2000
Chicago, Illinois 60661
Telephone: (312) 869-8098
Fax: (312) 869-8124
E-Mail: ann.henry@eeoc.gov
ARDC# 6272394