E-FILED
Monday, 16 August, 2021  07:20:16 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:18-cv-2212 |
| | ) | |
| URBANA SCHOOL DISTRICT NO. 116, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| URBANA EDUCATION ASSOCIATION, IEA-NEA, | ) | |
| | ) | |
| Rule 19 Defendant | ) | |

**URBANA SCHOOL DISTRICT NO. 116'S MOTION FOR SUMMARY JUDGMENT
PURSUANT TO F.R.C.P. 56**

NOW COMES the Defendant, URBANA SCHOOL DISTRICT NO. 116, by and through

its attorneys, ROBBINS, SCHWARTZ, NICHOLAS, LIFTON & TAYLOR, LTD., and in

support of its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56,

states:

**INTRODUCTION**

Plaintiff, the Equal Employment Opportunity Commission ("EEOC") filed a complaint

on behalf of Charles Koplinski and other affected teachers against Urbana School District No.

116 ("Urbana" or 'School District") as Defendant and the Urbana Education Association

IEA/NEA ("UEA") as a Rule 19 Defendant, alleging violation of the Age Discrimination in

Employment Act ("ADEA").  The Complaint is based upon a provision in the Collective

Bargaining Agreement between the Board of Education of Urbana and the UEA which limits

increases in creditable earnings of certain employees when an employee is within ten years of

retirement eligibility.  The limitation is to avoid the imposition of surcharges imposed by the

Teachers' Retirement System of Illinois, and constitutes a reasonable factor other than age

precluding liability by the School District.

## UNDISPUTED MATERIAL FACTS

1.  Urbana and the UEA were parties to a Collective Bargaining Agreement which included

    Section 21.12 which states:

    > Notwithstanding any of the other portions of this agreement, no teacher who is
    > less than ten (10) years from retirement eligibility may receive an overall increase
    > in total reportable creditable earnings in excess of six percent (6%) of the
    > previous year's total reportable creditable earnings, unless the payment causing
    > the teacher to exceed the six percent (6%) salary threshold is specifically exempt
    > by statement or regulation from the payment of any penalty of other monies
    > constituting a surcharge to the Teachers' Retirement System.  Should the Illinois
    > General Assembly or the Teachers' Retirement System impose a salary threshold
    > greater or lesser than the six percent (6%) threshold thereby causing the payment
    > of any penalty or other monies constituting a surcharge to TRS, then the
    > agreement shall automatically incorporate this new threshold upon its effective
    > date.  Doc. #1, p. 3, ¶9; Exhibits A, B, C, and D.

2.  Section 21.12 was negotiated and adopted in 2007.  Deposition Gayle Jeffries (hereafter

    Dep Jeffries), page 39-40; Exhibit A.

3.  Section 21.12 was included because of new legislation that established a cap and a

    surcharge for excess compensation over six percent paid to any TRS member retiring

    within a four-year period.  Dep. Jeffries p. 40.

4.  The provision was included to make sure every employee received every type of

    compensation that they were entitled, but if certain employee's compensation increased

    more than six percent from the previous year's compensation, then there would be a

2

charge for the School District.  Dep. Jeffries p. 40-41; 43.  Section 21.12 was adopted in response to the change in *The Pension Code* to shield the District from those surcharges or penalties.  Dep. Jeffries p. 189.

5.  Pursuant to Section 21.12, teachers should not be receiving creditable earnings greater than six percent in a year when compared with the prior year if they are within ten years of retirement eligibility.  Dep. Jeffries p. 43.  The ten-year eligibility language was incorporated because that was part of the law, though typically the final four years are the highest years of earning.  Dep Jeffries p. 51.  The District was aware at the time of adoption of Section 21.12 that it would impact employees over the age of 50.  Dep. Jeffries p. 103; Response 19, Request to Admit.

6.  Section 21.12 of the Collective Bargaining Agreement remained unchanged through September, 2020.  Dep Jeffries p. 59; Deposition Angelica Franklin (hereafter Dep. Franklin), 28; Exhibit E.

7.  Earnings of teachers within the retirement eligibility window were tracked.  Deposition Nathon Jones (hereafter "Dep. Jones), p. 17; Responses 13 and 14 of Urbana School District's Response to Equal Employment Opportunity Commission's First Set of Requests for Admission (hereafter "Request to Admit").  The tracking information was collected by first sorting teachers aged 45 and older, and then compared to the number of years of creditable service each teacher had.  Dep. Jones, p. 22-23, 26.  The total number of years of creditable service would have to be separately obtained from School District records and the Teachers Retirement System of Illinois.  Dep. Jones, p. 19; Dep. Franklin p. 81-82.  Teachers within ten years of retirement eligibility would then have their

maximum 6% creditable earnings increases for the following school year noted.  Dep. Jones p. 23.

8.  Despite the existence of 21.12 of the Collective Bargaining Agreement, the School District paid surcharges to the Teachers' Retirement System of Illinois for increases in creditable earnings in excess of six percent for twenty teachers during the time period between 2015-2019.  Response 15, Request to Admit; Exhibit F.

9.  During the time period 2015 through 2019, the School District was assessed surcharges by TRS for salary increases in excess of six percent in the amount of $51,793.13.  See Responses 15 and 16, Request to Admit; Exhibit F.

10. The tracking of teachers subject to Section 21.12 of the Collective Bargaining Agreement was not based only on age, and many teachers over the age of fifty were not tracked. Response 16, Request to Admit.

11. Teachers were on occasion authorized to earn in excess of the six percent threshold in Paragraph 21.12 of the Collective Bargaining Agreement.  Dep. Franklin p. 62-65.  This would occur for positions where there were teacher shortages and the teacher would teach a sixth assignment, or to get to a natural break in the semester. Dep. Franklin p. 62-65. Allowing a teacher to finish at a natural break was in the best interests of the student. Dep. Franklin p. 69.  However, when teachers had earnings in excess of the six percent limitation, it was more commonly inadvertent.  Dep. Franklin p. 61-62, 144-146.

## **ARGUMENT**

The ADEA prohibits adverse actions against employees who are forty years old or older because of their age.  29 U.S.C. §§623(a), 631(a).  Claims under both a disparate treatment and a disparate impact theory are recognized.

4

"Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Dayton v. Oakton Community College*, 907 F.3d 460, 465 (7th Cir. 2018), citing *O'Brien v. Caterpillar Inc.*, 900 F.3d 923, 928 (7th Cir. 2018). "Summary judgment is not appropriate 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id*. citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**<u>Plaintiff is unable to establish a prima facie case for disparate treatment.</u>**

The EEOC cannot establish a disparate treatment claim under the ADEA. The Supreme Court held that the ADEA does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 174 (2009). The Court held that "[t]o establish a disparate-treatment claim under the plain language of the ADEA, … a plaintiff must prove that age was the "but for" cause of the employer's adverse decision." *Id*. at 176. "A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the "but for" cause of the challenged employer decision." *Id*. at 177-78.

In *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), the employer dismissed the plaintiff at age 62 and shortly before he was able to vest in the pension program, and plaintiff sued claiming violation of the ADEA. *Id*. at 606-07. "When the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is." *Id*. at 611. "[T]here is no disparate treatment under the ADEA when the factor motivating the employer is some feature other than the employee's age." *Id*. at 609. The Court noted that "a decision by the company to fire an older employee solely because he has nine-plus

years of service and therefore is 'close to vesting' would not constitute discriminatory treatment on the basis of age." *Id*. at 612.

"[W]hen an employee adopts a pension plan that includes age as a factor, and that employer then treats employees differently based on pension status, a plaintiff, to state a disparate treatment claim under the ADEA, must adduce sufficient evidence to show that the differential treatment was 'actually motivated' by age, not pension status." *Kentucky Retirement System v. EEOC*, 554 U.S. 135, 143 (2008). Even where an employee was dismissed solely to reduce salary costs, it did not constitute age discrimination. *Anderson v. Baxter Healthcare Corp*, 13 F.3d 1120, 1126 (7th Cir. 1994).

Here, Plaintiff's Complaint alleges that "retirement eligibility is based on a combination of age and years of service." Doc #1, p.3., ¶3. The *Illinois Pension Code* provides in relevant part: "[i]f the amount of teacher's salary for any school year used to determine final average salary exceeds the member's annual full-time salary rate with the same employer for the previous school year by more than 6%, the teacher's employer shall pay to the System, in addition to all other payments required under this Section and in accordance with the guidelines established by the System, the present value of the increase in benefits resulting from the portion of the increase in salary that is in excess of 6%." 40 ILCS 5/16-158(f). Final average salary is defined as, "the average salary for the highest 4 consecutive years within the last 10 years of creditable service as determined under the rules of the board." 40 ILCS 5/16-133(b). Retirement eligibility for Tier I teachers is determined by the *Illinois Pension Code*. 40 ILCS 5/16-101 *et seq*. A teacher is eligible for a discounted annuity at age 55 with at least 20 years of service, or an annuity without discount at age 55 with at least 35 years of service, at age 60 with at least 10 years of service, or at age 62 with at least 5 years of service in the Teachers' Retirement System of Illinois (hereafter

"TRS"). 40 ILCS 5/16-132. All of the teachers that are the subject of this suit are or were Tier I teachers.

Once a teacher is within ten years of retirement eligibility, the highest consecutive four years of compensation can occur within any of the final ten years of employment. The *Illinois Pension Code* used to exempt creditable earnings in increases in excess of 6% from the payment required by Section 16-158(f) of the Code when the member was ten or more years from retirement eligibility. 40 ILCS 5/16-158(g). This exemption expired in 2014. 40 ILCS 5/16-158(h).

The language in Section 21.12 traces the language in the *Pension Code*, and clearly ties the creditable earnings restriction to the *Pension Code* language. A Tier I teacher is eligible for a discounted annuity at age 55 with at least 20 years of service, or an annuity without discount at age 55 with at least 35 years of service, at age 60 with at least 10 years of service, or at age 62 with at least 5 years of service in the Teachers' Retirement System of Illinois." 40 ILCS 5/16-132. Final average salary is defined as, "the average salary for the highest 4 consecutive years within the last 10 years of creditable service as determined under the rules of the board." 40 ILCS 5/16-133(b). The EEOC actually alleges the same in their Complaint. *Doc #1, p. 3, ¶9* ("Retirement eligibility is based on *a combination of age and years of service*." (emphasis added)).

The EEOC cannot prevail on a disparate treatment claim.

**The EEOC cannot prevail on a theory of Disparate Impact.**

To prevail on a disparate impact action under the ADEA, a plaintiff must demonstrate that a, "specific, facially *neutral* employment practice caused a significantly disproportionate adverse impact based on age." *Dayton v. Oakton Community College*, 907 F.3d 460, 465 (7th

7

Cir. 2018), citing *Carson v. Lake County*, 865 F.3d 526, 536 (7ᵗʰ Cir. 2017) (emphasis in

original). To establish a claim for violation of the ADEA under the theory of disparate impact, a

plaintiff, "must (1) identify a specific employment practice and (2) offer statistical evidence

demonstrating that the identified practice causes a significant age-based disparity." *O'Brien v.*

*Caterpillar, Inc.*, 900 F.3d 923, 928 (7ᵗʰ Cir. 2018), citing *Smith v. City of Jackson*, 544 U.S. 228,

241 (2005). Plaintiffs have simply alleged the policy as it impacted a class of employees 45 and

older age constituted age discrimination as employees under the age of 45 were not tracked.  .

However, the tracking is based on retirement eligibility, and while the School District first sorted

the information by age, it was then further sorted by years of creditable service. Further, while it

did impact some teachers over the age of 45, it did not impact all teachers over the age of 45.

This will not suffice for purposes of a disparate impact claim

Even if the EEOC could establish a prima facie case, the defendant may affirmatively

defend by showing that the identified practice or policy is based on a reasonable factor other than

age. *Id*. at 465. In October, 2018, the 7ᵗʰ Circuit Court of Appeals affirmed summary judgment

in favor of the employer on plaintiffs' complaints alleging discrimination on the basis of age.

*Dayton v. Oakton Community College*, 907 F.3d 460 (7ᵗʰ Cir. 2018). In *Dayton*, the court held

that a rule established by the College prohibiting the employment of retired instructors of the

College who were annuitants under the State University Retirement System ("SURS") because

the re-employment of these retired individuals could cause the College to have to pay a

substantial statutory penalty to SURS constituted a reasonable factor other than age. The *Dayton*

court rejected plaintiff's argument that the employer has the burden to prove its policies do not

have a disparate impact. The court stated that while *Smith v. City of Jackson*, 544 U.S. 228

(2005), authorized ADEA cases based upon disparate impact, the Court concluded that liability

can be avoided under a disparate-impact claim, "so long as its decision was 'based on a 'reasonable factor other than age' that responded to the [employer's] legitimate goal." *Dayton* at 466, citing *Smith v. City of Jackson*, 554 U.S. at 242. "This is true regardless of whether 'there may have been other reasonable ways for the [employer] to achieve its goals' because unlike Title VII's business necessity test, which asks whether alternatives that do not result in a disparate impact are available for the employer to achieve its goals, the ADEA's reasonable inquiry includes 'no such requirement.'" *Id*. citing *Smith* at 242.

The *Dayton* court also noted that the Supreme Court clarified that, "the business necessity test has 'no place in ADEA disparate-impact cases' because it would be senseless to require a showing that alternative practices would have a less discriminatory effect 'when everyone knows that the choice of a practice relying on a 'reasonable' non-age factor is good enough to avoid liability." *Id*. at 466-67, citing *Meachum v. Knolls Atomic Power Laboratory*, 554 U.S. 84, 97, 99 (2008). "[T]he burdens of proof and persuasion fall on the employer as to the R[easonable] F[actor] O[ther than] A[ge], but … employers need not defend their selection of one policy over a narrower policy." *Id*. "A policy may have a disparate impact on older workers as long as the employer shows that the policy was based on an R[easonable] F[actor] O[ther than] A[ge]." *Id*. at 467. The court rejected the argument that the EEOC regulations defining a reasonable factor other than age, which requires consideration of the business purpose, was not evaluated by the district court because the stated business purpose of avoiding a SURS penalty excluded non-affected annuitants. It also rejected the plaintiffs' argument that the policy was not reasonable because the College did not address the adverse impact on the affected class or attempt to reduce the harm to the affected class. The court found that the district court appropriately applied the regulations, and that the policy was adopted to prevent the mistaken employment of an affected annuitant and the

resulting penalty. *Id*. at 468. The court held that the district court required the College to show that policy was based upon reasonable factors other than age, the appropriate standard to apply. *Id*.

Section 21.12 of the Collective Bargaining Agreement could have applied to employees as early as age 45, because it applied to employees who were ten years from retirement eligibility. However, it did not apply to all employees aged 45 or older. It only applied to teachers who would have had at least twenty years of creditable teachers' service by the age of 55. Franklin and Jones testified as such. While acknowledging that the District started the analysis by age, because that information was available in the School District database, they would then hand calculate years of service to determine what teachers were limited by Section 21.12. Dep. Franklin p. 81-82; Dep. Jones p. 22-23. In fact, teachers who began careers as licensed teachers at an older age or were new to the School District did not have their earnings capped because they either did not have the required years of service. Dep. Jones, p. 22-23; Response 17, Request to Admit. "It shall not be unlawful for an employer … to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section … where differentiation is based on reasonable factors other than age…." *Id*., citing 29 U.S.C. §623(f). To establish that a policy is based on a reasonable factor other than age, the employer must establish that it was, "reasonably designed to further or achieve a legitimate business purpose and administered in a way that reasonably achieves that purpose in light of the particular facts and circumstances that were known, or should have been known, to the employer." *Id*. at 465, citing *O'Brien*, 900 F.3d at 931. "This is a 'relatively light burden.'" *Id*. The reasonableness inquiry does not ask "whether there are other ways for the employer to achieve its goals that do not result on a disparate impact on a protected class." *Id*. at 466. It should also be noted that the Defendant did

not act heavily handed and unilaterally impose this limitation on teachers, but rather acted to negotiate this provision with the UEA into their collective bargaining agreement some fourteen years ago until the parties mutually agreed to remove this provision in 2020.

The EEOC regulations set forth a list of non-exhaustive considerations in evaluating whether a practice was, "reasonably designed to further or achieve a legitimate business purpose and administered in a way that reasonably achieves that purpose in light of the particular facts and circumstances that were known, or should have been known, to the employer." *Id*. at 467. Specifically, the regulation provides the following considerations that may be relevant:

(i)    The extent to which the factor is related to the employer's stated business purpose;

(ii)   The extent to which the employer defined the factor accurately and applied the factor fairly and accurately, including the extent to which managers and supervisors were given guidance or training about how to apply the factor and avoid discrimination;

(iii)  The extent to which the employer limited supervisors' discretion to assess employees subjectively, particularly where the criteria that the supervisors were asked to evaluate are known to be subject to negative age-based stereotypes;

(iv)   The extent to which the employer assessed the adverse impact of its employment practice on older workers;

(v)    The degree of the harm to individuals within the protected age group, in terms of both the extent of the injury and the numbers of persons adversely affected, and the extent to which the employer took steps to reduce the harm,  in light of the burden of undertaking such steps.  *Id*., citing 29 C.F.R. §1625.7(e)(1).

Much like Oakton College, the School District negotiated the policy to avoid penalties from TRS for creditable earnings increases in excess of 6% during the highest paid consecutive four years of the final ten years prior to retirement eligibility.  As clarified by *Dayton*, the School District did not have to choose a policy that had the smallest impact on or attempt to reduce the harm to the affected class.

While Franklin acknowledged that some employees were allowed to go over the six percent threshold at her discretion, it was for positions where there were teacher shortages or to

get to a natural break in the semester. Dep. Franklin p. 62-65.  Franklin explained teachers were used to fill sixth assignments due to the teacher shortage, or finish a semester because it was in the best interest of the student. Franklin also testified that when teachers had earnings in excess of the six percent limitation, it was more commonly inadvertent.  Dep. Franklin p. 144-146.  The situations described by Franklin where teachers were authorized to go over the threshold were focused on student learning, not conceptions about the age of the teachers.

The *Illinois Pension Code* establishes: (1) the terms for eligibility to retire, which combines both years of service and age; (2) a threshold of six percent for increases in creditable earnings in the final average salary of an employee; and (3) imposes a significant penalty to school district employers who exceed the six percent threshold in the final average salary of an employee.  The statute provides that the final average salary is the highest four consecutive years within the last 10 years of creditable service.  40 ILCS 5/16-133(b).  If the highest paid four years in the final ten years of creditable service include increases which exceed six percent, the school district must pay a surcharge to TRS.  The Collective Bargaining Agreement language in Section 21.12 uses this precise language, and further hedges for increases or decreases based upon changes by the General Assembly.  The *Illinois Pension Code* further provides that "[i]f the amount of a teacher's salary for any school year used to determine final average salary exceeds the member's annual full-time salary rate with the same employer for the previous school year by more than 6%, the teacher's employer shall pay to the System, in addition to all other payments required under this Section and in accordance with the guidelines established by the System, the present value of the increase in benefits resulting from the portion of the increase in salary that is in excess of 6%."  40 ILCS 5/16-158(f).

The purpose of Section 21.12 of the Collective Bargaining Agreement, even on its face, is clearly to avoid incurring a penalty under the statute. This is highlighted by the provision that, "[s]hould the Illinois General Assembly or the Teachers' Retirement System impose a salary threshold greater or lesser than the six percent (6%) threshold thereby causing the payment of any penalty or other monies constituting a surcharge to TRS, then this agreement shall automatically incorporate this new threshold upon its effective date." The creditable earnings limitation could shift upward or downward, based upon action by either the Illinois General Assembly or the Teachers' Retirement System, and in the event that such change would cause payment of any penalty or other monies constituting a surcharge, would automatically apply the new threshold.

Even if the language itself did not make clear that the limitation in Section 21.12 was based on retirement eligibility and not age alone, both age and years of service were used to determine what teachers would be tracked, in alignment with both Section 21.12 and the related Illinois Pension Code provisions. Furthermore, there were teachers over the age of 50 that were not tracked because they did not have the requisite years of service. Dep. Jones, p. 22-23; Response 17, Request to Admit. And despite having Section 21.12 in the Collective Bargaining Agreement since the inception of the statute, the District still incurred penalties for increases in creditable earnings in excess of 6% for the highest paid four consecutive years in the final ten years of employment. Responses 15 and 16, Request to Admit. During the time period 2015 through 2019, the School District was assessed surcharges by TRS for salary increases in excess of six percent in the amount of $51,793.13. See Responses 15 and 16, Request to Admit; Exhibit F. Because the surcharges are not assessed until after the teacher retires, excess salary increases for teachers who have not yet retired have not yet been provided to the School District. See

13

Responses 15 and 16, Request to Admit.  The surcharges are not hypothetical in nature.  These are the amounts actually assessed against the School District  even while the District was tracking teachers within ten years of retirement eligibility.  And as is reflected in the bills from TRS and the requisition forms, it is not a dollar-for-dollar surcharge; the TRS surcharge is at least ten times the amount of the excess salary amount.  See Exhibit F.

The desire to avoid surcharges from the Teachers' Retirement System of Illinois clearly constitutes a reasonable factor other than age.  The courts have repeatedly held that pension eligibility/status, and the avoidance of financial repercussions related thereto, are analytically distinct from age, and that establishing a reasonable factor other than age is a "relatively light burden."  The *Dayton* decision reflects that the College's goal in avoiding surcharges from the State University Retirement System, though in that case for employing retirees participating in the system in excess of the statutory authorization, constituted a reasonable factor other than age. While different provisions of the *Illinois Pension Code* apply to *Dayton* and this case, the analysis is identical.  The public bodies both sought to avoid surcharges for employment of teachers based on retirement status or retirement eligibility.  In both cases, that goal was recognized as a reasonable factor other than age, despite the fact that it impacted only people over a certain age.

<u>Conclusion</u>

The Plaintiff cannot establish a claim for disparate treatment or disparate impact under the Age Discrimination in Employment Act.  The existing caselaw clearly recognizes that rules based on retirement eligibility, even where age is a factor, does not constitute disparate treatment.  The application of Section 21.12 does not impact all teachers over the age of 40, and in fact many teachers are excluded from tracking based on their years of creditable service.  Even if that were not the case, Urbana School District No. 116 has established a reasonable factor

2:18-cv-02212-SEM-EIL   # 31   Filed: 08/16/21   Page 15 of 16

other than age, namely the avoidance of penalties from the Teachers' Retirement System of

Illinois, which has been recognized as legitimate by the 7th Circuit Court of Appeals. The School

District's motion for summary judgment should be granted.

URBANA SCHOOL DISTRICT NO. 116
Defendant


s/ Susan E. Nicholas_____
Susan E. Nicholas

Dennis L. Weedman ARDC# 6217120
**ROBBINS SCHWARTZ NICHOLAS**
  **LIFTON & TAYLOR, LTD.**
510 Regency Centre
Collinsville IL 62234
Telephone :  (618)343-3540
dweedman@robbins-schwartz.com


Susan E. Nicholas  ARDC# 6278132
**ROBBINS SCHWARTZ NICHOLAS**
  **LIFTON & TAYLOR, LTD.**
301 N. Neil Street, Suite 400
Champaign IL 61820
Telephone :  (217) 363-3040
snicholas@robbins-schwartz.com


**<u>CERTIFICATION</u>**

I hereby certify, in accordance with Local Rule 7(1)(B)(4), that this document complies with the

type volume limitations set forth in Local Rule 7(1)(B)(4), and includes a total of 4,720 words,

as calculated by the Microsoft Word word count function, which was used to prepare this

motion.

s/ Susan E. Nicholas

Susan E. Nicholas

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically sent a copy of the URBANA SCHOOL DISTRICT NO. 116'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56 with this CERTIFICATE OF SERVICE via electronic mail on this 16th day of August, 2021.

Ann M. Henry                                                          Attorneys for Plaintiff
U.S. Equal Employment Opportunity Commission
ann.henry@eeoc.gov

Ethan M. M. Cohen
U.S. Equal Employment Opportunity Commission
ethan.cohen@eeoc.gov


Michael H. Slutsky                                              Attorneys for Rule 19 Defendant
Allison, Slutsky & Kennedy, PC
slutsky@ask-attorneys.com

N Elizabeth Reynolds
reynolds@ask-attorneys.com

Ryan Matthew Thoma
ryan.thoma@ieanea.org


                                                        s/ Susan E. Nicholas_____
                                                        Susan E. Nicholas #6278132
                                                        Robbins, Schwartz, Nicholas,
                                                                Lifton & Taylor, Ltd.
                                                        301 N. Neil Street, Suite 400
                                                        Champaign IL 61820
                                                        Telephone: 217.363.3040
                                                        Fax: 217.345.3548
                                                        Email: snicholas@robbins-schwartz.com