E-FILED
Tuesday, 07 September, 2021  03:34:23 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION NO. 2:18-cv-02212-CSG-EIL** |
| v. | ) | |
| | ) | |
| **URBANA SCHOOL DISTRICT NO. 116** | ) | **JUDGE MYERSCOUGH** |
| | ) | |
| Defendant | ) | |
| | ) | **MAGISTRATE JUDGE LONG** |
| and | ) | |
| | ) | |
| **URBANA EDUCATION ASSOCIATION, IEA-NEA** | ) | |
| | ) | |
| | ) | |
| Rule 19 Defendant | ) | |
| | ) | |

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S RESPONSE TO URBANA SCHOOL DISTRICT NO. 116'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

PLAINTIFF'S ADDITIONAL MATERIAL FACTS ......................................... 5

I.      The District's implementation of Article 21.12. .................................. 5

II.     The District capped the earnings of teachers age 45 and older. .................................. 7

        A.  Article 21.12 limited base salary increases. .................................. 7

        B.  Article 21.12 limited supplemental pay for performing additional duties. .......... 12

III.    Alternatives to Article 21.12. ................................................................. 13

ARGUMENT ........................................................................................................ 15

I.      Summary judgment standard ................................................................ 15

II.     Article 21.12 treats similarly situated teachers differently because of age. ............... 16

III.    The District limited earnings based on age, not years of service or pension status. . 18

        A.  Hazen Paper is distinguishable because age is a factor in applying Article 21.12. ................................................................................................... 18

        B.  Age was the determining factor for teachers' earnings being limited, despite retirement eligibility being based on age and years of service. ........................... 21

        C.  The District considers teachers' ages in deciding whether to make exceptions to Article 21.12. ................................................................................ 22

        D.  This case is about wage discrimination because of age, not pension status. .......... 23

IV.     The District's desire to avoid TRS contributions is not a defense to an explicitly discriminatory policy that relies on age-based assumptions. ....................................... 24

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abramson v. Bd. of Ed. of Wappingers Cent. Sch. Dist.*,
   No. 01 Civ. 10859 (CM), 2002 WL 1354711 (S.D.N.Y. June 21, 2002)...............................20

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)........................................................................................................15

*Arizona Governing Comm. for Tax Deferred Annuity and Deferred Compensation*
      *Plans. v. Norris*,
   463 U.S. 1073 (1983).................................................................................................25, 26

*Auerbach v. Bd. of Educ. of the Harborfields Cent. School Dist. of Greenlawn*,
   136 F.3d 104 (2d Cir. 1998).................................................................................20, 21, 22

*City of Los Angeles, Dept. of Water and Power v. Manhart*,
   435 U.S. 702 (1978).............................................................................................24, 25, 26

*Gross v. FBL Financial Servs.*,
   557 U.S. 167 (2009)........................................................................................................16

*Hazen Paper Co. v. Biggins*,
   507 U.S. 604 (1993).......................................................................................18, 19, 20, 23

*Hilde v. City of Eveleth*,
   777 F.3d 998 (8th Cir. 2015) .............................................................................20, 21, 23

*Huff v. UARCO, Inc.*,
   122 F.3d 374 (7th Cir. 1997) ....................................................................................19, 22

*Kentucky Retirement Systems v. EEOC*,
   554 U.S. 135 (2008)..............................................................................................16, 18, 23

*Kiser v. Naperville Comm Unit*,
   227 F. Supp. 2d 954 (N.D. Ill. 2002) .............................................................................19, 20

*Lauth v. Covance, Inc.*,
   863 F.3d 708 (7th Cir. 2017) ............................................................................................15

*Lindsey v. Walgreen Co.*,
   615 F.3d 873 (7th Cir. 2010) ............................................................................................16

*Marnocha v. St Vincent Hospital and Health Care Center, Inc.*,
   986 F.3d 711 (7th Cir. 2021) ............................................................................................15

*O'Brien v. Bd. Of Ed. of Deer Park Union Free School Dist. Deer Park Public Sch.*,
  92 F. Supp. 2d 100 (E.D.N.Y. 2000) ...................................................................21

*Solon v. Gary Comm. School Corp.*,
  180 F.3d 844 (7th Cir. 1999) ...........................................................16, 18, 23

*U.S. v. Dyer*,
  216 F.3d 568 (7th Cir. 2000) ...................................................................16

**Statutes**

40 ILCS § 5/16-132 ...........................................................................................6

40 ILCS § 5/16-158(f) ...............................................................................2, 22

40 ILCS § 5/16-158(g) and (h) ...................................................................2, 17

29 U.S.C. § 623(a) ........................................................................................26

29 U.S.C. § 623(f)(2)(B)(i) ...........................................................................24

29 U.S.C. § 623 (f)(2)(B)(ii) .........................................................................21

**Other Authorities**

29 C.F.R. § 1625.10(b) ..................................................................................24

*EEOC Informal Discussion Letter, ADEA: Age-Based Pension Calculations*
  (October 6, 2011) https://www.eeoc.gov/foia/eeoc-informal-discussion-letter-230 ......................................................................................................18

Fed. R. Civ. P. 56(a) .....................................................................................15

## INTRODUCTION

Article 21.12 of the collective bargaining agreement between Defendant Urbana School District No. 116 (the "District") and the Urbana Education Association, IEA-NEA (the "Association") limited the creditable earnings increases charging party Charles Koplinksi and other teachers within ten years of retirement eligibility could receive to no more than six percent over their prior year's earnings. The impact of Article 21.12 was that many teachers age 45 and older could not receive earnings increases of more than six percent, and no teacher over age 50 could. The District admits that Koplisnki would have received salary increases of more than six percent in 2016-17 and 2017-18 if here was age 44 instead of in his fifties. Similarly, it is undisputed that a 46-year-old teacher with twenty years of service who earned a master's degree or was selected to coordinate an afterschool program, for example, would receive less compensation than a 44-year-old teacher with the same years of service for those same activities. The District does not address these facts in its motion. Instead, it relies on two cases that do not bear on whether the District could limit the wages of teachers nearing retirement eligibility when retirement eligibility is based on years of service and age. The District contends that the purpose of Article 21.12 is to avoid owing contributions to the Illinois Teacher's Retirement System ("TRS") for the increased pension costs of salary increases in excess of six percent. But underlying Article 21.12 are class-wide, age-based assumptions of when employees will retire that are used to limit the earnings of individual teachers. The ADEA does not permit such age-based classifications. Because Article 21.12 treats similarly situated teachers differently because of their age by limiting the wages of older teachers, the District's summary judgment motion should be denied.

1

**PLAINTIFF'S RESPONSE TO DEFENDANT'S UNDISPUTED MATERIAL FACTS**

**Undisputed material facts**

1, 2, 4, and 6.

**Disputed material facts**

3.      Section 21.12 was included because of new legislation that established a cap and a surcharge for excess compensation over six percent paid to any TRS member retiring within a four-year period. Dep. Jeffries p. 40.

RESPONSE: Disputed because Dr. Jeffries' description of the legislation is not accurate. The legislation does not establish any cap on creditable earnings increases for teachers and requires a contribution for salary increases in excess of six percent that factor into teacher's final average salary as defined by the pension code. 40 ILCS § 5/16-158(f)

5.      Pursuant to Section 21.12, teachers should not be receiving creditable earnings greater than six percent in a year when compared with the prior year if they are within ten years of retirement eligibility. Dep. Jeffries p. 43. The ten-year eligibility language was incorporated because that was part of the law, though typically the final four years are the highest years of earning. Dep Jeffries p. 51. The District was aware at the time of adoption of Section 21.12 that it would impact employees over the age of 50. Dep. Jeffries p. 103; Response 19, Request to Admit

RESPONSE: EEOC does not dispute the first or third sentences. EEOC objects to the second sentence of this fact as misleading and incomplete. This fact neglects changes in law that occurred over time, most significantly that the exception for raises occurring more than ten years prior to retirement eligibility was dropped in 2014. 40 ILCS § 5/16-158(g) and (h). Additionally,

the purported statement of fact in the second sentence about the purpose of the contract provision

lacks foundation and is at least partially based on inadmissible hearsay.

7.     Earnings of teachers within the retirement eligibility window were tracked.

Deposition Nathon Jones (hereafter "Dep. Jones), p. 17; Responses 13 and 14 of Urbana School

District's Response to Equal Employment Opportunity Commission's First Set of Requests for

Admission (hereafter "Request to Admit"). The tracking information was collected by first

sorting teachers aged 45 and older, and then compared to the number of years of creditable

service each teacher had. Dep. Jones, p. 22-23, 26. The total number of years of creditable

service would have to be separately obtained from School District records and the Teachers

Retirement System of Illinois. Dep. Jones, p. 19; Dep. Franklin p. 81-82. Teachers within ten

years of retirement eligibility would then have their maximum 6% creditable earnings increases

for the following school year noted. Dep. Jones p. 23.

RESPONSE: EEOC objects that the District's responses to EEOC's Requests to Admit lack

foundation and constitute inadmissible hearsay. EEOC disputes that the testimony supports that

only teachers who were within 10 years of retirement eligibility had their earnings tracked. Jones

said that he looked at years of service, but only to see if teachers had more than one year of

service with the District. Doc. No. 30-7[1], EEOC Ex. 7, Jones Dep. 22:8-23:10, 26:17-27:1. The

District's tracking spreadsheets contain no information about teachers' years of service.  Doc.

No. 30-12 at p. 5, EEOC Ex. 21, 6_Tracking_2015-16; Doc. No. 30-12 at p. 15, EEOC Ex. 25;

Doc. No. 30-6, EEOC Ex. 6_Tracking_2016-17.

8.     Despite the existence of 21.12 of the Collective Bargaining Agreement, the

School District paid surcharges to the Teachers' Retirement System of Illinois for increases in

---

[1] EEOC cites to its exhibits submitted in support of its motion for partial summary judgment, Doc. No. 30, by citing the ECF docket number of the exhibit and EEOC's exhibit number.

creditable earnings in excess of six percent for twenty teachers during the time period between 2015-2019. Response 15, Request to Admit; Exhibit F. 9.

RESPONSE:  EEOC objects that the District's responses to EEOC's Requests to Admit lack foundation and constitute inadmissible hearsay. Fact 8 is not supported by admissible evidence.

9.      During the time period 2015 through 2019, the School District was assessed surcharges by TRS for salary increases in excess of six percent in the amount of $51,793.13. See Responses 15 and 16, Request to Admit; Exhibit F.

RESPONSE:  EEOC objects that the District's responses to EEOC's Requests to Admit lack foundation and constitute inadmissible hearsay. Fact 9 is not supported by admissible evidence

10.     The tracking of teachers subject to Section 21.12 of the Collective Bargaining Agreement was not based only on age, and many teachers over the age of fifty were not tracked. Response 16, Request to Admit.

RESPONSE:  EEOC objects that the District's responses to EEOC's Requests to Admit lack foundation and constitute inadmissible hearsay, so fact 10 is not supported by admissible evidence. Furthermore, to the extent that the District claims that some teachers over fifty were not tracked relies on the fact that teachers *new to the district* were not tracked, this is misleading. These teachers could not receive a raise more than 6% above their prior year's salary as they did not have a prior salary with the District. This small exception does not negate the fact that District tracked all teachers over age 45 after their first year with the District. Doc. No. 30-7, EEOC Ex. 7, Jones Dep. 22:8-23:10, 26:17-27:1

11.     Teachers were on occasion authorized to earn in excess of the six percent threshold in Paragraph 21.12 of the Collective Bargaining Agreement. Dep. Franklin p. 62-65. This would occur for positions where there were teacher shortages and the teacher would teach a

sixth assignment, or to get a natural break in the semester. Dep. Franklin p. 62-65. Allowing a teacher to finish at a natural break was in the best interests of the student. Dep. Franklin p. 69. However, when teachers had earnings in excess of the six percent limitation, it was more commonly inadvertent. Dep. Franklin p. 61-62, 144-146.

RESPONSE: Disputed. The District ended the additional assignments, such as teaching a sixth class, teaching a homebound student, or serving as in-house substitutes, for some teachers because of Article 21.12. While terminating such assignments at a natural break such as a semester may have been a better alternative for students than ending them mid-semester, there is no cited testimony supporting that removing teachers from such assignments was in the best interests of students. Doc. No. 30-6, EEOC Ex. 6, Franklin Dep. 39:7-45:1; 61:16-65:8, 68:9-71:13, 110:3-113:6.

**Immaterial facts**

None

**PLAINTIFF'S ADDITIONAL MATERIAL FACTS**

**I.      The District's implementation of Article 21.12.**

1.      The District was aware when it first entered into the CBA containing Article 21.12 in 2007 that as a consequence, any teacher over the age of 50 in the Tier 1 retirement system could not receive a total creditable earnings increase of more than six percent regardless of their years of service, unless the District approves an exception or there is an accidental overage. Doc. 30-8, EEOC Ex. 8, Jeffries 30(b)(6) dep.102:19-103:11; Doc. No. 30-6, EEOC Ex. 6, Franklin 30(b)(6) dep. 116:14-117:5; 117:21-118:17.

2.      When Article 21.12 was adopted, the District did not do anything to determine whether it violated the ADEA. Doc. No. 30-8, EEOC Ex. 8, Jeffries 30(b)(6) dep. 76:18-21.

3.      A teacher age 45 or older with more than ten years of service could have their earnings capped by Article 21.12 because they could retire at age 55 with 20 years of service and receive a discounted pension, even though it is unlikely that a teacher would retire upon reaching age 55. Doc. No. 30-6, EEOC Ex. 6, Franklin 30(b)(6) dep. 82:20-84:15; 40 ILCS § 5/16-132.

4.      The District tracked the creditable earnings of teachers who were age 45 and older who had more than one year of service with the District. Doc. No. 30-7, EEOC Ex. 7, Jones 30(b)(6) dep. 19:15-18; 22:8-23:10; 26:17-27:20; 29:22-30:2; 38:3-17.

5.      The tracking spreadsheets the District used did not contain a field for date of hire or years of service. Doc. No. 30-12 at p. 5, EEOC Ex. 21, 6_Tracking_2015-16; Doc. No. 30-12 at p. 15, EEOC Ex. 25, Doc. No. 30-6, EEOC Ex. 6_Tracking_2016-17.

6.      When the District decided to track the earnings of teachers age 45 and older, it did not know when the teachers would retire, unless the teacher had provided a notice of retirement. Doc. No. 30-8, EEOC Ex. 8, Jeffries 30(b)(6) dep. 109:21-110:6.

7.      It is possible that teachers who are within ten years of retirement eligibility could continue to work for the District for more than ten years. Doc. No. 30-8, EEOC Ex. 8, Jeffries 30(b)(6) dep. 157:16-158:2.

8.      In November 2019, Angi Franklin, the Assistant Superintendent of Human Resources, asked the Urbana School Board if the District could focus on tracking and limiting salary increases to teachers who were within four years of age 55. Doc. No. 30-6, EEOC Ex. 6, Franklin 30(b)(6) dep. 12:18-20, 15:4-7, 110:18-113:6.

9.      There were no changes made to Article 21.12 as a result of temporary exemptions for TRS contributions for creditable earnings increases in excess of six percent expiring on July 1, 2014. Doc. No. 30-6, EEOC Ex. 6, Franklin 30(b)(6) dep. 99:20-102:20.

6

10.     The District has not done anything to try to limit creditable earnings increases of teachers who are more than ten years from retirement eligibility. Doc. No. 30-6, EEOC Ex. 6, Franklin 30(b)(6) dep. 102:16-20; Doc. No. 30-8, EEOC Ex. 8, Jeffries 30(b)(6) dep. 172:1-9.

11.     The District did not track the creditable earnings of teachers who were younger than 45. Doc. No. 30-7, EEOC Ex. 7, Jones 30(b)(6) dep. 21:24-22:4; Doc. No. 30-6, EEOC Ex. 6, Franklin 30(b)(6) dep. 64:16-18.

12.     Under Article 21.12, if there were a 44 year old teacher and 46 year old teacher in the Tier 1 system who had equal experience (of at least 9 years) and should have received creditable earnings increases of more than 6 percent, the 46-year-old's earnings increase would be capped by Article 21.12 and the 44-year old's earnings would not. The only difference between those two teachers is their ages. Doc. No. 30-6, EEOC Ex. 6, Franklin 30(b)(6) dep. 118:18-119:8; Doc. No. 30-8, EEOC Ex. 8, Jeffries 30(b)(6) dep. 107:11-109:20.

## II.     The District capped the earnings of teachers age 45 and older.[2]

### A.     Article 21.12 limited base salary increases.

13.     Charles Koplinski was born in 1965. He was hired in 1991 at the Urbana Middle School, where he teaches eighth grade language arts. Prior to the 2015-16 school year, Charles Koplinski obtained sufficient post-Master's education credits so that he moved from MA +30, Step 24 on the salary schedule, to MA+60, Step 25, for the 2015-16 school year.  Doc. No. 25 at ¶¶ 10, 12, Answer and Affirmative Defenses of Urbana School District No. 116.

14.     According to the 2015-16 Salary Schedule, the salary for a teacher at MA+60, Step 25 is $77,242. Because of Article 21.12, Koplinski's salary for the 2015-16 school year was

---

[2] The facts in Section II are not exhaustive of all instances of teachers' earnings being limited. EEOC's Motion for Partial Summary Judgment, Doc. No. 30, contains additional examples, and there are teachers whose earnings were limited for whom EEOC did not move for summary judgment on damages.

$73,880.94, for a difference of $3,361.06. *Id.* at ¶ 13.

15.    If Koplinski's years of teaching service and placement on the salary schedule remained the same, but Koplinski were age 44 during the 2015-16 school year instead of age 50, his salary would have been $77,242. *Id.* at ¶ 14.

16.    For the 2016-17 school year, Koplinski was at MA+60, Step 26 on the 2016-17 Salary Schedule. According to the 2016-17 Salary Schedule, the salary for a teacher at MA+60, Step 26 is $79,945. Because of Article 21.12, Koplinski's salary for the 2016-17 school year was $78,313.80, for a difference of $1,631.20. *Id.* at ¶ 15.

17.    If Koplinski's years of teaching service and placement on the salary schedule remained the same, but Koplinski were age 44 during the 2016-17 school year instead of age 51, his salary would have been $79,945. *Id.* at ¶ 16.

18.    Because Mr. Koplinski's creditable earnings for 2016-17, 2017-18, 2018-19, and 2019-20 for the District were more than his creditable earnings for 2015-16,  his 2015-16 earnings will not factor into his final average salary and would not have triggered an excess salary contribution to TRS, even if his salary had not been capped. Doc. No. 30-11, EEOC Exs. 15-19 (Columns FTD PAID PAY AMOUNT and TRS Creditable Earnings for Prior Year).

19.    Susan Behrensmeyer's base salary increase was capped at six percent for the 2015-2016 school year because of Article 21.12, when she was 47 years old and had 18 years of service with the District. She should have been paid $73,735 according to her placement of MA + 60, step 23 on the salary schedule, but was paid $71,852.63. Doc. No. 30-10 at p. 10, EEOC Ex. 11, USD_EEOC_0021129; Doc. No. 30-10 at p. 42, EEOC Ex. 13-A, George Report at p. 6, ¶ 19; Doc. No. 30-11 at p. 2, EEOC Ex. 15, EEOC Data 2015-16 (Columns Birthdate, Position Contract Amt, and Base Salary From Salary Schedule); Doc. No. 30-12 at p. 2, EEOC Ex. 20,

8

2015-16 TRACKING 6 (Columns Row and Column of Salary Schedule and Date of Hire[3]).

20.     Because Ms. Behrensmeyer's creditable earnings for 2016-17, 2017-18, 2018-19, and 2019-20 for the District were more than her creditable earnings for 2015-16, her 2015-16 earnings will not factor into her final average salary and would not have triggered an excess salary contribution to TRS, even if her salary had not been capped. Doc. 30-11, EEOC Exs. 15-19 (Columns FTD PAID PAY AMOUNT and TRS Creditable Earnings for Prior Year).

21.     Stephanie Czelder's base salary increase was capped at six percent for the 2015-16 school year because of Article 21.12, when she was 61-62 years old and had 10 years of service with the District. She should have been paid $51,278, according to her placement of MA +0, step 14 on the salary schedule, but was paid $50,575.25. Doc. No. 30-10 at p. 10, EEOC Ex. 11, USD_EEOC_0021129; Doc. No. 30-10 at p. 48, EEOC Ex. 13-A, George Report at p. 12; Doc. No. 30-11 at p. 2, EEOC Ex. 15, 2015-16 EEOC Data 2015-16 (Columns Birthdate, Position Contract Amt and Base Salary From Salary Schedule); Doc. No. 30-12 at p. 2, EEOC Ex. 20, 2015-16 TRACKING 6 (Columns Row and Column of Salary Schedule and Date of Hire).

22.     Cynthia Ditchfield's base salary increase was capped at six percent for the 2015-16 school year because of Article 21.12, when she was 45-46 years old and had 20 years of service with the District. She should have been paid $68,746, according to her placement of MA + 30, step 24 on the salary schedule, but was paid $68,220.54. Doc. 30-10 at p. 10, EEOC Ex. 11, USD_EEOC_0021129; Doc. No. 30-10 at p. 48, EEOC Ex. 13-A, George Report at p. 12, ¶¶

---

[3] Although the exhibit contains a Years of Service column, this appears to be inaccurate. For example, Behrensmeyer's years of service is shown as 19 in 2015-16 TRACKING and 2017-18 TRACKING 6, even though her years of service should have increased by 2 years. In addition, teachers may have additional years of creditable service in the TRS system based on employment with other school districts, but the District did not produce any data reflecting total years of creditable service in TRS.

33-34; Doc. No. 30-11 at p. 2, EEOC Ex. 15, 2015-16 EEOC Data Excerpt (Columns Birthdate, Position Contract Amt and Base Salary From Salary Schedule); Doc. No. 30-12 at p. 2, EEOC Ex. 20, 2015-16 TRACKING 6 (Columns Row and Column of Salary Schedule and Date of Hire).

23.     Because Ms. Ditchfield's creditable earnings for 2016-17, 2017-18, 2018-19, and 2019-20 for the District were more than her creditable earnings for 2015-16, her 2015-16 earnings will not factor into her final average salary and would not have triggered an excess salary contribution to TRS, even if her salary had not been capped.. Doc. No. 30-11, Exs. 15-19 (Columns FTD PAID PAY AMOUNT and TRS Creditable Earnings for Prior Year).

24.     Jill Quisenberry's base salary increase was capped at six percent for the 2015-2016 school year because of Article 21.12, when she was 51 years old and had 24 years of service with the District. She should have been paid $75,035 according to his placement of MA + 45, step 26 on the salary schedule, but was paid $73,203.60. Doc. No. 30-10 at p. 68, EEOC Ex. 13-A, George Report at p. 32, ¶¶ 79, 81; Doc. No. 30-11 at p. 2, EEOC Ex. 15, EEOC Data 2015-16 (Columns Birthdate, Position Contract Amt and Base Salary From Salary Schedule); Doc. No. 30-12 at p. 2, EEOC Ex. 20, 2015-16 TRACKING 6 (Columns Row and Column of Salary Schedule and Date of Hire).

25.     Because Ms. Quisenberry's creditable earnings for 2016-17, 2017-18, 2018-19, and 2019-20 for the District were more than her creditable earnings for 2015-16 , her 2015-16 earnings will not factor into her final average salary and would not have triggered an excess salary contribution to TRS, even if her salary had not been capped.. Doc. No. 30-11, EEOC Exs. 15-19 (Columns FTD PAID PAY AMOUNT and TRS Creditable Earnings for Prior Year).

26.     Margaret Kinnamon's base salary increase was capped at six percent for the 2016-

10

2017 school year because of Article 21.12, when she was 47-48 years old and had 24 years of service with the District. She should have been paid $72,860, according to her placement of MA + 30, step 26 on the salary schedule, but was paid $71,749.28. Doc. No. 30-10 at p. 56, EEOC Ex. 13-A, George Report at p. 20, ¶ 53; Doc. No. 30-11 at p. 4, EEOC Ex. 16, EEOC Data 2016-17 (Columns Birthdate, Position Contract Amt. and Base Salary From Salary Schedule); Doc. No. 30-12 at pp. 9-10, EEOC Ex. 23, 2016-17 TRACKING 6 (Columns Date of Hire, Row and Column of Salary Schedule, because of Section 21.12).

27.     Lorna Mesri's base salary increase was capped at six percent for the 2016-17 school year because of Article 21.12, when she was 63-64 years old and had 22 years of service with the District. She should have been paid $74,463, according to her placement of MA + 0, step 31 on the salary schedule, but was paid $74,243.78. Doc. No. 30-10 at p. 62, EEOC Ex. 13-A, George Report at p. 26, ¶ 67; Doc. No. 30-11 at p. 4, EEOC Ex. 16, EEOC Data 2016-17 (Columns Birthdate, Position Contract Amt. and Base Salary From Salary Schedule); Doc. No. 30-12 at pp. 9-10, EEOC Ex. 23, 2016-17 TRACKING 6 (Columns Date of Hire, Row and Column of Salary Schedule).

28.     Karen Schreiber's base salary increase was capped at six percent for the 2017-18 school year, when she was 56-57 years old and had 26 years of service with the District. She should have been paid $75,439 according to her placement of MA + 15, step 29 on the salary schedule, but was paid $74,647.32. Doc. No. 30-10 at pp. 69-70, EEOC Ex. 13-A, George Report at pp. 33-34, ¶ 86; Doc. No. 30-11 at p 6, EEOC Ex. 17, EEOC Data 2017-18 (Columns Birthdate, Position Contract Amt.); Doc. No. 30-12 at pp. 12-13, EEOC Ex. 24, 2017-18 TRACKING 6 (Columns Date of Hire, Row and Column of Salary Schedule, because of Section 21.12); Doc. No. 30-3, EEOC Ex. 3 at p. 36, USD_EEOC_0000290, 2017-18 Salary Schedule.

29.     Michelle Shaw's base salary increase was capped at six percent for the 2017-18 school year because of Article 21.12, when she was 46-47 years old and had 23 years of service with the District. She should have been paid $73,607 according to her placement of MA + 45, step 24 on the salary schedule, but was paid $72,888.78. Doc. No. 30-10 at p. 70, EEOC Ex. 13-A, George Report at p. 34, ¶ 87; Doc. No. 30-11 at p 6, EEOC Ex. 17, EEOC Data 2017-18 (Columns Birthdate, Position Contract Amt.); Doc. No. 30-12 at pp. 12-13, EEOC Ex. 24, 2017-18 TRACKING 6 (Columns Date of Hire, Row and Column of Salary Schedule, because of Section 21.12); Doc. No. 30-3, EEOC Ex. 3 at p. 36, USD_EEOC_0000290, 2017-18 Salary Schedule.

30.     Sheila Kingry's base salary increase was capped at six percent for the 2019-20 school year, because of Article 21.12, when she was 63 years old and had 12 years of service with the District. She should have been paid $56,510, according to her placement of MA + 30, step 13 on the salary schedule, but was paid $55,933.18. Doc. No. 30-10 at p. 55, EEOC Ex. 13-A, George Report at p. 19, ¶ 52; Doc. No. 30-11 at p. 10, EEOC Ex. 19, EEOC Data 2019-20 (Columns Birthdate, Lane, Credits, Step, Position Contract Amt.); Doc. No. 30-4, EEOC Ex. 4 at p. 45, 2019-20 Salary Schedule; Ex 24, 2017-28 TRACKING 6 (Column Date of Hire).

**B.     Article 21.12 limited supplemental pay for performing additional duties.**

31.     In December 2015, about half-way through the 2015-16 school year, Jonathan Morrison was told that the District would not be able to pay him for any work he performed as an APEX supervisor after December 9, 2015 because he had hit his six percent earnings increase cap. Doc. No. 30-12 at pp. 22-23, EEOC Ex. 28, USD_EEOC_0012377-78; Doc. No. 30-12 at pp. 25-81. EEOC Ex. 29, USD-EEOC_0012380-81.

32.     In December 2019, Cynthia Howie had an internal subbing assignment taken

away because she reached her six percent salary increase threshold. Angi Franklin told associate

principal Travis Courson in an email that they cannot go over the six percent threshold "no

matter what especially if over 51," and that Cynthia Howie was 57. Doc. 30-6, EEOC Ex. 6,

Franklin 30(b)(6) dep. 43:12-44:24; Doc. No. 30-12 at pp. 28-31, EEOC Ex. 30,

USD_EEOC_0015849-52.

33.     During the 2019-20 school year, the District ended a sixth class assignment for

Jennifer (Jenna) Finch and replaced her with a younger teacher, Yvonne Alvarez-Cortes, who

was also within 10 years of retirement eligibility but considered a lower risk for retiring in the

next four years. Doc. 30-6, EEOC Ex. 6, Franklin 30(b)(6) dep. 39:7-42:14; 46:5-13; 61:16-

62:23, 69:22-71:71:19. At the time, Finch was 68-years-old and Alvarez-Cortez was 46-years-

old. Doc. No. 30-11 at p. 10, EEOC Ex. 19, EEOC Data 2019-20 (Column Birthdate).

34.     Mark Harrison was assigned a sixth class during the 2019-20 school year when he

was within 10 years of retirement eligibility, which caused him to receive more than a six

percent creditable earnings increase. He retained his sixth class because he was younger (48-49

years old) and more than four years from retirement eligibility, so the District believe he put the

it at less risk of incurring a penalty from TRS. Doc. No. 30-6, Ex. 6, Franklin 30(b)(6) dep.

105:20-108:5; Doc. No. 30-12 at pp. 12-13, EEOC Ex. 24, 2017-18 TRACKING 6.

III.    **Alternatives to Article 21.12.**

35.     The 2020-23 CBA allows teachers in their first 15 years of creditable service to

move two educational (horizontal) lanes per year on the salary schedule and teachers with 16 or

more years of service to move one educational lane per year. Doc. No. 30-5, EEOC Ex. 5,

Collective Bargaining Agreement between Urbana Education Association (Licensed Faculty),

IEA-NEA and Urbana School District #116 Board of Education, 2020-2023 ("2020-23 CBA"),

at p. 40, USD_EEOC_0000380, Article 21.06 "Education Credit."

36.     Appendix 1 to the 2020-23 CBA contains a "District Retirement Enhancement Program" that provides teachers who meet the eligibility requirements a 4.5 percent increase in their total creditable earnings for up to their final two years of service with the District. *Id.* at p. 50, USD_EEOC_0000390.

37.     Other school districts have collective bargaining agreements that do not contain limit earnings for teachers within a certain number of years of retirement eligibility and instead have retirement incentives for teachers who meet the program's qualifications and provide a notice of intent to retire. *See, e.g.,* Doc. No. 30-10 at pp. 13-23, EEOC Ex. 12, Agreement by and between Bloomington Board of Education School District 87 and Bloomington Education Association, 2017-18 through 2019-20, at pp. 34-44); Doc. 30-12 at pp. 36-37, 41-45, EEOC Ex. 32, Agreement Between the Board of Education Decatur Public School District No. 61 and The Decatur Education Association, 2018-22 at pp. 47-48, 56-60; Doc. 30-12 at pp. 55-62, EEOC Ex. 33, Agreement between the Board of Education, Edwardsville Community unit School District #7 and the Edwardsville Education Association, 2021-23 at pp. 32-39.

**ARGUMENT**

The District has not met its burden of establishing as a matter of law that Article 21.12 does not discriminate because of age. The EEOC agrees this case should be resolved on summary judgment, but in favor of EEOC, as argued in EEOC's Motion for Partial Summary Judgment on Liability and Damages. The District admits that charging party Charles Koplinski would have received a raise of more than six percent in the 2016-17 and 2017-18 school years if he had been 44 years old instead of 50 or 51 years old, as he was at the time. The District ignores these and other facts showing that Article 21.12 treats similarly situated teachers differently because of their age. The District's argument that Article 21.12 is not discriminatory because retirement eligibility is based on age and years of service or because it is relying on pension status, not age, has no merit. Courts have consistently held that age is a cause of adverse employment actions related to retirement eligibility, where eligibility is based on age and years of service. The District's supposed desire to avoid making contributions to TRS is not a defense to engaging in wage discrimination against individual teachers age 45 and older.

## I.     Summary judgment standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must construe all facts and draw all justifiable inferences in the non-movant's favor. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). At the summary judgment stage, the question before the Court is whether EEOC has presented sufficient evidence for a reasonable jury to find that the teachers whose earnings were limited by Article 21.12 suffered an adverse action because of their age. *Marnocha v. St Vincent Hospital and Health Care Center, Inc.*, 986 F.3d 711, 718-19 (7th Cir. 2021)*; Lauth v. Covance, Inc.*, 863

F.3d 708, 715 (7th Cir. 2017). The EEOC must present evidence showing that age was a "but

for" cause or determining factor for the wage discrimination alleged in this case. *Gross v. FBL

Financial Servs.*, 557 U.S. 167, 176 (2009); *Lindsey v. Walgreen Co.*, 615 F.3d 873, 876 (7th

Cir. 2010). This does not mean that age must be the sole cause. *U.S. v. Dyer*, 216 F.3d 568 (7th

Cir. 2000) (describing "but for" causation as "poles apart from 'sole cause'").

     If a policy is discriminatory on its face, as Article 21.12 is, additional proof of bias or

illegal motive based on age is unnecessary. *Kentucky Retirement Systems v. EEOC*, 554 U.S.

135, 147-48 (2008) ("our opinion in no way unsettles the rule that a statute or policy that facially

discriminates based on age suffices to show disparate treatment under the ADEA"); *Solon v.

Gary Comm. School Corp.*, 180 F.3d 844, 855 (7th Cir. 1999) ("The district court was correct to

presume discriminatory intent in this case. . . .The plans are therefore discriminatory on their

face, and independent proof of illicit motive is unnecessary") (internal citations omitted).

Instead, disparate treatment is demonstrated by the terms of the policy itself.[4]

## II.    Article 21.12 treats similarly situated teachers differently because of age.

     The District is not entitled to summary judgment because it admits that Article 21.12

treats similarly situated teachers differently by limiting the salary increases of older teachers

because of their age. (PAF 12, 15, 17).[5] When the section of the Illinois pension code that

requires school districts to make a contribution to TRS for salary increases in excess of six

percent that factor into a teacher's final average salary was first enacted in 2006, there was an

exemption for "salary increases paid to a teacher at a time when the teacher is 10 or more years

---

[4] The District spends much of its brief arguing that EEOC cannot prevail on a disparate impact claim, but as the EEOC stated in response to the District's motion to dismiss, it has not brought a disparate impact claim, so will not address the District's arguments related to disparate impact. Doc. No. 16 at p. 5, n. 4.
[5] PAF refers to paragraphs in Plaintiff's Additional Material Facts. DSF refers to paragraphs in Defendant's Statement of Undisputed Facts.

from retirement eligibility under Section 16-132 or 16-133.2" 40 ILCS § 5/16-158(g) and (h).

Thus, prior to 2014, if a teacher's "high four" years used to compute his or her final average

salary was earned before the age of 45, and the final average salary included a year with an

earnings increase of more than six percent, the District would not owe a contribution to TRS.

This exemption expired in 2014. *Id.* Despite the change in law, the District continued to cap only

the earnings of older teachers, doing nothing to try to change Article 21.12 to address earnings

increases paid to teachers more than 10 years from retirement eligibility. (PAF 9; DSF 6).

Now that the exemption has expired, if, for example, there were a 44-year-old teacher

and 46-year-old teacher in the Tier 1 system who both had twenty years' experience and should

have received creditable earnings increases of more than six percent during the 2019-20 school

year, the 46-year-old's earnings increase would be capped by Article 21.12, the 44-year old's

earnings would not. (PAF 12). This is the case even though the 44-year-old's earnings increase

could cause the District to owe a contribution to TRS if the 44-year-old teacher stopped working

that same year and never worked for another employer in the TRS system (because the teacher

left the profession, went to work for a private school, moved out-of-state, etc.). The 46-year-old,

on the other hand could continue working for the District for another 15 years and his 2019-20

salary would not factor into his final average salary, so an earnings increase above six percent

(had his salary not been capped) would not have caused the District to incur a TRS contribution.

The District admits that the only difference between these two teachers is their ages. (PAF 12).

Similarly, the District admits that had Koplinski been 44 instead of 50 or 51 when he earned his

lane movements on the salary schedule that should have given him a raise of more than six

percent, his salary would not have been capped. (PAF 13-17). That is straightforward age

discrimination and establishes that age was the but for cause of the limit on earnings increases at

issue in this case. *Solon*, 180 F.3d at 850 (holding early retirement incentive plan that cut off benefits to those over age 62 discriminated against such employees by denying them benefits available to similarly situated younger employees).

**III.    The District limited earnings based on age, not years of service or pension status.**

The District relies on *Hazen Paper* and *Kentucky Retirement* to support its argument that age is not a but for cause of compensation limits due to Article 21.12 because retirement eligibility is based on both age and years of service and it is relying on pension status, not age, to make compensation decisions. The fact that Article 21.12 treats similarly situated teachers differently because of their age, and that the District considers age in applying Article 21.12 to limit earnings increases, make both *Hazen Paper* and *Kentucky Retirement* inapposite because age "actually played a role" in causing the pay reductions in this case. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

**A.    Hazen Paper is distinguishable because age is a factor in applying Article 21.12.**

In *Hazen Paper*, 507 U.S. at 607-09, the Supreme Court held that terminating an employee who was six months shy of attaining the years of service necessary for his pension to vest did not violate the ADEA because age is analytically distinct from years of service. But here, applying Article 21.12 to limit a teacher's compensation is directly dependent on the teacher's age. No teacher under age 45 will have their earnings limited by Article 21.12, but many teachers over 45 could; and no teacher over age 50 could receive more than a six percent earnings increase over the prior year because of Article 21.12. (PAF 1, 3, 4, 10, 11). This constitutes disparate treatment regarding wages, because as *Hazen Paper* explained, "the employee's protected trait actually played a role in that process and had a determinative influence on the outcome." 507 U.S. at 610. *See also EEOC Informal Discussion Letter, ADEA:*

*Age-Based Pension Calculations* (October 6, 2011) https://www.eeoc.gov/foia/eeoc-informal-discussion-letter-230 (last visiting August 9, 2021) (distinguishing *Hazen Paper* and concluding that a proposed CBA clause limiting increases in a teacher's creditable earnings to six percent during the four years before a teacher's initial eligibility for a non-discounted annuity likely constitutes age-based disparate treatment in violation of the ADEA).

The Seventh Circuit distinguished *Hazen Paper* in a case like this one where retirement eligibility was based on age and years of service. In *Huff v. UARCO, Inc.*, 122 F.3d 374, 387 (7th Cir. 1997), the Seventh Circuit held that an early retirement plan that allowed employees whose employment ended before becoming eligible for early retirement at age 55 with ten years of service to take a lump sum refund of their pension contributions but only allowed employees whose employment terminated after becoming eligible for early retirement to receive a payout over time discriminated based on age. *Id.* The Seventh Circuit distinguished *Hazen Paper*, because under UARCO's pension plan, every worker under age 55 would be allowed to receive a lump sum payment, regardless of years of service, which was not the case for workers over age 55. *Id.* at 388. "But for the age-related restrictions, certain workers over fifty-five would be eligible for the lump sum payout. This is not a case where there is merely a correlation between the age and the denial of a particular benefit. UARCO's policy draws an express line between workers over fifty-five and those under." *Id.* The fact that some workers over the age of 55 who did not have 10 years of service would remain eligible for a lump sum payment did not alter the court's holding that the plan was discriminatory. *Id.* at 387.

Similarly, the Northern District of Illinois distinguished *Hazen Paper* when it held in *Kiser v. Naperville Comm Unit*, 227 F. Supp. 2d 954, 964 (N.D. Ill. 2002) that the same TRS retirement eligibility rules as at issue here were age-related. The plaintiff had alleged that a

school district terminated him shortly before he was eligible to retire with a TRS annuity to

prevent him from receiving contractual retirement benefits. *Id.* at 959. The court denied the

district's motion to dismiss, reasoning that the retirement benefits at issue were age-related

because Kiser's contract provided he would receive certain benefits upon retiring and taking a

TRS annuity, an annuity was available upon reaching age 55 with at least 20 years of service,

and Kiser would have turned 55 shortly before his contract was going to expire. *Id.*

The Eighth Circuit also distinguished *Hazen Paper* in *Hilde v. City of Eveleth*, 777 F.3d

998, 1001 (8th Cir. 2015), when it reversed summary judgment against a 51-year-old police

officer who challenged his failure to be promoted to police chief because he was eligible for

retirement, having obtained the minimum requirements of 3 years of service (he had 29 years of

service) and the age of 50. The court concluded that "because Hilde had long had 3 years of

service, his age was not analytically distinct from his retirement eligibility." *Id.* at 1006. "On the

facts here, retirement eligibility is always correlated with age because it is dependent on the

employee reaching 50; it cannot be 'divorced from age.'" *Id.*

Other courts have held that age is a triggering factor for adverse employment actions

related to retirement eligibility based on age and years of service. *See, e.g., Auerbach v. Bd. of*

*Educ. of the Harborfields Cent. School Dist. of Greenlawn*, 136 F.3d 104, 109-110 (2d Cir.

1998) (holding an early retirement incentive plan with minimum service and age requirements

violated the ADEA by barring employees from receiving benefits if they did not retire during the

first year they met the minimum age requirement of turning 55, where employees under age 55

who met the service requirements remained eligible for benefits);[6] *Abramson v. Bd. of Ed. of*

---

[6] Although the plaintiffs established a *prima facie* case of age discrimination, the Second Circuit affirmed
summary judgment for the employer in *Auerbach* because it found that the ERIP complied with the
ADEA's requirements regarding early retirement incentives in that it was voluntary, made available for a

*Wappingers Cent. Sch. Dist.*, No. 01 Civ. 10859 (CM), 2002 WL 1354711, at * 1, 4-6 (S.D.N.Y.

June 21, 2002) (granting summary judgment to the plaintiffs on a claim that a benefit plan

discriminated against the plaintiffs because of age, finding that the triggering factor for denial of

benefits was age, not years of service); *O'Brien v. Bd. Of Ed. of Deer Park Union Free School

Dist. Deer Park Public Sch.*, 92 F. Supp. 2d 100, 111 (E.D.N.Y. 2000) (same).

> ### B.  Age was the determining factor for teachers' earnings being limited, despite retirement eligibility being based on age and years of service.

In this case, because age is a factor in retirement eligibility, age is not analytically distinct

from retirement eligibility and is the triggering factor in limiting earnings increases due to

Article 21.12. *See Hilde*, 777 F.3d at 1006; *Auerbach*, 136 F.3d at 110. When Charles

Koplinski's salary increase was capped in 2015-16, he had 24 years of teaching service, so like

the officer in *Hilde*, he had long ago met the service requirements for retirement eligibility. (PAF

13). The same is true for other teachers whose earnings were limited by Article 21.12. (PAF 19,

24, 1, 26, 27, 28, 29). Koplinski and other teachers affected by Article 21.12 did not have their

earnings capped beginning when they met the service requirements to be within 10 years of

retirement eligibility, but only after they reached the age of 45 (PAF 13-16, 20-30).

Tellingly, the District did not track years of service (other than determining that the

teacher is in his or her first year of service such that Article 21.12 would not apply), but tracked

the earnings only of those teachers age 45 or older, which further supports that the triggering

factor and but for cause for the application of Article 21.12 was a teacher's age. (PAF 4, 11).

Years of service is not even a field in the District's tracking spreadsheets. (PAF 5). When a

district administrator proposed changes to the District's salary tracking practices, the proposed

---

reasonable period of time, and did not arbitrarily discriminate based on age. 136 F.3d at 112-114
(applying 29 U.S.C. § 623 (f)(2)(B)(ii)).

change of tracking teachers within four years of age 55 (i.e., teachers age 51 or over) was explicitly age-based, with no mention of years of service. (PAF 8). The District claims that there were many teachers over age 50 whose salaries were not tracked or capped, Doc. No. 31 at pp. 10, 13,[7] but that is only because those teachers were in their first year of service with the District and thus had no prior year's creditable earnings with the District, so Article 21.12 would not apply. DSF 1; 40 ILCS § 5/16-158(f); EEOC's Response to DSF 7, 10.

Article 21.12 is like the discriminatory plans in *Huff* and *Auerbach* that distinguished between employees under and over age 55 and treated younger employees more favorably, with Article 21.12 drawing a clear line between those over and under age 45 and favoring those under age 45. Every teacher younger than 45, including those who have satisfied the years of service requirements for retirement eligibility, can receive a salary increase of more than six percent without being affected by Article 21.12. (PAF 10-11). But many teachers age 45 or older cannot, and *no* teacher over the age of 50 can, regardless of years of service. (PAF 1, 3). Thus, there can be no dispute that age is the but for cause of Article 21.12 capping the earnings for age 50 and older (PAF 1, 3, 10, 11). Even a teacher who first started teaching in the TRS system at age 50 could not earn six percent more than the year before because within ten years, he or she will be age 60 and have ten years of service. (PSF 1). Under the ADEA, the age-based distinction Article 21.12 draws for limiting compensation is illegal. *Huff*, 122 F.3d at 388.

### C.   The District considers teachers' ages in deciding whether to make exceptions to Article 21.12.

---

[7] On page 10 of its motion, the District asserts that when it tracked teachers it did so first by age, and then hand-calculated the years of service. (citing Dep. Franklin pp. 81-82 and Dep Jones pp. 22-23). Jones, who did the tracking for the District, says only that he looked to see if a teacher had more than one year of service with the District, eliminating those in their first year of service and including all those with more than one year of service with the District. Jones Dep. at pp. 22-23. The District cites the same portion of Jones's deposition on page 13 to support its assertion that there were teachers over the age of 50 who were not tracked because they did not have the requisite years of service, but Jones' testimony is clear that this is only because the teacher was in his or her first year of service.

The District has considered teachers' ages in deciding whether to permit teachers to continue assignments that have or will cause an earnings increase over six percent, which is further evidence that an employee's age, not years of service, determines whether the six percent cap applies. (PAF 31-34). The District's consideration of age in deciding to cap the earnings of older teachers while making exceptions for some relatively younger teachers shows it is acting on age-based assumptions and stereotypes that relatively older teachers as a class are more likely to retire, which violates the ADEA. *See Hazen Paper*, 507 U.S. at 613 (explaining an employer could violate the ADEA if it assumed a correlation between pension status and age and acted accordingly); *Hilde*, 777 F.3d at 1005-06 (characterizing as prohibited age-stereotyping assuming that a retirement-eligible employee was uncommitted and would not fill a position for the long-term). *Cf. Solon*, 180 F.3d at 850 (noting that a 66-year-old who planned to retire at age 70 would be discriminated against by an early retirement incentive program that treated as "early" retirement only before age 62 and provided no incentives for retirement after age 62).

**D.      This case is about wage discrimination because of age, not pension status.**

The District finds no more support for its defense of Article 21.12 in *Kentucky Retirement* than in *Hazen Paper*. *Kentucky Retirement* involved the method by which the Kentucky Retirement System calculated disability pension benefits. 554 U.S. at 139-40. In holding that the disability retirement plan did not violate the ADEA, the Court explained, "We consider not an individual employment decision, but a set of complex systemwide rules. These systemic rules involve, *not wages*, but pensions—a benefit that the ADEA treats somewhat more flexibly and leniently in respect to age." *Id* at 144 (emphasis added). The ADEA allows

consideration of age in determining the payment or cost of some fringe benefits,[8] but no provision of the ADEA permits salaries to be based on age.

By *Kentucky Retirement's* own terms, it does not apply because this case involves wages paid to existing teachers, not the calculation of pension benefits or teachers' pension status. To the extent this case concerns pension status, it is only because of assumptions about when a teacher may retire and collect a pension. Article 21.12 wrongly assumes that teachers will retire as soon as they are eligible for a discounted pension at age 55, which the District admits not many teachers do. (PAF 3). Some teachers impacted by Article 21.12 have continued working despite being eligible for retirement. (PAF 7, 21, 27-28, 30, 33). Many other teachers whose earnings were limited by Article 21.12 were years from being eligible for retirement when their earnings were capped, some being capped in years that will not factor in their final average salary. (*See, e.g.,*, PAF 13-20, 22-26, 29). The District has no idea when teachers will retire and collect a pension. (PAF 6). Yet it is acting on assumptions when teachers may retire by capping earnings increases of older teachers. (PAF 1, 3, 10-11).

## IV.   The District's desire to avoid TRS contributions is not a defense to an explicitly discriminatory policy that relies on age-based assumptions.

The District claims the motive for Article 21.12 is to avoid contributions to TRS for excess salary increases. (DSF 3). Article 21.12 is analogous to policies related to pension policies that the Supreme Court has struck down as sex discriminatory. In *City of Los Angeles, Dept. of Water and Power v. Manhart,* 435 U.S. 702, 705, 711 (1978), the Supreme Court held

---

[8] For example, 29 U.S.C. § 623(f)(2)(B)(i) allows an employee benefit plan to provide lower benefits to older than to young employees if "the actual amount of payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger worker." See 29 C.F.R. § 1625.10(b) ("The term [fringe benefits] does not refer to wages or salary in cash, neither section 4(f)(2) nor any other section of the Act excuses the payment of lower wages or salary to older employees on account of age.").

that a pension plan that reduced female employees' take-home pay by requiring female employees to contribute more in monthly pension contributions than male employees, violated Title VII. The employer's justification for the difference was the greater pension cost for the average female employee than the average male employee because women generally live longer than men. *Id.* at 705. Citing the statute, which makes it unlawful "to discriminate against any *individual"* because of "such *individual's"* protected characteristic, the Supreme Court explained that the focus of Title VII is on the individual. *Id.* at 708 (quoting 42 U.S.C. § 2000e-2(a)(1)) (emphasis in original). The employer had no idea whether any individual female employee would fit the generalization that women live longer than men. The employer argued that since it could not know which individuals will predecease the average woman, to be fair to men and prevent them from subsidizing the pensions of females, it had to charge females as a class more. *Id.* a 708-09. The Court rejected this argument, reiterating that classifying employees based on sex is unlawful, just as classifying employees based on race or national origin is. *Id.* at 709.

In *Arizona Governing Comm. for Tax Deferred Annuity and Deferred Compensation Plans. v. Norris*, 463 U.S. 1073, 1077, 1081-82 (1983), the Supreme Court held that Arizona's practice of offering lower monthly retirement benefits to women than to men at the same contribution level, was discriminatory. Arizona argued the plans were legal because men and women would receive a benefit plan with the same present actuarial value. Relying on *Manhart*, the Supreme Court rejected this argument, holding it was unlawful to classify employees based on their sex and make assumptions about their longevity. *Id.* at 1082-83. "The use of sex-segregated actuarial tables to calculate retirement benefits violates Title VII whether or not the tables reflect an accurate prediction of the longevity of women as a class, for under the statute '[e]ven a true generalization about [a] class' cannot justify class-based treatment. An individual

woman may not be paid lower monthly benefits simply because women as a class live longer than men." *Id.* at 1084-85 (quoting *Manhart*, 435 U.S. at 709).

Following *Manhart* and *Norris*, even if the probability is greater that an earnings increase over six percent paid to a 60-year-old teacher may cost the District more by way of a TRS contribution down the road than the same increase to a 40-year-old (and the District presented no evidence that this is actually the case), the age-based classification drawn by Article 21.12 violates the ADEA. The ADEA contains parallel language to Title VII barring discrimination against "any individual" because of such "individual's age." 29 U.S.C. § 623(a). The District cannot reduce the earnings of individual teachers by relying on class-wide, age-based assumptions just as the employer in *Manhart* could not reduce the pay of individual female workers. The employers in *Manhart* and *Norris* did not know how long any individual female employee would live, and the District does not know when any individual teacher will retire or otherwise stop working in the TRS system and whether an earnings increase will cause the District to incur an excess salary contribution to TRS (PAF 6). But Article 21.12 limits the compensation of only teachers age 45 and older, with no limitations on the earnings of teachers younger than 45. This is no different than the discriminatory pension plans in *Manhart* and *Norris* that treated females less favorably as a class.

State law makes it potentially more expensive for school districts to provide raises over six percent to certain teachers by increasing the school district's share of pension costs. The EEOC understands the District's desire to want to minimize those costs, but it cannot do so in a way that discriminate against teachers based on age. The District implemented an age-discriminatory policy in response to a law that is age neutral. The District could have selected an age-neutral policy like it has in the current collective bargaining agreement negotiated after the

26

EEOC filed suit in this case (PAF 35-36), or done what many other Districts have done and offer incentives to teachers who provide notice of intent to retire. (PAF 37).

## CONCLUSION

Article 21.12 clearly treats many teachers over age 45 and all teachers over age 50 worse than similarly situated younger teachers by capping year-over-year increases in their creditable earnings. The District has done so based on mere assumptions about when older teachers as class are likely to retire. Such age-based decision-making violates the ADEA. For this reason, and for all of the reasons stated above, the Defendant's Motion for Summary Judgment should be denied, and judgment should be entered in favor of the EEOC.

Respectfully submitted,

<u>s/Ann Henry</u>
Ann Henry
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Chicago District Office
500 West Madison Street, Suite 2000
Chicago, Illinois 60661
Telephone: (312) 869-8098
Fax: (312) 869-8124
E-Mail: ann.henry@eeoc.gov
ARDC# 6272394

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2021, I electronically filed the foregoing **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S RESPONSE TO RESPONSE TO URBANA SCHOOL DISTRICT NO. 116'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Susan E. Nicholas
Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd.
301 North Neil Street, Suite 400
Champaign, Illinois 61820
(217) 363-3040
(217) 356-3548 (fax)
snicholas@robbins-schwartz.com

Michael Slutsky
N. Elizabeth Reynolds
Alison Slutsky & Kennedy, P.C.
230 W. Monroe St., Suite 2600
Chicago, IL 60606
(312) 364-9400
(312) 364-9410 (fax)
slutsky@ask-attorneys.com
reynolds@ask-attorneys.com

Dennis L. Weedman
Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd.
510 Regency Court
Collinsville, IL 62234
(618)343-3540
(618) 343-3546
dweedman@robbins-schwartz.com

Ryan Thoma
Illinois Education Association, NEA
230 W. Monroe Street, Suite 2640
Chicago, IL 60606
(312) 407-0227
ryan.thoma@ieanea.org
ARDC #6314134

Respectfully submitted,

s/Ann Henry
Ann Henry
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Chicago District Office
500 West Madison Street, Suite 2000
Chicago, Illinois 60661
Telephone: (312) 869-8098
Fax: (312) 869-8124
E-Mail: ann.henry@eeoc.gov
ARDC# 6272394

28