E-FILED
Tuesday, 07 September, 2021  03:57:36 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:18-cv-2212 |
| | ) | |
| URBANA SCHOOL DISTRICT NO. 116, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| URBANA EDUCATION ASSOCIATION, IEA-NEA, | ) | |
| | ) | |
| Rule 19 Defendant. | ) | |

## RESPONSE TO EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY AND DAMAGES

**NOW COMES** Urbana School District No. 116 (hereafter "District" or "School District"), and in response to the Equal Employment Opportunity Commission's Motion for Partial Summary Judgment on Liability and Damages, states:

## INTRODUCTION

The Equal Employment Opportunity Commission ("EEOC") has filed a motion for partial summary judgment on liability and damages on its complaint alleging violation of the Age Discrimination in Employment Act in the above entitled matter.  The Complaint is based upon a provision in the Collective Bargaining Agreement ("CBA") between the Board of Education of Urbana ("District", "School District" or "Board") and the Urbana Education Association, IEA/NEA ("Union") which limits increases in creditable earnings of certain

1

employees when an employee is within ten years of retirement eligibility.  The motion should be

denied, and summary judgment granted in favor of Defendant Urbana School District No. 116,

as the limitation is to avoid the imposition of surcharges imposed by the Teachers' Retirement

System of Illinois and constitutes a reasonable factor other than age precluding liability by the

School District.

## UNDISPUTED MATERIAL FACTS

1, 2, 7, 8, 9, 10, 11, 14, 15, 16, 17, 18, 19, 20, 21, 22, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 78, 79, 81, 83.

## DISPUTED MATERIAL FACTS

12.     The District did engage in or consider legal, economic, or other types of analysis in

implementing Article 21.12.  Section 21.12 was included because of new legislation that

established a cap and a surcharge for excess compensation over six percent paid to any TRS

member retiring within a four-year period.  Dep. Jeffries p. 40.  The provision was included to

make sure every employee received every type of compensation that they were entitled, but if

certain employee's compensation increased more than six percent from the previous year's

compensation, then there would be a charge for the School District.  Dep. Jeffries p. 40-41; 43.

Section 21.12 was adopted in response to the change in The Pension Code to shield the District

from those surcharges or penalties.  Dep. Jeffries p. 189.

13.     The District did not perform any analysis to try to predict the contributions it would have

to make to TRS if it did nothing in response to the change in the Illinois Pension Code.  Pursuant

to Section 21.12, teachers should not be receiving creditable earnings greater than six percent in

a year when compared with the prior year if they are within ten years of retirement eligibility.

Dep. Jeffries p. 43.  The ten-year eligibility language was incorporated because that was part of

the law, though typically the final four years are the highest years of earning.  Dep Jeffries p. 51.
The District was aware at the time of adoption of Section 21.12 that it would impact employees
over the age of 50.  Dep. Jeffries p. 103; Response 19, Request to Admit.

77.     The conclusion that because Ms. Killion was paid $6983.23 for her sixth assignment, she
would have earned an additional 20% of her base salary, or $15,502.74, had she taught the entire
school year, for a loss of $8,519.51, is speculative. Teachers were on occasion authorized to earn
in excess of the six percent threshold in Paragraph 21.12 of the Collective Bargaining
Agreement.  Dep. Franklin p. 62-65.  This would occur for positions where there were teacher
shortages and the teacher would teach a sixth assignment, or to get to a natural break in the
semester. Dep. Franklin p. 62-65.  Allowing a teacher to finish at a natural break was in the best
interests of the student.  Dep. Franklin p. 69.  However, when teachers had earnings in excess of
the six percent limitation, it was more commonly inadvertent.  Dep. Franklin p. 61-62, 144-146.

80.     The conclusion that because Ms. Howie earned $1,410 during the approximately 12
weeks that she had her in-house sub assignment, she would have continued with the assignment
for the remainder of the school year, about another 20 weeks, she would have earned at least
$2,350 is speculative.  Internal substitute teaching can be done by anyone in the building.  Dep.
Franklin p. 45.  It does not have to be the same person every day, and it is a popular position. Id.
Franklin did not know if the same person took on the internal substitute position that Howie had
been doing, or if it was somebody different every day.  Id.

82.     Ms. Finch was paid $6,169.91 for her sixth assignment, but would have earned an
additional 20% of her base salary, $13,450.40 had she taught the entire school year, for a loss of
$7,270.49.  Sixth assignments are held until another teacher is hired for the position.  Franklin

Dep. P. 39.  Franklin testified that Killion's sixth assignment was filled by Alvario Cortez, who did not have the requisite years of service.  Dep. Franklin p. 46.

## UNDISPUTED IMMATERIAL FACTS

3.      The fact that the CBA between the Association and District for 2020-2023 does not contain Article 21.12 or any other similar provision limiting creditable earnings based on years from retirement is immaterial, and barred by Federal Rule of Civil Procedure 407.

4.      The fact that the 2020-23 CBA allows teachers in their first 15 years of creditable service to move two education (horizontal) lanes per year on the salary schedule and teachers with 16 or more years of service to move one educational lane per year is immaterial, and barred by Federal Rule of Civil Procedure 407.

5.      The fact that Appendix 1 to the 2020-23 CBA contains a "District Retirement Enhancement Program" that provides teachers who meet the eligibility requirements a 4.5 percent increase in their total creditable earnings for up to their final two years of service with the District is immaterial, and barred by Federal Rule of Civil Procedure 407.

6.      That other school districts have had collective bargaining agreements that do not contain any provision limiting earnings for teachers within a certain number of years of retirement eligibility and instead have retirement incentives guaranteeing earnings increases for teachers who meet the program's qualifications and provide notice of intent to retire is immaterial.  How other districts negotiate potential caps on creditable earnings limitations has no bearing on how the Board and the Union negotiated a cap on creditable earnings.

23.     That in November 2019, Franklin asked the Urbana School Board if the District could focus on tracking and limiting salary increases to teachers who were within four years of age 55 is immaterial, and barred by Federal Rule of Civil Procedure 407.

24.     That there were no changes made to Article 21.12 as a result of the temporary exemptions for TRS contributions for creditable earnings increases in excess of six percent on July 1, 2014, is immaterial, and barred by Federal Rule of Civil Procedure 407.

37.     The Association filed a grievance in August 2016 on behalf of Koplinski regarding his salary being capped because of Article 21.12.  It attached to the grievance the EEOC Informal Discussion Letter which concluded that a provision similar to Article 21.12 violated the ADEA. However, the subject matter was not grievable under the CBA.  See ADEA Ex. 10, USD-EEOC-0005767-73.

## ADDITIONAL MATERIAL FACTS

1.     Earnings of teachers within the retirement eligibility window were tracked.  Deposition Nathon Jones (hereafter "Dep. Jones), p. 17; Responses 13 and 14 of Urbana School District's Response to Equal Employment Opportunity Commission's First Set of Requests for Admission (hereafter "Request to Admit").  The tracking information was collected by first sorting teachers aged 45 and older, and then compared to the number of years of creditable service each teacher had.  Dep. Jones, p. 22-23, 26.  The total number of years of creditable service would have to be separately obtained from School District records and the Teachers Retirement System of Illinois. Dep. Jones, p. 19; Dep. Franklin p. 81-82.  Teachers within ten years of retirement eligibility would then have their maximum 6% creditable earnings increases for the following school year noted.  Dep. Jones p. 23.

2.      Despite the existence of 21.12 of the Collective Bargaining Agreement, the School

District paid surcharges to the Teachers' Retirement System of Illinois for increases in creditable

earnings in excess of six percent for twenty teachers during the time period between 2015-2019.

Response 15, Request to Admit; Exhibit A.

3.      During the time period 2015 through 2019, the School District was assessed surcharges

by TRS for salary increases in excess of six percent in the amount of $51,793.13.  See Responses

15 and 16, Request to Admit; Exhibit A.

4.      The tracking of teachers subject to Section 21.12 of the Collective Bargaining Agreement

was not based only on age, and many teachers over the age of fifty were not tracked.  Response

16, Request to Admit.

## <u>ARGUMENT</u>

The ADEA prohibits adverse actions against employees who are forty years old or older

because of their age.  29 U.S.C. §§623(a), 631(a).  Claims under both a disparate treatment and a

disparate impact theory are recognized.  "Summary judgment is appropriate where there are no

genuine issues of material fact and the movant is entitled to judgment as a matter of law."

*Dayton v. Oakton Community College*, 907 F.3d 460, 465 (7th Cir. 2018), citing *O'Brien v.*

*Caterpillar Inc.*, 900 F.3d 923, 928 (7th Cir. 2018).  "Summary judgment is not appropriate 'if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Id*.

citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The "EEOC" cannot establish

a claim for violation of the Age Discrimination in Employment Act, and even if it could establish

a prima facie case, a reasonable factor other than age clearly exists.

As an initial matter, the School District objects to reference to changes in the CBA as

provided in the paragraphs referenced as Undisputed Material Facts.  Rule 407 of the Federal

Rules of Civil Procedure provides, "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for warning or instruction." F.R.C.P. 407. Such a change may be used for another purpose, such as impeachment, proving ownership, control, or the feasibility of precautionary measures. *Id*. *Pastor v. State Farm Mut. Auto Ins. Co.*, 487 F.3d 1042 (7th Cir. 2007) held that changes to a contract are included in the protection of Rule 407. As such, consideration of what changes, if any, that were negotiated to the CBA in 2020 are not to be considered.

### A. Article 21.12 treats similarly situated teachers differently because of retirement eligibility status.

The EEOC cannot establish a disparate treatment claim under the ADEA. The Supreme Court held that the ADEA does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 174 (2009). The Court held that "[t]o establish a disparate-treatment claim under the plain language of the ADEA, … a plaintiff must prove that age was the "but for" cause of the employer's adverse decision." *Id*. at 176. "A plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the "but for" cause of the challenged employer decision." *Id*. at 177-78.

In *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), the employer dismissed the plaintiff at age 62 and shortly before he was able to vest in the pension program, and plaintiff sued claiming violation of the ADEA. *Id*. at 606-07. "When the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is." *Id*. at 611. "[T]here is no disparate treatment under the ADEA when the factor

motivating the employer is some feature other than the employee's age." *Id*. at 609.  The Court noted that "a decision by the company to fire an older employee solely because he has nine-plus years of service and therefore is 'close to vesting' would not constitute discriminatory treatment on the basis of age." *Id*. at 612.

"[W]hen an employee adopts a pension plan that includes age as a factor, and that employer then treats employees differently based on pension status, a plaintiff, to state a disparate treatment claim under the ADEA, must adduce sufficient evidence to show that the differential treatment was 'actually motivated' by age, not pension status." *Kentucky Retirement System v. EEOC*, 554 U.S. 135, 143 (2008).  Even where an employee was dismissed solely to reduce salary costs, it did not constitute age discrimination. *Anderson v. Baxter Healthcare Corp*, 13 F.3d 1120, 1126 (7th Cir. 1994).

As in *Hazen Paper*, the CBA provision Section 21.12 has nothing to do with inaccurate and stigmatizing stereotypes underlying the ADEA.

## B. Age is a factor, but not the only factor, in determining retirement eligibility.

Despite the EEOC allegations that "retirement eligibility is based on a combination of age and years of service," it argues in its summary judgment motion that age is the "triggering" or determinative factor in applying Section 21.12.  Doc #1, p.3., ¶3.  The *Illinois Pension Code* provided at the time Section 21.12 existed in the Collective Bargaining Agreement: "[i]f the amount of teacher's salary for any school year used to determine final average salary exceeds the member's annual full-time salary rate with the same employer for the previous school year by more than 6%, the teacher's employer shall pay to the System, in addition to all other payments required under this Section and in accordance with the guidelines established by the System, the present value of the increase in benefits resulting from the portion of the increase in salary that is

in excess of 6%." 40 ILCS 5/16-158(f). Final average salary is defined as, "the average salary for the highest 4 consecutive years within the last 10 years of creditable service as determined under the rules of the board." 40 ILCS 5/16-133(b). Retirement eligibility for Tier I teachers is determined by the *Illinois Pension Code*. 40 ILCS 5/16-101 *et seq*. A teacher is eligible for a discounted annuity at age 55 with at least 20 years of service, or an annuity without discount at age 55 with at least 35 years of service, at age 60 with at least 10 years of service, or at age 62 with at least 5 years of service in the Teachers' Retirement System of Illinois (hereafter "TRS"). 40 ILCS 5/16-132. All of the teachers that are the subject of this suit are or were Tier I teachers.

Once a teacher is within ten years of retirement eligibility, the highest four years of compensation can occur within any of the final ten years of employment. The *Illinois Pension Code* exempted creditable earnings in increases in excess of 6% from the payment required by Section 16-158(f) of the Code when the member was ten or more years from retirement eligibility. 40 ILCS 5/16-158(g). This exemption expired in 2014. 40 ILCS 5/16-158(h). Moreover, Public Act 102-0016 modified the calculation as the higher of that set forth above or "an amount calculated by the System using the average salary for the 4 highest years within the last 10 years of creditable service as determined under the rules of the board" for those teachers retiring after June 1, 2021. See Public Act 102-0016; 40 ILCS 5/16-133(b-5).

The language in Section 21.12 traces the language in the *Pension Code* as it existed prior to its most recent amendment, and clearly ties the creditable earnings restriction to the *Pension Code* language. Final average salary is defined as, "the average salary for the highest 4 consecutive years within the last 10 years of creditable service as determined under the rules of the board," or for those retiring after June 1, 2021, the highest four years within the last ten years of creditable service, if higher. 40 ILCS 5/16-133(b); 40 ILCS 5/16-133(b-5). The EEOC does

not cite a single teacher who was not within ten years of retirement eligibility under the *Pension Code* provisions or Section 21.12.  Instead, the argument relies on teachers who were within the ten years of eligibility, and capped as a consequence of Section 21.12.

### C.  Courts have repeatedly held that pension based eligibility is a legal factor to consider that does not violate the ADEA.

The EEOC relies on *Huff v. UARCO, Inc.*, 122 F.3d 374, (7th Cir. 1997) in support of its contention that considering age as a factor is sufficient to establish discriminatory employment policies related to retirement eligibility.  However, *UARCO* involved whether UARCO's pension policy, which provided that a plan participant who had completed ten years of service and attained the age of fifty-five was eligible for early retirement, and a plan provision that terminating employment before becoming eligible for early retirement may elect a lump sum refund with interest, was sufficient to establish a claim under the ADEA.  *Id*. at 387.  In UARCO, the employer admitted there was no age-related cost to the lump sum payout as opposed to the payout over time.  *Id*. In distinguishing *Hazen Paper*, the *UARCO* court noted that the plaintiff in *Hazen Paper* was dismissed due to potentially vesting in the pension, and that while age and years of service held a correlation, it was not sufficient to characterize plaintiff's dismissal as based on age.  *Id*.  "The ADEA provides generally that age-based distinctions in benefits are unlawful *unless, as part of a bona fide employee benefits package, the distinction is justified by an age-related cost consideration.*"  *Id*.  In addition, the employer's policy drew a clear line based only on age.  *Id*. at 358.  The facts in *UARCO* do not align with the matter before the court.  First, it is both age and years of service that are considered by the District.  Some employees over the age of 45 were not tracked, in alignment with pension eligibility.  Further, in this case, the payments in excess of six percent over the prior years' creditable earnings for the

highest paid four years *do* result in a cost to the District.  It is not an arbitrary age distinction, but a distinction based upon avoiding surcharges to the District.

*Kiser v. Naperville Community Unit*, 227 F.Supp.2d 954 (2002), is inapplicable as well. *Kiser* involved a situation where in-house legal counsel's contract was terminated for, at least to the extent described in the opinion, ambiguous cost reasons, and the opinion relates to a motion to dismiss.  Further, at least at that stage of the proceedings, the employer denied that his retirement benefits had an age-related element.  The District does not deny that age is a *factor* in retirement eligibility, but rather that it is only one factor.

The EEOC also cites several non-binding cases related to the applicability of the ADEA to pension related decisions.  *Hilde v. City of Eveleth*, 777 F.3d 998 (8th Cir. 2015), involved an assumption that employees nearing retirement are uncommitted to their position.  *Id*. at 1006. *Hilde* specifically notes that, "[g]enerally, 'employment decisions motivated by factors other than age (such as retirement eligibility, salary, or seniority), even when such factors corelate with age, do not constitute age discrimination.'"  *Id*.  There is no such allegation or evidence that Section 21.12 is related to an assumption about commitment to employment in this case.  Here, the evidence repeatedly points to surcharges imposed on the District as a result of exceeding six percent in creditable earnings during the retirement eligibility window.  *Hilde* is inapplicable. *Auerbach v. Board of Educ. Of the Harborfields Cent. School Dist. of Greenlawn,* 136 F.3d 104 (2nd Cir. 1998) is also inapplicable, as it involves a retirement incentive that required teachers to retire in the first year of eligibility to receive a retirement incentive. More importantly, the court held that an incentive requiring a teacher to retire upon first satisfying retirement eligibility (there, age 55 and completing 20 years of service) did not violate the Older Workers' Benefit Protection Act.  *Id*. at 114.

*City of Los Angeles, Dept. of Water and Power v. Manhart*, 435 U.S. 702 (1978) and

*Arizona Governing Committee for Tax Deferred Annuity and Deferred Compensation Plans v.*

*Norris*, 463 U.S. 1073 (1983) are also inapplicable.  Both *Manhart* and *Norris* involved a

distinction in benefits based on sex, not age or retirement eligibility.  The ADEA and Title VII

involve entirely different analyses, and reliance on the holding of either case is unwarranted.  In

*Gross v. FBL Financial Services, Inc.*, the Court noted that the Supreme Court must be cautious

not to apply rules applicable under one statute to a different statute without careful and critical

examination.  Citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311, the

Court ruled that the textual differences between Title VII and the ADEA prevented it from

applying Title VII cases to federal age discrimination claims.  *Id*. at 175.  "[W]hether 'there may

have been other reasonable ways for the [employer] to achieve its goals' because unlike Title

VII's business necessity test, which asks whether alternatives that do not result in a disparate

impact are available for the employer to achieve its goals, the ADEA's reasonable inquiry

includes 'no such requirement.'"  *Dayton v. Oakton Community College*, 907 F.3d 460 (7th Cir.

2018) citing *Smith v. City of Jackson*, 554 U.S. at 242.

   To prevail on a disparate impact action under the ADEA, a plaintiff must demonstrate

that a "specific, facially *neutral* employment practice caused a significantly disproportionate

adverse impact based on age."  *Dayton v. Oakton Community College*, 907 F.3d 460, 465 (7th

Cir. 2018), citing *Carson v. Lake County*, 865 F.3d 526, 536 (7th Cir. 2017) (emphasis in

original). To establish a claim for violation of the ADEA under the theory of disparate impact, a

plaintiff, "must (1) identify a specific employment practice and (2) offer statistical evidence

demonstrating that the identified practice causes a significant age-based disparity."  *O'Brien v.*

*Caterpillar, Inc.*, 900 F.3d 923, 928 (7th Cir. 2018), citing *Smith v. City of Jackson*, 544 U.S. 228,

241 (2005). Plaintiffs have simply alleged the policy as it impacted a class of employees 45 and older age constituted age discrimination as employees under the age of 45 were not tracked. However, the tracking is based on retirement eligibility, and while the School District first sorted the information by age, it was then further sorted by years of creditable service. Both Jones and Franklin testified that years of creditable service were separately researched. Further, while it did impact some teachers over the age of 45, it did not impact all teachers over the age of 45. This will not suffice for purposes of a disparate impact claim

**D.** **The School District's application of Section 21.12 is authorized by law as a Reasonable Factor Other than Age.**

Even if the EEOC could establish a prima facie case, the defendant may affirmatively defend by showing that the identified practice or policy is based on a reasonable factor other than age. *Dayton* at 465. The EEOC attempts to distinguish the *Dayton v. Oakton Community College*, 907 F.3d 460 (7th Cir. 2018). In *Dayton*, the court held that a rule established by the College prohibiting the employment of retired instructors of the College who were annuitants under the State University Retirement System ("SURS") because the re-employment of these retired individuals could cause the College to have to pay a substantial statutory penalty to SURS constituted a reasonable factor other than age. The *Dayton* court rejected plaintiff's argument that the employer has the burden to prove its policies do not have a disparate impact. The court stated that while *Smith v. City of Jackson*, 544 U.S. 228 (2005), authorized ADEA cases based upon disparate impact, the Court concluded that liability can be avoided under a disparate-impact claim, "so long as its decision was 'based on a 'reasonable factor other than age' that responded to the [employer's] legitimate goal." *Dayton* at 466, citing *Smith v. City of Jackson*, 554 U.S. at 242. "This is true regardless of whether 'there may have been other reasonable ways for the [employer] to achieve its goals' because unlike Title VII's business necessity test, which asks

13

whether alternatives that do not result in a disparate impact are available for the employer to achieve its goals, the ADEA's reasonable inquiry includes 'no such requirement.'" *Id*. citing *Smith* at 242.

The *Dayton* court also noted that the Supreme Court clarified that, "the business necessity test has 'no place in ADEA disparate-impact cases' because it would be senseless to require a showing that alternative practices would have a less discriminatory effect 'when everyone knows that the choice of a practice relying on a 'reasonable' non-age factor is good enough to avoid liability." *Id*. at 466-67, citing *Meachum v. Knolls Atomic Power Laboratory*, 554 U.S. 84, 97, 99 (2008). "[T]he burdens of proof and persuasion fall on the employer as to the R[easonable] F[actor] O[ther than] A[ge], but … employers need not defend their selection of one policy over a narrower policy." *Id*. "A policy may have a disparate impact on older workers as long as the employer shows that the policy was based on an R[easonable] F[actor] O[ther than] A[ge]." *Id*. at 467. The court rejected the argument that the EEOC regulations defining a reasonable factor other than age, which requires consideration of the business purpose, was not evaluated by the district court because the stated business purpose of avoiding a SURS penalty excluded non-affected annuitants. It also rejected the plaintiffs' argument that the policy was not reasonable because the College did not address the adverse impact on the affected class or attempt to reduce the harm to the affected class. The court found that the district court appropriately applied the regulations, and that the policy was adopted to prevent the mistaken employment of an affected annuitant and the resulting penalty. *Id*. at 468. The court held that the district court required the College to show that policy was based upon reasonable factors other than age, the appropriate standard to apply. *Id*. That the EEOC does not like the method negotiated by the Board and Union does not equate with the conclusion it is not a reasonable factor other than age. All

material facts in light of existing case law point to the conclusion that it does constitute a

reasonable factor other than age.

**E.  The School District considered retirement eligibility in determining who would be salary capped under Section 21.12.**

Section 21.12 of the Collective Bargaining Agreement could have applied to employees

as early as age 45, because it applied to employees who were ten years from retirement

eligibility.  However, it did not apply to all employees aged 45 or older.  It only applied to

teachers who would have had at least twenty years of creditable teachers' service by the age of

55.  Franklin and Jones testified as such.  While acknowledging that the District started the

analysis by age, because that information was available in the School District database, they

would then hand calculate years of service to determine what teachers were limited by Section

21.12.  Dep. Franklin p. 81-82; Dep. Jones p. 22-23.  In fact, teachers who began careers as

licensed teachers at an older age or were new to the School District did not have their earnings

capped because they either did not have the required years of service.  Dep. Jones, p. 22-23;

Response 17, Request to Admit.

**F.  The District's desire to avoid TRS surcharges constitutes a Reasonable Factor Other than Age, a recognized exception to the ADEA.**

As noted above, the EEOC's reliance on *Manhart* and *Norris* is inappropriate because

those cases were analyzed under a Title VII theory rather than the ADEA.  They are different

statutes with entirely different exceptions. "It shall not be unlawful for an employer … to take

any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section … where

differentiation is based on reasonable factors other than age…." *Id*., citing 29 U.S.C. §623(f).  To

establish that a policy is based on a reasonable factor other than age, the employer must establish

that it was, "reasonably designed to further or achieve a legitimate business purpose and

administered in a way that reasonably achieves that purpose in light of the particular facts and

circumstances that were known, or should have been known, to the employer." *Id*. at 465, citing

*O'Brien*, 900 F.3d at 931. "This is a 'relatively light burden.'" *Id*. The reasonableness inquiry

does not ask "whether there are other ways for the employer to achieve its goals that do not result

on a disparate impact on a protected class." *Id*. at 466. It should also be noted that the

Defendant did not act heavily handed and unilaterally impose this limitation on teachers, but

rather acted to negotiate this provision with the UEA into their collective bargaining agreement

some fourteen years ago until the parties negotiated removal of this provision in 2020.

The EEOC regulations set forth a list of non-exhaustive considerations in evaluating

whether a practice was, "reasonably designed to further or achieve a legitimate business purpose

and administered in a way that reasonably achieves that purpose in light of the particular facts

and circumstances that were known, or should have been known, to the employer." *Id*. at 467.

Specifically, the regulation provides the following considerations that may be relevant:

(i)     The extent to which the factor is related to the employer's stated business
        purpose;
(ii)    The extent to which the employer defined the factor accurately and applied the
        factor fairly and accurately, including the extent to which managers and
        supervisors were given guidance or training about how to apply the factor and
        avoid discrimination;
(iii)   The extent to which the employer limited supervisors' discretion to assess
        employees subjectively, particularly where the criteria that the supervisors were
        asked to evaluate are known to be subject to negative age-based stereotypes;
(iv)    The extent to which the employer assessed the adverse impact of its employment
        practice on older workers;
(v)     The degree of the harm to individuals within the protected age group, in terms of
        both the extent of the injury and the numbers of persons adversely affected, and
        the extent to which the employer took steps to reduce the harm, in light of the
        burden of undertaking such steps. *Id*., citing 29 C.F.R. §1625.7(e)(1).

Much like Oakton College, the School District negotiated the policy to avoid penalties

from TRS for creditable earnings increases in excess of 6% during the highest paid consecutive

four years of the final ten years prior to retirement eligibility.  As clarified by *Dayton*, the School

District did not have to choose a policy that had the smallest impact on or attempt to reduce the

harm to the affected class.

While Franklin acknowledged that some employees were allowed to go over the six

percent threshold at her discretion, it was for positions where there were teacher shortages or to

get to a natural break in the semester. Dep. Franklin p. 62-65.  Franklin explained teachers were

used to fill sixth assignments due to the teacher shortage or finish a semester because it was in

the best interest of the student. Franklin also testified that when teachers had earnings in excess

of the six percent limitation, it was more commonly inadvertent.  Dep. Franklin p. 144-146.  The

situations described by Franklin where teachers were authorized to go over the threshold were

focused on student learning, not conceptions about the age of the teachers.

### G.  The District limited earnings based on employees who were within ten years of retirement eligibility.

The *Illinois Pension Code* establishes: (1) the terms for eligibility to retire, which

combines both years of service and age; (2) a threshold of six percent for increases in creditable

earnings in the final average salary of an employee; and (3) imposes a significant penalty to

school district employers who exceed the six percent threshold in the final average salary of an

employee.  The statute provides that the final average salary is the highest four consecutive years

within the last 10 years of creditable service.  40 ILCS 5/16-133(b).  If the highest paid four

years in the final ten years of creditable service include increases which exceed six percent, the

school district must pay a surcharge to TRS.  The Collective Bargaining Agreement language in

Section 21.12 uses this precise language, and further hedges for increases or decreases based

upon changes by the General Assembly.  The *Illinois Pension Code* further provides that, "[i]f

the amount of a teacher's salary for any school year used to determine final average salary

exceeds the member's annual full-time salary rate with the same employer for the previous
school year by more than 6%, the teacher's employer shall pay to the System, in addition to all
other payments required under this Section and in accordance with the guidelines established by
the System, the present value of the increase in benefits resulting from the portion of the increase
in salary that is in excess of 6%."  40 ILCS 5/16-158(f).

The purpose of Section 21.12 of the Collective Bargaining Agreement, even on its face,
is clearly to avoid incurring a penalty under the statute.  This is highlighted by the provision that,
"[s]hould the Illinois General Assembly or the Teachers' Retirement System impose a salary
threshold greater or lesser than the six percent (6%) threshold thereby causing the payment of
any penalty or other monies constituting a surcharge to TRS, then this agreement shall
automatically incorporate this new threshold upon its effective date."  The creditable earnings
limitation could shift upward or downward, based upon action by either the Illinois General
Assembly or the Teachers' Retirement System, and in the event that such change would cause
payment of any penalty or other monies constituting a surcharge, would automatically apply the
new threshold.

Even if the language itself did not make clear that the limitation in Section 21.12 was
based on retirement eligibility and not age alone, both age and years of service were used to
determine what teachers would be tracked, in alignment with both Section 21.12 and the related
Illinois Pension Code provisions.  Furthermore, there were teachers over the age of 50 that were
not tracked because they did not have the requisite years of service.  Dep. Jones, p. 22-23;
Response 17, Request to Admit.  And despite having Section 21.12 in the Collective Bargaining
Agreement since the inception of the statute, the District still incurred penalties for increases in
creditable earnings in excess of 6% for the highest paid four consecutive years in the final ten

years of employment.  Responses 15 and 16, Request to Admit.  During the time period 2015

through 2019, the School District was assessed surcharges by TRS for salary increases in excess

of six percent in the amount of $51,793.13.  See Responses 15 and 16, Request to Admit; Exhibit

F.  Because the surcharges are not assessed until after the teacher retires, excess salary increases

for teachers who have not yet retired have not yet been provided to the School District.  See

Responses 15 and 16, Request to Admit.  The surcharges are not hypothetical.  Even while

attempting to track teachers within ten years of retirement eligibility, surcharges were actually

assessed against the School District.  And as is reflected in the bills from TRS and the requisition

forms, it is not a dollar-for-dollar surcharge; the TRS surcharge is at least ten times the amount

of the excess salary amount.

   The desire to avoid surcharges from the Teachers' Retirement System of Illinois clearly

constitutes a reasonable factor other than age.  The courts have repeatedly held that pension

eligibility/status, and the avoidance of financial repercussions related thereto, are analytically

distinct from age, and that establishing a reasonable factor other than age is a "relatively light

burden."  The *Dayton* decision reflects that the College's goal in avoiding surcharges from the

State University Retirement System, though in that case for employing retirees participating in

the system in excess of the statutory authorization, constituted a reasonable factor other than age.

While different provisions of the *Illinois Pension Code* apply to *Dayton* and this case, the

analysis is identical.  The public bodies both sought to avoid surcharges for employment of

teachers based on retirement status or retirement eligibility.  In both cases, that goal was

recognized as a reasonable factor other than age, despite the fact that it impacted only people

over a certain age.  While the EEOC alleges that the next step would be terminating older

employees, that has not occurred nor is there anything suggesting it would.[1]  However, that is precisely what the College in *Oakton* did in order to avoid surcharges.

      H.  **The District does not dispute that employees' wages were capped in applying Section 21.12.**

      The District does not dispute that some employee's wages were capped in applying Section 21.12 of the Collective Bargaining Agreement.  Rather, the District contends that it appropriately applied Section 21.12, which constituted a reasonable factor other than age. In addition, to the extent that some teachers were not offered continued additional assignments or substituting, Angi Franklin testified that those were not something guaranteed to anybody. Further, the decision to remove one teacher at the conclusion of the semester was in the best interests of the students.  In any event, there is no guarantee of internal substituting opportunities, and there is no guarantee of a sixth assignment.  The District appropriately applied Section 21.12 to those situations.

**CONCLUSION**

      The Motion for Partial Summary Judgment tendered by the EEOC should be denied in its entirety, because the EEOC cannot establish a prima facie case, and even if it could, a reasonable factor other than age exists such that the Age Discrimination in Employment Act has not been violated.

                                  URBANA SCHOOL DISTRICT NO. 116
                                         Defendant

                                  s/ Susan E. Nicholas
                                  Susan E. Nicholas

---

[1] While well outside the scope of the allegations in this matter, tenured teachers have significant protections against dismissal without cause in the State of Illinois.  See 105 ILCS 5/24-12.  What is suggested by the EEOC as a logical conclusion is not actually feasible.

2:18-cv-02212-SEM-EIL   # 34   Filed: 09/07/21   Page 21 of 22

Dennis L. Weedman ARDC# 6217120
**ROBBINS SCHWARTZ NICHOLAS**
  **LIFTON & TAYLOR, LTD.**
510 Regency Centre
Collinsville IL 62234
Telephone :  (618)343-3540
dweedman@robbins-schwartz.com


Susan E. Nicholas  ARDC# 6278132
**ROBBINS SCHWARTZ NICHOLAS**
  **LIFTON & TAYLOR, LTD.**
301 N. Neil Street, Suite 400
Champaign IL 61820
Telephone :  (217) 363-3040
snicholas@robbins-schwartz.com

## **CERTIFICATION**

I hereby certify, in accordance with Local Rule 7(1)(B)(4), that this document complies with the

type volume limitations set forth in Local Rule 7(1)(B)(4), and includes a total of 6,657 words,

as calculated by the Microsoft Word word count function, which was used to prepare this

motion.

s/ Susan E. Nicholas<br>
Susan E. Nicholas

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2021, I electronically filed the RESPONSE TO EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY AND DAMAGES with this CERTIFICATE OF SERVICE with the Circuit Clerk  via the federal electronic filing system EM/ECF which will send notification of such filing as follows:


Ann M. Henry                                          Attorneys for Plaintiff
U.S. Equal Employment Opportunity Commission
ann.henry@eeoc.gov

Ethan M. M. Cohen
U.S. Equal Employment Opportunity Commission
ethan.cohen@eeoc.gov


Michael H. Slutsky                                    Attorneys for Rule 19 Defendant
Allison, Slutsky & Kennedy, PC
slutsky@ask-attorneys.com

N Elizabeth Reynolds
reynolds@ask-attorneys.com

Ryan Matthew Thoma
ryan.thoma@ieanea.org


                              s/ Susan E. Nicholas_____
                              Susan E. Nicholas #6278132
                              Robbins, Schwartz, Nicholas,
                                  Lifton & Taylor, Ltd.
                              301 N. Neil Street, Suite 400
                              Champaign IL 61820
                              Telephone: 217.363.3040
                              Fax: 217.345.3548
                              Email: snicholas@robbins-schwartz.com