IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 2:18-cv-2212 |
| URBANA SCHOOL DISTRICT NO. 116, | ) ) |
| Defendant, | ) ) |
| and | ) ) |
| URBANA EDUCATION ASSOCIATION, IEA-NEA, | ) ) ) |
| Rule 19 Defendant. | ) |

**REPLY TO EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S RESPONSE TO URBANA SCHOOL DISTRICT NO. 116'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56**

**NOW COMES** Urbana School District No. 116 (hereafter "District" or "School District"), and in reply to the Equal Employment Opportunity Commission's Response to Urbana School District No. 116's Motion for Summary Judgment, states:

**REPLY TO ADDITIONAL MATERIAL FACTS**

**ADDITIONAL FACTS CONCEDED TO BE MATERIAL AND UNDISPUTED**

3, 5, 6, 7, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 34

**ADDITIONAL FACTS CONCEDED TO BE MATERIAL AND DISPUTED**

1.      The District was aware when it first entered into the CBA containing Article 21.12 in 2007 that as a consequence, it would impact teachers over the age of 50.  Deposition

Gayle Jeffries p. 103; Request to Admit, response 19. While the District did approve exceptions and there were accidental overages, the conclusion that any teacher over the age of 50 in the Tier 1 retirement system would be capped is an inaccurate conclusionary statement.

2. That the District did not perform any analysis to try to predict the contributions it would have to make to TRS if it did nothing in response to the change in the Illinois Pension Code is inaccurate. Jeffries testified that, pursuant to Section 21.12, teachers should not be receiving creditable earnings greater than six percent in a year when compared with the prior year if they are within ten years of retirement eligibility. Dep. Jeffries p. 43. The ten-year eligibility language was incorporated because that was part of the law, though typically the final four years are the highest years of earning. Dep Jeffries p. 51. However, the District was aware at the time of adoption of Section 21.12 that it would impact employees over the age of 50. Dep. Jeffries p. 103; Response 19, Request to Admit.

4. The tracking of teachers subject to Section 21.12 of the Collective Bargaining Agreement was not based only on age, and many teachers over the age of fifty were not tracked. Earnings of teachers within the retirement eligibility window were tracked. Deposition Nathon Jones (hereafter "Dep. Jones), p. 17; Responses 13 and 14 of Urbana School District's Response to Equal Employment Opportunity Commission's First Set of Requests for Admission (hereafter "Request to Admit"). The tracking information was collected by first sorting teachers aged 45 and older, and then compared to the number of years of creditable service each teacher had. Dep. Jones, p. 22-23, 26. The total number of years of creditable service would have to be separately obtained from School District records and the Teachers Retirement System of Illinois. Dep. Jones, p. 19; Dep. Franklin p. 81-82. Teachers within ten years of retirement eligibility

2

would then have their maximum 6% creditable earnings increases for the following school year noted.  Dep. Jones p. 23.

32. The conclusion that because Ms. Howie earned $1,410 during the approximately 12 weeks that she had her in-house sub assignment, she would have continued with the assignment for the remainder of the school year, about another 20 weeks, she would have earned at least $2,350, is speculative.  Internal substitute teaching can be done by anyone in the building.  Dep. Franklin p. 45.  It does not have to be the same person every day, and it is a popular position. Id.  Franklin did not know if the same person took on the internal substitute position that Howie had been doing, or if it was somebody different every day.  Id.

33. The conclusion that because Ms. Killion was paid $6983.23 for her sixth assignment, she would have earned an additional 20% of her base salary, or $15,502.74, had she taught the entire school year, for a loss of $8,519.51, is speculative. Teachers were on occasion authorized to earn in excess of the six percent threshold in Paragraph 21.12 of the Collective Bargaining Agreement.  Dep. Franklin p. 62-65.  This would occur for positions where there were teacher shortages and the teacher would teach a sixth assignment, or to get to a natural break in the semester. Dep. Franklin p. 62-65.  Allowing a teacher to finish at a natural break was in the best interest of the students.  Dep. Franklin p. 69.  However, when teachers had earnings in excess of the six percent limitation, it was more commonly inadvertent.  Dep. Franklin p. 61-62, 144-146. Franklin testified that Killion's sixth assignment was filled by Alvario Cortez, who did not have the requisite years of service.  Dep. Franklin p. 46.

## ADDITIONAL FACTS WHICH ARE IMMATERIAL AND UNDISPUTED

5. In November 2019, Angie Franklin, the Assistant Superintendent of Human Resources, asked the Urbana School Board if the District could focus on tracking and limiting salary increases to teachers who were within four years of age 55. While undisputed, it constitutes a Rule 407 of the Federal Rules of Civil Procedure provides, "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for warning or instruction." F.R.C.P. 407.

23. That in November 2019, Franklin asked the Urbana School Board if the District could focus on tracking and limiting salary increases to teachers who were within four years of age 55 is immaterial, and barred by Federal Rule of Civil Procedure 407.

24. That there were no changes made to Article 21.12 as a result of the temporary exemptions for TRS contributions for creditable earnings increases in excess of six percent on July 1, 2014, is immaterial, and barred by Federal Rule of Civil Procedure 407.

35. The fact that the CBA between the Association and District for 2020-2023 does not contain Article 21.12 or any other similar provision limiting creditable earnings based on years from retirement is immaterial, and barred by Federal Rule of Civil Procedure 407. The fact that the 2020-23 CBA allows teachers in their first 15 years of creditable service to move two education (horizontal) lanes per year on the salary schedule and teachers with 16 or more years of service to move one educational lane per year is immaterial, and barred by Federal Rule of Civil Procedure 407.

36. The fact that Appendix 1 to the 2020-23 CBA contains a "District Retirement Enhancement Program" that provides teachers who meet the eligibility requirements a 4.5

percent increase in their total creditable earnings for up to their final two years of service with the District is immaterial, and barred by Federal Rule of Civil Procedure 407.

37.  That other school districts have had collective bargaining agreements that do not contain any provision limiting earnings for teachers within a certain number of years of retirement eligibility and instead have retirement incentives guaranteeing earnings increases for teachers who meet the program's qualifications and provide notice of intent to retire is immaterial.  How other districts negotiate potential caps on creditable earnings limitations has no bearing on how the Board and the Union negotiated a cap on creditable earnings.

# ARGUMENT

### A. Article 21.12 treats similarly situated teachers differently because of retirement eligibility status.

In its response, the EEOC argues there were teachers who did not retire within the window of Section 21.12 but were still capped. However, that does not establish that the School District only considered age, nor does it establish a violation of the ADEA. Franklin and Jones both testified that years of service was determined after teachers were sorted by age. Further, the analysis of a hypothetical where teachers aged 44 and 46 were treated differently ignores the factor of retirement eligibility and years of service. Again, both elements were considered. The goal of Section 21.12 was to insulate the District from surcharges from the Teachers' Retirement System of Illinois ("TRS"). The evidence does not reflect that age was the motivating factor in limiting creditable earnings to six percent under Section 21.12, but that the motivating factor was related to pension status and avoiding a TRS surcharge.

### B. Age is a factor, but not the only factor, in determining retirement eligibility, and courts have repeatedly held that pension based eligibility is a legal factor to consider that does not violate the ADEA.

Both retirement eligibility and the years considered in determining final average salary are determined by the *Illinois Pension Code*. All of the teachers that are the subject of this suit are or were Tier I teachers.

Although the EEOC argues that no teacher over age 50 could receive an increase in creditable earnings in excess over six percent, that is not an accurate statement, as reflected in the Responses to the Request to Admit. The EEOC also relies on *Huff v. UARCO, Inc.*, 122 F.3d 374, (7th Cir. 1997) in support of its contention that considering age as a factor is sufficient to establish discriminatory employment policies related to retirement eligibility. However, *UARCO* involved whether UARCO's pension policy, which provided that a plan participant who had

completed ten years of service and attained the age of fifty-five was eligible for early retirement, and a plan provision that terminating employment before becoming eligible for early retirement may elect a lump sum refund with interest, was sufficient to establish a claim under the ADEA. *Id*. at 387. In UARCO, the employer admitted there was no age-related cost to the lump sum payout as opposed to the payout over time. *Id*. In distinguishing *Hazen Paper*, the *UARCO* court noted that the plaintiff in *Hazen Paper* was dismissed due to potentially vesting in the pension, and that while age and years of service held a correlation, it was not sufficient to characterize plaintiff's dismissal as based on age. *Id*. "The ADEA provides generally that age-based distinctions in benefits are unlawful *unless, as part of a bona fide employee benefits package, the distinction is justified by an age-related cost consideration.*" *Id*. In addition, the employer's policy in *UARCO* drew a clear line based only on age. *Id*. at 358. In this case, it is both age and years of service that are considered by the District. Some employees over the age of 45 were not tracked, in alignment with pension eligibility. Further, payments in excess of six percent over the prior years' creditable earnings for the highest paid four years result in an actual cost to the District. It is not an arbitrary age distinction, but a distinction based upon avoiding surcharges to the District.

    *Kiser v. Naperville Community Unit*, 227 F.Supp.2d 954 (2002) involved a situation where in-house legal counsel's contract was terminated for, at least to the extent described in the opinion, ambiguous cost reasons, and the opinion relates to a motion to dismiss. The employer denied that his retirement benefits had an age-related element. The District does not deny that age is a *factor* in retirement eligibility, but rather that it is only one factor in alignment with the eligibility requirements of *The Pension Code*.

The EEOC also cites several non-binding cases related to the applicability of the ADEA to pension related decisions. *Hilde v. City of Eveleth*, 777 F.3d 998 (8th Cir. 2015), involved an assumption that employees nearing retirement are uncommitted to their position. *Id*. at 1006. *Hilde* states "[g]enerally, 'employment decisions motivated by factors other than age (such as retirement eligibility, salary, or seniority), even when such factors corelate with age, do not constitute age discrimination.'" *Id*. There is no such allegation or evidence that Section 21.12 is related to an assumption about commitment to employment in this case. The evidence instead points to surcharges imposed on the District as a result of exceeding six percent in creditable earnings during the retirement eligibility window. *Hilde* is inapplicable. *Auerbach v. Board of Educ. Of the Harborfields Cent. School Dist. of Greenlawn,* 136 F.3d 104 (2nd Cir. 1998) does not apply either, as it involves a retirement incentive that required teachers to retire in the first year of eligibility to receive a retirement incentive. Notably, the court held that an incentive requiring a teacher to retire upon first satisfying retirement eligibility did not violate the Older Workers' Benefit Protection Act. *Id*. at 114.

Both *City of Los Angeles, Dept. of Water and Power v. Manhart*, 435 U.S. 702 (1978) and *Arizona Governing Committee for Tax Deferred Annuity and Deferred Compensation Plans v. Norris*, 463 U.S. 1073 (1983) involved a distinction in benefits based on sex, not age or retirement eligibility. The ADEA and Title VII involve entirely different analyses. In *Gross v. FBL Financial Services, Inc.*, the Court noted that the Supreme Court must be cautious not to apply rules applicable under one statute to a different statute without careful and critical examination. The Court ruled that the textual differences between Title VII and the ADEA prevented it from applying Title VII cases to federal age discrimination claims. *Id*. at 175, citing *O'Connor v. Consolidated Coin Caterers Corp*., 517 U.S. 308, 311. "[W]hether 'there may have

been other reasonable ways for the [employer] to achieve its goals' because unlike Title VII's business necessity test, which asks whether alternatives that do not result in a disparate impact are available for the employer to achieve its goals, the ADEA's reasonable inquiry includes 'no such requirement.'" *Dayton v. Oakton Community College*, 907 F.3d 460 (7th Cir. 2018) citing *Smith v. City of Jackson*, 554 U.S. at 242. The EEOC is asking this court to apply a standard which does not apply to an ADEA analysis.

### D.  The School District's application of Section 21.12 is authorized by law as a Reasonable Factor Other than Age.

Section 21.12 of the Collective Bargaining Agreement could have applied to employees as early as age 45, because it applied to employees who were ten years from retirement eligibility. However, it did not apply to all employees aged 45 or older. It only applied to teachers who were in the retirement eligibility window. Franklin and Jones testified as such. While acknowledging that the District started the analysis by age, because that information was available in the School District database, they would then hand calculate years of service to determine what teachers were limited by Section 21.12. Dep. Franklin p. 81-82; Dep. Jones p. 22-23. The EEOC argues that the District considered age in allowing teachers to exceed six percent creditable earnings increases. However, Franklin testified that Cortez had fewer years of creditable service. Further, teachers who began careers as licensed teachers at an older age or were new to the School District did not have their earnings capped because they did not have the required years of service. Dep. Jones, p. 22-23; Response 17, Request to Admit.

The EEOC's reliance on *Manhart* and *Norris* is inappropriate because those cases were analyzed under a Title VII theory rather than the ADEA. They are different statutes with entirely different exceptions. "It shall not be unlawful for an employer … to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section … where differentiation is based

9

on reasonable factors other than age….” *Id*., citing 29 U.S.C. §623(f).  To establish that a policy is based on a reasonable factor other than age, the employer must establish that it was, "reasonably designed to further or achieve a legitimate business purpose and administered in a way that reasonably achieves that purpose in light of the particular facts and circumstances that were known, or should have been known, to the employer." *Id*. at 465, citing *O'Brien*, 900 F.3d at 931.  "This is a 'relatively light burden.'" *Id*.  The reasonableness inquiry does not ask "whether there are other ways for the employer to achieve its goals that do not result on a disparate impact on a protected class." *Id*. at 466.

      The District negotiated the policy to avoid penalties from TRS for creditable earnings increases in excess of 6% during the highest paid consecutive four years of the final ten years prior to retirement eligibility.  The School District did not have to choose a policy that had the smallest impact on or attempt to reduce the harm to the affected class.

      While Franklin acknowledged that some employees were allowed to go over the six percent threshold at her discretion, it was for positions where there were teacher shortages or to get to a natural break in the semester. Dep. Franklin p. 62-65.  Franklin explained teachers were used to fill sixth assignments due to the teacher shortage or finish a semester because it was in the best interest of the students. Franklin also testified that when teachers had earnings in excess of the six percent limitation, it was more commonly inadvertent. Dep. Franklin p. 144-146.  The situations described by Franklin where teachers were authorized to go over the threshold were focused on student learning, not conceptions about the age of the teachers.

      Both age and years of service were used to determine what teachers would be tracked, in alignment with both Section 21.12 and the related Illinois Pension Code provisions.  Despite having Section 21.12 in the Collective Bargaining Agreement since the inception of the statute,

the District incurred actual penalties for increases in creditable earnings in excess of 6% for the highest paid four consecutive years in the final ten years of employment. The School District was assessed surcharges by TRS for salary increases in excess of six percent in the amount of $51,793.13 between 2015 and 2019 representing mainly inadvertent increases exceeding 6%, or in some cases, when the District allowed teachers to exceed the threshold. Surcharges would have been significantly greater for this time period if the School District did not have the ability to control increases above 6%.

The District does not dispute that some employee's wages were capped in applying Section 21.12 of the Collective Bargaining Agreement. However, the District appropriately applied Section 21.12, which constituted a reasonable factor other than age. In addition, to the extent that some teachers were not offered continued additional assignments or substituting, Angi Franklin testified that internal substituting and sixth assignments were not guaranteed to anybody. The District appropriately applied Section 21.12 to those situations.

## CONCLUSION

Urbana School District No. 116's Motion for Summary Judgment should be granted in its entirety. The EEOC cannot establish a prima facie case, and even if it could, a reasonable factor other than age exists such that the Age Discrimination in Employment Act has not been violated.

URBANA SCHOOL DISTRICT NO. 116
Defendant

s/ Susan E. Nicholas
Susan E. Nicholas

Dennis L. Weedman ARDC# 6217120
**ROBBINS SCHWARTZ NICHOLAS**
 **LIFTON & TAYLOR, LTD.**
510 Regency Centre
Collinsville IL 62234

Telephone : (618)343-3540
dweedman@robbins-schwartz.com

Susan E. Nicholas  ARDC# 6278132
**ROBBINS SCHWARTZ NICHOLAS**
  **LIFTON & TAYLOR, LTD.**
301 N. Neil Street, Suite 400
Champaign IL 61820
Telephone : (217) 363-3040
snicholas@robbins-schwartz.com

## **CERTIFICATION**

I hereby certify, in accordance with Local Rule 7(1)(D)(5), and the argument of this Reply complies with the limitations set forth therein, and is limited to five pages.

s/ Susan E. Nicholas
Susan E. Nicholas

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2021, I electronically filed the REPLY TO EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S RESPONSE TO URBANA SCHOOL DISTRICT NO. 116'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56 with this CERTIFICATE OF SERVICE with the Circuit Clerk via the federal electronic filing system EM/ECF which will send notification of such filing as follows:

| | |
|---|---|
| Ann M. Henry<br>U.S. Equal Employment Opportunity Commission<br>ann.henry@eeoc.gov | Attorneys for Plaintiff |
| Ethan M. M. Cohen<br>U.S. Equal Employment Opportunity Commission<br>ethan.cohen@eeoc.gov | |
| Michael H. Slutsky<br>Allison, Slutsky & Kennedy, PC<br>slutsky@ask-attorneys.com | Attorneys for Rule 19 Defendant |
| N Elizabeth Reynolds<br>reynolds@ask-attorneys.com | |
| Ryan Matthew Thoma<br>ryan.thoma@ieanea.org | |

                                                s/ Susan E. Nicholas_____
Susan E. Nicholas #6278132
Robbins, Schwartz, Nicholas,
    Lifton & Taylor, Ltd.
301 N. Neil Street, Suite 400
Champaign IL 61820
Telephone: 217.363.3040
Fax: 217.345.3548
Email: snicholas@robbins-schwartz.com