E-FILED
Tuesday, 21 September, 2021  05:18:49 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | **CIVIL ACTION NO. 2:18-cv-02212-CSG-EIL** |
| **v.** ) | |
| ) | |
| **URBANA SCHOOL DISTRICT NO. 116** ) | **JUDGE MYERSCOUGH** |
| ) | |
| **Defendant** ) | |
| ) | **MAGISTRATE JUDGE LONG** |
| **and** ) | |
| ) | |
| **URBANA EDUCATION ASSOCIATION, IEA-NEA** ) | |
| ) | |
| ) | |
| **Rule 19 Defendant** ) | |
| ) | |

**EEOC'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT ON LIABILITY AND DAMAGES**

EEOC submits the following reply in support of its Motion for Partial Summary

Judgment on Liability and Damages.

**RESPONSE TO URBANA SCHOOL DISTRICT NO. 116'S ADDITIONAL
MATERIAL FACTS**

1.      Earnings of teachers within the retirement eligibility window were tracked.

Deposition Nathon Jones (hereafter "Dep. Jones), p. 17; Responses 13 and 14 of Urbana School

District's Response to Equal Employment Opportunity Commission's First Set of Requests for

Admission (hereafter "Request to Admit").  The tracking information was collected by first

sorting teachers aged 45 and older, and then compared to the number of years of creditable

service each teacher had.  Dep. Jones, p. 22-23, 26.  The total number of years of creditable

service would have to be separately obtained from School District records and the Teachers

Retirement System of Illinois.  Dep. Jones, p. 19; Dep. Franklin p. 81-82.  Teachers within ten years of retirement eligibility would then have their maximum 6% creditable earnings increases for the following school year noted.  Dep. Jones p. 23.

RESPONSE: EEOC objects that the District's responses to EEOC's Requests to Admit lack foundation and constitute inadmissible hearsay. EEOC disputes that the testimony supports that only teachers who were within 10 years of retirement eligibility had their earnings tracked. Jones said that he looked at years of service, but only to see if teachers had more than one year of service with the District. Doc. No. 30-7, EEOC Ex. 7, Jones Dep. 22:8-23:10, 26:17-27:1. The District's tracking spreadsheets contain no information about teachers' years of service.  Doc. No. 30-12[1] at p. 5, EEOC Ex. 21, 6_Tracking_2015-16; Doc. No. 30-12 at p. 15, EEOC Ex. 25; Doc. No. 30-6, EEOC Ex. 6_Tracking_2016-17.

2.      Despite the existence of 21.12 of the Collective Bargaining Agreement, the School District paid surcharges to the Teachers' Retirement System of Illinois for increases in creditable earnings in excess of six percent for twenty teachers during the time period between 2015-2019.  Response 15, Request to Admit; Exhibit A.

RESPONSE:  EEOC objects that the District's responses to EEOC's Requests to Admit lack foundation and constitute inadmissible hearsay.

3.      During the time period 2015 through 2019, the School District was assessed surcharges by TRS for salary increases in excess of six percent in the amount of $51,793.13.  See Responses 15 and 16, Request to Admit; Exhibit A.

RESPONSE:  EEOC objects that the District's responses to EEOC's Requests to Admit lack foundation and constitute inadmissible hearsay.

---

[1] EEOC cites to the exhibits submitted with its Motion for Partial Summary Judgment on Liability and Damages by citing the ECF document number and EEOC's exhibit number.

4.      The tracking of teachers subject to Section 21.12 of the Collective Bargaining Agreement was not based only on age, and many teachers over the age of fifty were not tracked. Response 16, Request to Admit.

RESPONSE:  EEOC objects that the District's responses to EEOC's Requests to Admit lack foundation and constitute inadmissible hearsay, so fact 10 is not supported by admissible evidence. Furthermore, to the extent that the District claims that some teachers over fifty were not tracked relies on the fact that teachers *new to the district* were not tracked, this is misleading. These teachers could not receive a raise more than 6% above their prior year's salary as they did not have a prior salary with the District. This small exception does not negate the fact that the District tracked all teachers over age 45 after their first year in the District. Doc. No. 30-7, EEOC Ex. 7, Jones Dep. 22:8-23:10, 26:17-27:1.

## ARGUMENT

**I.  The EEOC's summary judgment motion should be granted because the District does not dispute facts establishing liability and damages.**

The EEOC's summary judgment motion should be granted because the District admits that Charles Koplinski's salary increases would not have been capped had he been under age 45 and that Article 21.12 generally treats similarly situated teachers differently because of their age. PSF 17, 19, 24-27, 29-34. The District did contest EEOC's assertion that teachers under age 45 and age 45 and older are similarly situated since at least July 2014, when an exemption expired that had provided that a raise over six percent paid more than ten years before retirement eligibility that factored into a teacher's final average salary would not trigger a TRS contribution.

Additionally, the District does not dispute which teachers' earnings were affected by Article 21.12 or the amount of their damages. PSF 29-34, 38-76, 78-79, 81, 83. The District has attempted to dispute the damages of Kathy Killion, Cynthia Howie, and Jenna Finch (Responses to PSF 77, 80, 82), though it did not dispute these teachers were removed from their additional assignments because of their ages. PSF 76, 78-79, 81. The District claims that EEOC's damages calculations are speculative, but it has offered no evidence to dispute those calculations. Nor has it offered any evidence to show that those specific teachers would not have continued their assignments until the end of the school year for non-age based reasons had the District not ended their assignments mid-year because of their ages. Responses to PSF 77, 80, and 82.

**II.  The District's attempts to distinguish the cases EEOC relies on are unpersuasive.**

The District admits that age was a factor in applying Article 21.12, but contends that EEOC cannot prove age discrimination because retirement eligibility also has a service requirement. It argues that *Huff v. UARCO, Inc.*, 122 F.3d 374 (7th Cir. 1997) is distinguishable because *Huff* involved pension benefits, not wages, but that distinction is irrelevant. Here, the

4

District provided different wages related to retirement eligibility, with retirement eligibility

based on age and years of service, so this case is analogous to *Huff*, where the Seventh Circuit

held a pension plan was age-discriminatory because it offered different benefits based on

retirement eligibility where retirement eligibility was also based on age and years of service.[1]

The District notes that the ADEA prohibits differences in benefits unless there is an age-

based difference in costs and there was no cost difference in *Huff*. The District claims there is a

cost difference in this case because it must pay TRS contributions for creditable earnings

increases in excess of six percent paid during a teachers' high-four years. But no provision of the

ADEA permits wage differences based on age like 29 U.S.C. § 623(f)(2)(B)(i) permits

differences in benefits under certain conditions. 29 C.F.R. § 1625.10(b) ("neither Section 4(f)(2)

nor any other section of the Act excuses the payment of lower wagers or salary to older

employees on account of age"). And not every earnings increase over six percent paid within ten

years of retirement eligibility incurs a TRS contribution. The District does not know when

teachers will retire so does not know whether an earnings increase will trigger a TRS

contribution. But Article 21.12 limited earnings increases for every teacher within ten years of

retirement eligibility, including during years that will not be a part of a teacher's high-four years

and will not cause a TRS contribution. (PSF 21-22, 35, 38-39, 43-46, 48-49, 71-72). Nor has the

District offered any evidence showing that raises that occur within ten years of retirement

eligibility are were more likely to cause it to incur a TRS contribution (which is not to say that if

it had such evidence it would provide a lawful basis for imposing salary caps on older workers).

---

[1] The District also points out factual differences between the other cases EEOC relied on and this case, but the differing factual contexts are irrelevant to the point of those cases—that age can be a triggering factor and cause of an adverse employment action related to retirement eligibility.

Even if the District could prove a difference in cost of raises to older and younger teachers, *City of Los Angeles, Dept. of Water and Power v. Manhart,* 435 U.S. 702 (1978) and *Arizona Governing Comm. for Tax Deferred Annuity and Deferred Compensation Plans. v. Norris*, 463 U.S. 1073, 1077 (1983), further foreclose its argument that it can therefore limit the earnings of older teachers. The District argues that *Manhart* and *Norris* do not apply because they are Title VII cases. While the ADEA and Title VII have differences, the Title VII language the Court interpreted in *Manhart* and *Norris* is identical to language in the ADEA. *Manhart*, 435 U.S. at 708; *Norris*, 463 U.S. at 1082-82. See *also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985) (applying interpretation of Title VII's language regarding privileges of employment to an ADEA case, "for the substantive provisions of the ADEA 'were derived *in haec verba* from Title VII'" (quoting *Lorrilard v. Pons*, 434 U.S. 575, 584 (1978)). The cases the District cites to support its claim that Title VII cases do not apply to the ADEA involved textual differences between provisions of the two statutes other than those interpreted in *Manhart* and *Norris*. *Gross v. FBK Financial Serv., Inc.*, 557 U.S. 167, 174-75 (2009) (holding but-for causation standard applied to ADEA cases because Congress amended Title VII but not the ADEA to include the motivating factor standard); *Dayton v. Oakton Comm. College*, 907 F.3d 460, 466 (7th Cir. 2018) (noting differences between Title VII's business necessity defense and the ADEA's reasonable factor other than age defense to disparate impact claims).

III.   **EEOC has not relied on evidence inadmissible under Fed. R. Evid. 407.**

The District objects to evidence of changes to the 2020-23 collective bargaining agreement (CBA), a proposed change in tracking of teachers' compensation, and the lack of any change to Article 21.12 after exemptions expired in July 2014 as being inadmissible under Fed. R. Evid. 407. Responses to PSF 3-6, 23-24. FRE 407 provides that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent

6

measures is not admissible to prove: negligence; culpable conduct; a defect in a product or its design; or a need for warning or instruction." The evidence the District objects to is being used for other purposes as FRE 407 allows.

EEOC cited changes to the 2020-23 CBA (Doc. No. 30 at p. 7, PSF 3-5 and Doc. No. 34 at p. 4, Responses to PSF 3-5), to make the limited point that the District could have minimized its exposure to contributions to TRS for salary increases in excess of six percent and still complied with the ADEA. *See* Doc. No. 30 at p. 39; *Adams v. City of Chicago*, 469 F.3d 609, 612-13 (7th Cir. 2006) (holding the district court erred in excluding evidence of subsequent promotion procedures in an disparate impact case because the evidence showed the feasibility of an alternative promotion practice to the one being challenged).

The District's reliance on *Pastor v. State Farm Mut. Auto. Ins. Co.*, 487 F.3d 1042 (7th Cir. 2007) is misplaced. In *Pastor*, the Seventh Circuit held that evidence that State Farm changed a subsequent auto insurance policy was inadmissible to prove the interpretation of ambiguous language in the plaintiff's policy because the plaintiff was using the policy change to try to prove State Farm's culpable conduct in breaching her policy, in violation of Rule 407. *Id.* at 1045. Unlike in *Pastor*, the EEOC is not trying to use the 2020-23 CBA to prove that the language of Article 21.12 violated the ADEA, but to show a non-discriminatory method of minimizing TRS contributions was possible, and the District elected and maintained a method that limited the compensation only of older teachers.

The District also objected to evidence of Angi Franklin's proposal to track the compensation of only teachers within four years of age 55, i.e., age 51 and over. Doc. 30 at p. 11, PSF 23 and Doc. 34 at p. 5, Response to PAF 23. That proposal was not a remedial measure to which FRE 407 applies—it was merely a proposal, not a measure taken. And the proposal was

7

still discriminatory and would have done nothing to make discrimination against those age 51 and older less likely to occur. The EEOC cited the proposal, which mentions only age and not years of service, as evidence that the District considered age in applying Article 21.12. Doc. 30 at p. 32. While a teacher can retire at age 55 with 20 years of service, the proposal refers only to age, and not to tracking teachers within four years of the service requirement.

Finally, the District claims that the fact no changes were made to Article 21.12 as a result of temporary exemptions for TRS contributions for creditable earnings increases in excess of six percent expiring on July 1, 2014 is inadmissible under FRE 407. (Doc. No. 30 at p. 11, PSF 24 and Doc. No. 34 at p. 5, Response to PAF 24). The District included a fact in its motion for summary judgment that Article 21.11 remained unchanged until September 2020, so it should not be able to object to EEOC's similar fact. Doc. No. 31 at p. 3, ¶ 6. Further, FRE 407 only bars evidence for certain purposes of measures "taken that would have made an *earlier* injury or harm less likely to occur" (emphasis added). FRE 407 does not apply to evidence of the District's failure to act in 2014—not to a measure taken—used to prove later discrimination occurring in 2015 and after. Doc. No. 30 at pp. 29, 42.

## IV.    The "reasonable factor other than age" is inapplicable in this case.

The District argues at length that it has relied on a reasonable factor other than age. Doc. No.  34 at pp. 13-20, but that defense is irrelevant because it applies only to disparate impact claims, and EEOC's claim is one of disparate treatment. 29 C.F.R. § 1625.7(b).

### CONCLUSION

For the reasons state in its motion and reply brief, the EEOC respectfully requests that the Court grant its Partial Motion for Summary Judgment on Liability and Damages.

Respectfully submitted,

/s/ Ann Henry

Ann Henry
Equal Employment Opportunity Commission
Chicago District Office
230 S. Dearborn, Suite 2920
Chicago, IL 60604
312-872-9659
ann.henry@eeoc.gov