## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| URBANA SCHOOL DISTRICT NO. 116, | ) ) ) | No. 18-cv-2212 |
| Defendant, | ) ) | |
| and | ) ) | |
| URBANA EDUCATION ASSOCIATION, IEA-NEA, | ) ) ) | |
| Rule 19 Defendant. | ) ) | |

## OPINION AND ORDER

**SUE E. MYERSCOUGH, U.S. District Judge.**

This is an enforcement action brought under Section 7(b) of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 626(b).  From 2014 to 2020, Defendant Urbana School District No. 116 limited the annual earnings increases of teachers over age 45 to avoid a pension-contribution surcharge.  The EEOC

alleges that this practice—codified in the District's collective bargaining agreements (CBAs) with Rule 19 Defendant Urbana Education Association (the Union)—violated the ADEA.

Before the Court are the parties' cross-motions for summary judgment.  See Pl.'s Mot. Partial Summ. J., d/e 30; Def.'s Mot. Summ. J., d/e 31.  The Union has filed a statement in support of the EEOC's motion.  See Statement of Position, d/e 32.  For the reasons that follow, the EEOC's motion is GRANTED, and the District's motion is DENIED.

## I.  BACKGROUND

The Court draws these facts from the parties' statements of undisputed facts and the evidence they submitted.  The Court deems admitted any facts not in dispute or disputed without an evidentiary basis.  See L.R. 7.1(D)(2)(b)(2).

### A.  Statutory Background

In 2005, the Illinois General Assembly amended certain provisions of the Illinois Pension Code.  One of these amendments required school districts to make additional employer contributions to the Teacher's Retirement System (TRS), Illinois' public-school teacher pension plan.  The amended statute provided:

> (f) If the amount of a teacher's salary for any school year used to determine final average salary exceeds the member's annual full-time salary rate with the same employer for the previous school year by more than 6%, the teacher's employer shall pay to the System, in addition to all other payments required under this Section and in accordance with guidelines established by the System, the present value of the increase in benefits resulting from the portion of the increase in salary that is in excess of 6%.

40 ILCS § 5/16-158(f) (West 2005) (amended 2022).

The TRS is a defined-benefit pension plan. The pension provided upon a teacher's retirement reflects a percentage of the teacher's "final average salary" multiplied by the teacher's years of creditable service. The "final average salary," also known as the "high-4," is the average of the four highest consecutive salary years over the teacher's final ten years before retirement.

Under the 2005 amendments, teachers hired before January 1, 2005, are known as "Tier 1" members. Tier 1 teachers may retire and receive a full pension upon turning (1) age 55, with 35 years of service; (2) age 60, with ten years of service; or (3) age 62, with five years of service. A full Tier 1 pension reflects "the average salary for the highest 4 consecutive years within the last 10 years of

creditable service."  40 ILCS § 5/16-133(b) (West 2005) (amended 2021).  A Tier 1 teacher with 20 years of service may retire at age 55 and receive a discounted pension.  40 ILCS § 5/16-133(a) (West 2005) (amended 2021).

## B.    Article 21.12

In 2007, the District and the Union ratified a new CBA.  See generally Pl.'s Mot. Partial Summ. J. ex. 1, d/e 30-1 ("2007 CBA"). At the District's request, the CBA included a provision intended "to protect the District from having to pay contributions to TRS for creditable earnings increases in excess of six percent ("excess salary contributions") that are included in calculating a teacher's final average salary."  Pl.'s Mot. Partial Summ. J., d/e 30, ¶ 11; see also Def.'s Resp., d/e 34, at 2.  This provision, bearing the caption "Creditable Earnings," was codified in Article 21.12 of the 2007 CBA.  Article 21.12 limited any increases in "creditable earnings"— that is, all wages, including salary and supplemental pay—of teachers within 10 years of retirement eligibility to no more than 6% over their previous year's earnings.  It provided:

>Notwithstanding any of the other provisions of this agreement, no teacher who is less than ten (10) years from retirement eligibility may receive an overall increase in total reportable creditable earnings in excess of six percent (6%) of the previous year's total reportable creditable earnings, unless the payment causing the teacher to exceed the six percent (6%) salary threshold is specifically exempt by statute or regulation from the payment of any penalty of other monies constituting a surcharge to the Teachers' Retirement System.

2007 CBA, d/e 30-1, at 69.  An identical provision appeared in the District's successor CBA, which was ratified in 2012 and which expired in 2015.

To enforce Article 21.12, the District tracked, in a series of spreadsheets, the creditable earnings of teachers aged 45 and older with more than one year of District service.  The District did not track teachers' dates of hire or years of service, nor did the District know when any of these teachers would retire.  The District did not limit or track the creditable earnings of teachers under age 45.

The District knew that, under Article 21.12, any Tier 1 teacher over the age of 50 could not receive an earnings increase of more than 6%, regardless of their years of service or their intent to retire. The District further knew that another set of Tier 1 teachers—those

age 45 or older with at least ten years' service—could have their earnings capped because of their eligibility to retire at age 55 with a reduced pension.  The District did not "try to predict the contributions it would have to make to TRS if it did nothing in response to the change to the Illinois Pension Code."  Pl.'s Mot. Partial Summ. J., d/e 30, ¶ 14; <u>see also</u> Def.'s Resp., d/e 34, at 2. Nor did the District consider any alternative measures.

In July 2014, a set of temporary exemptions for TRS contributions for excess creditable-earnings increases expired. Under this temporary exemption program, which took effect in 2006, the excess creditable-earnings contribution requirement did not apply to raises earned by teachers more than ten years from retirement eligibility.  40 ILCS § 5/15-155(h) (West 2006).  After the exemption program expired, the excess creditable-earnings contribution requirement applied to all teachers, regardless of years from retirement eligibility.  The District did not revise Article 21.12 to reflect this intervening change in the law.

In 2015, the District and the Union ratified a new CBA.  Pl.'s Mot. Partial Summ. J. ex. 3, d/e 30-3 ("2015 CBA").  The 2015 CBA included a revised version of Article 21.12, which tied the District's

salary cap to any changes to the state's statutory salary threshold.

The revised Article 21.12 provided:

> Notwithstanding any of the other provisions of this agreement, no teacher who is less than ten (10) years from retirement eligibility may receive an overall increase in total reportable creditable earnings in excess of six percent (6%) of the previous year's total reportable creditable earnings, unless the payment causing the teacher to exceed the six percent (6%) salary threshold is specifically exempt by statute or regulation from the payment of any penalty of other monies constituting a surcharge to the Teachers' Retirement System. *Should the Illinois General Assembly or the Teachers' Retirement System impose a salary threshold greater or lesser than the six percent (6%) threshold thereby causing the payment of any penalty or other monies constituting a surcharge to TRS, then this agreement shall automatically incorporate this new threshold upon its effective date.*

2015 CBA, d/e 30-3, at 33 (alterations from 2007 CBA in italics).

The District and the Union last ratified a new CBA in 2020. The 2020 CBA does not include Article 21.12 or any other provision limiting earnings based on years from retirement eligibility.

## C.    Charles Koplinski's EEOC Claim

On April 28, 2017, Charles Koplinski, a 52-year-old language arts teacher at Urbana Middle School, filed an EEOC discrimination charge against the District.  Mr. Koplinski's complaint alleged that

he was "paid a lower salary than what he should have been paid according to his placement on" the District's salary schedule, "that he was told he was paid less because he was ten years away from retiring," and "that his salary was subject to a six percent cap per state law."  Pl.'s Mot. Partial Summ. J., d/e 30, ¶ 28; id. ex. 9, d/e 30-9, at 2; see also Def.'s Resp., d/e 34, at 2.

The District paid its teachers according to a collectively bargained salary schedule.  Under this salary schedule, teachers were paid based on two factors: their years of experience, and their credentials and accreditation.  For example, a teacher with 24 years' experience, a master's degree, and 30 hours of post-master's class credits would have been classified at MA+30, Step 24.

Mr. Koplinski joined the District in 1991.  He received a master's degree in 2008.  Before the 2015–16 school year began, Mr. Koplinski had obtained enough post-master's credits to move up the District's salary scale.  According to that school year's salary schedule, Mr. Koplinski's experience and credentials classified him at MA+60, Step 25, entitling him to a salary of $77,242.  Because the increase in Mr. Koplinski's salary would have exceeded 6% of his prior year's earnings, however, Mr. Koplinski's salary that year

was capped at $73,880.94 by Article 21.12.  As the parties agree, had Mr. Koplinski been age 44 rather than age 50, he would have earned a full salary of $77,242.

This pattern repeated the next year.  Mr. Koplinski's placement on the District's 2016–17 schedule entitled him to a salary of $79,945.  Instead, constrained by Article 21.12, Mr. Koplinski earned $78,313.80.  As the parties again agree, had Mr. Koplinski been age 44 rather than age 51, he would have earned a full salary of $79,945.

Article 21.12 also restricted Mr. Koplinski's ability to earn supplemental pay for teaching summer school or leading extracurricular programs.  In 2018, Mr. Koplinski applied to teach summer school.  The District denied his request, reasoning that the resultant increase in Mr. Koplinski's creditable earnings would have exceeded the cap imposed by Article 21.12.

In August 2016, the Union filed a grievance on Mr. Koplinski's behalf regarding Article 21.12.  The Union appended to its grievance an Informal Discussion Letter from the EEOC, which concluded that a hypothetical provision indistinguishable from Article 21.12

would violate the ADEA.  <u>See</u> Pl.'s Mot. Partial Summ. J. ex. 10, d/e 30-10.

**D.    Other District Teachers**

Mr. Koplinski was not the only teacher whose salary was capped by Article 21.12.  As the parties agree, and as the tables below summarize, the District limited the salary increases of at least 24 of its teachers between 2014 and 2020:

### 2015–16 School Year

| Name | Age | Scheduled Salary | Actual Salary | Difference |
|---|---|---|---|---|
| Behrensmeyer, Susan | 47 | $73,735 | $71,852.63 | $1,882.37 |
| Cohen, Laura | 58 | $78,786 | $77,345.02 | $1,440.98 |
| Cortwright, Rebecca | 54 | $66,101 | $65,094.60 | $1,006.40 |
| Czelder, Stephaine | 61 | $51,278 | $50,575.25 | $702.75 |
| Ditchfield, Cynthia | 45 | $68,746 | $68,220.54 | $525.46 |
| Headtke, Molly | 54 | $66,070 | $65,644.74 | $425.26 |
| Irana, Aban | 50 | $54,135 | $53,521.52 | $613.48 |
| Quisenberry, Jill | 51 | $75,035 | $73,203.60 | $1,831.40 |

### 2016–17 School Year

| Name | Age | Scheduled Salary | Actual Salary | Difference |
|---|---|---|---|---|
| Cortwright, Rebecca | 55 | $74,353 | $69,000.28 | $5,352.72 |
| Ditchfield, Cynthia | 46 | $74,353 | $72,870.93 | $1,482.07 |
| Hiestand, Laura | 56 | $84,839 | $84,076.21 | $762.79 |
| Kinnamon, Margaret | 47 | $72,860 | $71,749.28 | $1,110.72 |
| McElwain, Renee | 47 | $74,673 | $74,531.78 | $141.22 |
| Mesri, Lorna | 63 | $74,463 | $74,243.78 | $219.22 |
| Quisenberry, Jill | 52 | $77,661 | $77,595.82 | $65.18 |
| Wyatt, Angela | 56 | $73,137 | $71,338.00 | $1,799.00 |

**2017–18 School Year**

| Name | Age | Scheduled Salary | Actual Salary | Difference |
|---|---|---|---|---|
| Cortwright, Rebecca | 56 | $76,955 | $73,140.30 | $3,814.70 |
| Schreiber, Karen | 56 | $75,439 | $74,647.32 | $791.68 |
| Shaw, Michelle | 46 | $73,607 | $72,888.78 | $718.22 |
| Uebelhoer, Stacy | 45 | $44,919 | $44,448.98 | $470.02 |
| Voudrie, Mary Ann | 56 | $56,029 | $55,711.48 | $317.52 |
| Wyatt, Angela | 57 | $75,696 | $75,385.08 | $310.92 |

**2019–20 School Year**

| Name | Age | Scheduled Salary | Actual Salary | Difference |
|---|---|---|---|---|
| Bullock, Letitia | 50 | $60,438 | $59,942.82 | $495.18 |
| Cortwright, Rebecca | 58 | $85,933 | $84,779.86 | $1,153.14 |
| Kassem, Tricia | 47 | $80,502 | $79,069.66 | $1,432.34 |
| Kingry, Sheila | 63 | $56,510 | $55,933.18 | $576.82 |
| Mclean, Katherine | 56 | $56,029 | $55,711.48 | $317.52 |
| Neal, Tamra | 49 | $52,225 | $51,956.96 | $268.04 |
| Powell, Jennifer | 47 | $84,000 | $83,107.38 | $892.62 |

Article 21.12 also limited other teachers' ability to receive supplemental pay.  For instance, during the 2015–16 school year, 54-year-old Melinda Lundberg was owed a stipend of $2,085 for performing additional duties.  Article 21.12 limited that pay to $505.  The following school year, Ms. Lundberg again received a reduced stipend—this time $1,847.54, rather than $2,011— because of Article 21.12.

**E.    Procedural History**

In August 2018, the EEOC brought this action under Section 7(b) of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 626(b).[1]  See Compl., d/e 1.  The Complaint identifies the District as the sole employer-defendant, id. ¶¶ 4–5, and the Union as a Rule 19 defendant, id. ¶ 6.  In the Complaint, the EEOC alleges that the District violated Section 4 of the ADEA, 29 U.S.C. § 623(a)(1), by limiting the salary increases of teachers "less than ten years from retirement eligibility to no more than six percent of their prior year's total reportable creditable earnings."  Id. ¶ 9.  The EEOC claims that because retirement eligibility is varyingly "based on a combination of age and years of service," and because no teachers may reach retirement eligibility until the age of 45, Article 21.12 "violates the ADEA by limiting pay increases because of age." Id.  The EEOC seeks permanent and mandatory injunctive relief, back wages, liquidated damages, prejudgment interest, a make-whole order, and fees and costs.  Id. at 5–6.

---

[1] Before suing the District, EEOC "attempted to eliminate" the complained-of practices and "to effect voluntary compliance with the ADEA" through the alternative dispute-resolution procedures mandated by Section 7(b).  Compl., d/e 1, ¶ 7.  Those efforts failed.

The District moved in October 2018 to dismiss the EEOC's Complaint.  U.S. District Judge Colin S. Bruce denied the District's motion the following June.  <u>See</u> Text Order dated June 28, 2019.

## II. JURISDICTION AND VENUE

The EEOC brought this action under the ADEA, 29 U.S.C. §§ 621 <u>et seq.</u>  This Court, therefore, has federal-question jurisdiction over the EEOC's claims.  28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  Venue is proper because a substantial part of the events or omissions giving rise to the EEOC's claims occurred within this District.  28 U.S.C. § 1391(b).

## III. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion and identifying the evidence the movant believes demonstrates the absence of any genuine dispute of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  A

genuine dispute of material fact exists if a reasonable trier of fact could find for the nonmoving party.  Carroll v. Lynch, 698 F.3d 561, 564 (7th Cir. 2012).

At summary judgment, the Court construes all facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  Woodruff v. Mason, 542 F.3d 545, 550 (7th Cir. 2008).  Similarly, in ruling on cross-motions for summary judgment, the Court views "all facts and inferences in the light most favorable to the nonmoving party on each motion."  Lalowski v. City of Des Plaines, 789 F.3d 784, 787 (7th Cir. 2015).

## IV. DISCUSSION

At issue is a single claim brought under the ADEA, which forbids age discrimination in employment.  "Congress' promulgation of the ADEA was prompted by its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes."  Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993).  To address that concern, the ADEA makes it "unlawful for an employer . . . to discriminate against any individual" age 40 or older "with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's age."  29 U.S.C. § 623(a)(1).  In other words, the ADEA

"requires [an] employer to ignore an employee's age (absent a

statutory exemption or defense)."  Hazen Paper Co. v. Biggins, 507

U.S. 604, 612 (1993).

The EEOC moves for summary judgment on the question of

liability and for partial summary judgment on damages.  On the

latter point, the EEOC seeks summary judgment on damages "for

teachers whose base pay was capped and for some teachers whose

supplemental earnings were limited by Article 21.12."  Pl.'s Mot.

Partial Summ. J., d/e 30, at 1 n.1.  The District moves for summary

judgment on both fronts.  Def.'s Mot. Summ. J., d/e 31, at 14–15.

## A.   The District's Disparate Treatment of Teachers over Age 45 Violated the ADEA.

The Court first addresses whether the District's enforcement of

Article 21.12 violated the ADEA.  To establish a violation of the

ADEA, the EEOC must show that the affected teachers suffered an

adverse employment action because of age.  See Monaco v.

Fuddruckers, Inc., 1 F.3d 658, 660 (7th Cir. 1993).  It is "not

enough to show that age was a motivating factor"; the EEOC "must

prove that, but for [the teachers' ages], the adverse action would not

have occurred."  Wrolstad v. Cuna Mut. Ins. Soc'y, 911 F.3d 450, 454 (7th Cir. 2018) (cleaned up).  At summary judgment, the "singular question that matters in [an age] discrimination case is: Whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [age] caused the discharge or other adverse employment action."  McDaniel v. Progress Rail Locomotive, Inc., 940 F.3d 360, 368 (7th Cir. 2019) (cleaned up).

The EEOC alleges that the District violated the ADEA in two ways: first by limiting the salary increases of many teachers over age 45 and all teachers over 50, and then by limiting those teachers' supplemental pay in a similarly discriminatory fashion. These claims rest on a theory of disparate treatment.  See generally 29 U.S.C. § 623(a)(1).  "In a disparate treatment case, liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision."  Hazen Paper, 507 U.S. at 610.  The EEOC further alleges that Article 21.12 was discriminatory on its face, such that "independent proof of an illicit motive is unnecessary."  See Solon v. Gary Cmty. Sch. Corp., 180 F.3d 844, 855 (7th Cir. 1999) (citation omitted).  An ADEA plaintiff ordinarily "bear[s] the initial burden of demonstrating that the

actual motivation for the employer's decision was the employee's age." Auerbach v. Bd. of Educ. of the Harborfields Cent. School Dist., 136 F.3d 104, 109 (2d Cir. 1998).  But a policy "that facially discriminates based on age suffices to show disparate treatment under the ADEA." Kentucky Ret. Sys. v. E.E.O.C., 554 U.S. 135, 147–48 (2008); see also Solon, 180 F.3d at 855.

The facts here are—with only a few, mostly immaterial exceptions—undisputed.  This record establishes that the District's enforcement of Article 21.12 was a policy "that facially discriminate[d] based on age." Kentucky Ret. Sys., 554 U.S. at 147–48.  As the parties agree, Article 21.12 mandated a six-percent earnings-increase cap on all teachers "less than ten (10) years from retirement eligibility." 2007 CBA, d/e 30-1, at 69.  The parties also agree that because Tier 1 teachers could not retire with benefits before age 55, regardless of their years of creditable service, the only teachers to whom the District applied Article 21.12 were those older than age 45.

This "is not a case where there is merely a correlation between age and the denial of a particular benefit." Huff v. UARCO, Inc., 122 F.3d 374, 388 (7th Cir. 1997).  Rather, in enforcing Article

21.12, the District drew "an express line between" workers over age 45 "and those under." Id.  As a result of the District's enforcement of Article 21.12, a 46-year-old teacher and a 44-year-old teacher with identical credentials and experience were not entitled to identical annual increases in pay.  The 44-year-old would have received a full salary increase; the 46-year-old would not.  The only differences between the two teachers were their ages.  The District's treatment of teachers older than age 45 violated the ADEA.

The District disputes this conclusion.  The District contends that its application of Article 21.12 turned on a teacher's years of service, not on a teacher's age.  See Def.'s Resp., d/e 34, at 8–10. To be sure, "[b]ecause age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'" Hazen Paper, 507 U.S. at 612. Yet the undisputed record shows that the District took explicit, and ultimately determinative, account of age.  For one thing, the District's designated representatives testified that age was the District's primary consideration.  Gayle Jeffries, one of the District's 30(b)(6) designees, conceded that the District limited its Article

21.12 tracking efforts to teachers over age 45.  <u>See</u> G. Jeffries Dep.,
d/e 30-8, at 171 ("Q: Now, you said that the spreadsheet only
tracked employees who were older than 45 years old.  A: Yes.  Q: Is
that correct?  A: Yes.").  And Angelica Franklin, the District's other
30(b)(6) designee, confirmed that the District did not track teachers
younger than 45.  A. Franklin Dep., d/e 30-6, at 23 ("Q: Did the
district ever track compensation of employees younger than 45?  A:
Not to my knowledge.").  Moreover, as the District concedes, a 44-
year-old and a 46-year-old with the same accrued experience were
not entitled to the same salary only by operation of Article 21.12.
Def.'s Resp., d/e 34, at 2.  This disparity cannot rationally be
attributed to any differential other than age.  No reasonable
factfinder could find otherwise.

**B.    The District's RFOA Defense Does Not Apply.**

Still, the District argues that it "may affirmatively defend
[itself] by showing that the identified practice or policy is based on a
reasonable factor other than age," often called an "RFOA."  Def.'s
Resp., d/e 34, at 13 (citing <u>Dayton v. Oakton Cmty. Coll.</u>, 907 F.3d
460, 465 (7th Cir. 2018)).  The ADEA provides that "it shall not be
unlawful for an employer . . . to take any action otherwise

Page **19** of **24**

prohibited under paragraphs (a), (b), (c), or (e) of this section . . . where the differentiation is based on reasonable factors other than age."  29 U.S.C. § 623(f)(1).  According to the District, a "desire to avoid TRS surcharges constitutes" a permissible RFOA.  Def.'s Resp., d/e 34, at 15.

The District's argument is unavailing.  First, an RFOA defense is "not available as a defense to a claim of disparate treatment." See 29 C.F.R. § 1625.7(d).  A claim of disparate treatment instead must be rebutted on the merits—by establishing that age was a mere "motivating factor" rather than a "but-for" cause.  Smith v. City of Jackson, Miss., 544 U.S. 228, 238 (2005) ("In most disparate-treatment cases, if an employer in fact acted on a factor other than age, the action would not be prohibited under subsection (a) in the first place. . . . In those disparate-treatment cases, such as in Hazen Paper itself, the RFOA provision is simply unnecessary to avoid liability under the ADEA, since there was no prohibited action in the first place.").  As the Court has already concluded, the District did not meet that burden here.  No reasonable factfinder could find that age was anything other than a but-for cause of the District's treatment of teachers older than 45.

Further, even if the District could raise an RFOA defense against a disparate-treatment claim, the District still could not do so to defend itself from a claim of age-based compensation discrimination. By federal regulation, "neither section 4(f)(2) nor any other section of the [ADEA] excuses the payment of lower wages or salary to older employees on account of age." 29 C.F.R. § 1625.10(b). That is precisely the subject of the EEOC's claim. As a result, the District cannot raise its desire to avoid TRS surcharges— or indeed any other RFOA—as a defense to ADEA liability.

**C.   The EEOC's Motion is Granted.**

The Court has concluded that the District's disparate treatment of teachers aged 45 and older violated the ADEA. The Court has also found that the District's asserted affirmative defense is inapplicable to the EEOC's claim. The EEOC's motion for summary judgment on liability is granted, and the District's motion for summary judgment is denied.

This leaves the question of damages. Under the ADEA, the first tranche of damages owed by a violating employer comprises all "unpaid minimum wages or unpaid overtime compensation." 29 U.S.C. § 626(b). The EEOC seeks partial summary judgment on

damages "for teachers whose base pay was capped and for some teachers whose supplemental earnings were limited by Article 21.12." Pl.'s Mot. Partial Summ. J., d/e 30, at 1 n.1. The District "does not dispute that some employee's [sic] wages were capped" under Article 21.12, see Def.'s Resp., d/e 34, at 20, nor does it dispute most of the damages figures offered by the EEOC, id. at 2.

The District does, however, dispute the damages sought on behalf of three teachers removed mid-year from their additional class assignments because of Article 21.12. Pl.'s Mot. Partial Summ. J., d/e 30, ¶¶ 77, 80, 82; Def.'s Resp., d/e 34, at 2–3. Although the District does not dispute the latter fact, the District contends that the EEOC's damages figures—which represent the pay owed to these teachers had they completed their assignments— are speculative. But in support of that contention, the District points only to excerpts from the deposition of Ms. Franklin, whose testimony does not in any way contradict the EEOC's calculations. The District offers no other competent evidence sufficient to defeat summary judgment. The EEOC's motion for partial summary judgment on damages is therefore granted, and the District is liable for unpaid base and supplemental pay as follows:

## Base Pay

| Name | Amount Owed |
|---|---|
| Behrensmeyer, Susan | $1,882.37 |
| Bullock, Letitia | $495.18 |
| Cohen, Laura | $1,440.98 |
| Cortwright, Rebecca | $11,326.96 |
| Czelder, Stephanie | $707.25 |
| Ditchfield, Cynthia | $525.46 |
| Haber Hiestand, Laura | $762.79 |
| Headtke, Molly | $425.26 |
| Irani, Aban | $613.48 |
| Kassem, Tricia | $1,432.34 |
| Kingry, Sheila | $576.82 |
| Kinnamon, Margaret | $1,110.72 |
| Koplinski, Charles | $4,992.26 |
| McElwain, Renee | $141.22 |
| Mclean, Katherine | $496.79 |
| Mesri, Lorna | $219.22 |
| Neal, Tamra | $268.04 |
| Powell, Jennifer | $892.62 |
| Quisenberry, Jill | $1,896.58 |
| Schreiber, Karen | $791.68 |
| Shaw, Michelle | $781.22 |
| Uebelhoer, Stacy | $470.02 |
| Voudrie, Mary Ann | $310.92 |
| Wyatt, Angela | $2,109.92 |
| **TOTAL** | **$34,670.10** |

## Supplemental Pay

| Name | Amount Owed |
|---|---|
| Finch, Jenna | $7,270.49 |
| Headtke, Molly | $100.00 |
| Howie, Cynthia | $2,350.00 |
| Irani, Aban | $100.00 |
| Killion, Katherine | $4,259.76 |
| Lundberg, Melinda | $1,743.48 |
| McElwain, Renee | $382.31 |
| Shaw, Michelle | $217.00 |
| **TOTAL** | **$16,423.04** |

## V. CONCLUSION

For these reasons, Plaintiff's Motion for Partial Summary Judgment (d/e 30) is GRANTED.  Defendant's Motion for Summary Judgment (d/e 31) is DENIED.

**IT IS FURTHER ORDERED THAT:**

1.  Plaintiff is DIRECTED to file, as soon as practicable, an updated accounting of the claims resolved in this Order. See Pl.'s Mot. Partial Summ. J., d/e 30, at 40 n.12 ("If the Court awards EEOC's claimants back pay, Dr. George can provide an update[d] interest calculation through the date of judgment.").

2.  The parties' Joint Motion for Order (d/e 43) is DENIED AS MOOT.

**IT IS SO ORDERED.**

**ENTERED: NOVEMBER 7, 2023**

**FOR THE COURT:**

*s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**